# EXHIBIT 26



**Debevoise & Plimpton LLP**
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
+1 202 383 8000

**Colby A. Smith**
Partner
casmith@debevoise.com
Tel  +1 202 383 8095

September 13, 2017

FOIA CONFIDENTIAL TREATMENT REQUESTED

Kevin Gingras, Esq.
Fraud Section, Criminal Division
U.S. Department of Justice
Bond Building
1400 New York Avenue, N.W.
Washington, D.C. 20005

### L&T Construction

Dear Kevin:

On July 27, 2017, we met with you and several of your colleagues to discuss the status of our voluntary internal review, on behalf of L&T Construction ("LNTECC" or the "Company"), arising out of its work in India for Cognizant Technology Solutions India Pvt. Ltd. ("CTS"). During the course of that meeting, you and your colleagues requested additional information on several topics covered by our presentation. This letter provides LNTECC's response to those requests.

In connection with our discussion (on Slide 11 of our presentation) about the proportion of LNTECC's revenue represented by its work for CTS, you asked for additional information on the proportion of LNTECC business derived from turn-key projects like those for CTS and you also expressed an interest in the proportion of the business of LNTECC's Buildings & Factories ("B&F") business division and the IT & Office Space ("ITOS") unit within B&F that was represented by CTS. LNTECC's response to these inquiries is shown in the following charts (all figures in INR Crores):

| B&F | 2016 | 2015 | 2014 |
|---|---|---|---|
| Sales in India | 12652 | 13878 | 12987 |
| % sales in India | 94% | 93% | 91% |
| Sales elsewhere | 787 | 1025 | 1301 |
| % sales elsewhere | 6% | 7% | 9% |
| Sales in US | Nil | Nil | Nil |
| % US sales | Nil | Nil | Nil |
| **Total Customer Sales** | 13439 | 14903 | 14288 |
| Sales to CTS | 21 | 254 | 678 |
| CTS as % of B&F | 0.16% | 1.70% | 4.75% |

| ITOS | 2016 | 2015 | 2014 |
|---|---|---|---|
| Sales in India | 2189 | 2375 | 3538 |
| % sales in India | 100% | 100% | 100% |
| Sales elsewhere | 0 | 0 | 0 |
| % sales elsewhere | 0% | 0% | 0% |
| Sales in US | Nil | Nil | Nil |
| % US sales | Nil | Nil | Nil |
| **Total Customer Sales** | 2189 | 2375 | 3538 |
| Sales to CTS | 21 | 254 | 678 |
| CTS as % of ITOS | 0.96% | 10.69% | 19.16% |

We have consulted with LNTECC in an effort to address your question about the overall percentage of the Company's business that comes from turn-key projects like those done for CTS. We note two responses. First, not all of the projects for CTS were "turn-key" projects, if that term is understood to include not only the construction of the building's warm shell design, but also the completion of interior finishes so that the building can be fully occupied upon completion. In some instances, CTS elected to complete the interior work itself. Second, in terms of similar projects for others, many of LNTECC's projects are "turn-key" design projects, in that they are fully ready for use by the customer upon completion, but we assume the focus of your question is on office-type complexes, rather than factories, ports or other types of construction. Using that assumption, the business of B&F, and in particular of ITOS, should provide a reasonable approximation of the overall size of LNTECC's business for such construction projects.

In connection with our discussion (on Slides 41, 47 and 50 of our presentation) about CTS having withheld or delayed payments to LNTECC, you asked us the total amount of the payments that were outstanding on the KITS project during the period from January 2014 to July 2014. In response, LNTECC's finance team has provided us with the following information, which shows when each running account bill ("RAB") was rendered in 2014 and the date when each was paid. As you will see, there are gaps in payments prior to March 20, 2014 and again (for one large bill) between May and August 2014.

Kevin Gingras, Esq.                             3                        September 13, 2017

| RAB no. | RAB period | RAB date | RAB amount (INR) | Date paid by CTS | Days from RAB date to pay date |
|---|---|---|---|---|---|
| 22 | Dec 2013 | Jan 1, 2014 | 109,529,318 | Mar 20, 2014 | 78 |
| 23 | Jan 2014 | Feb 1, 2014 | 195,210,428 | Mar 20, 2014 | 47 |
| 24 | Feb & Mar 2014 | Apr 1, 2014 | 385,078,514 | May 2, 2014 (72% of total) | 31 |
|  |  |  |  | May 30, 2014 (28% of total) | 59 |
| 25 | Apr 2014 | May 1, 2014 | 454,004,834 | Aug 5, 2014 (50% of total) | 96 |
|  |  |  |  | Nov 21, 2014 (50% of total) | 204 |
| 26 | May & Jun 2014 | Jul 1, 2014 | 108,155,648 | Jul 25, 2014 | 24 |
| 27 | Jul & Aug 2014 | Sep 1, 2014 | 100,539,155 | Oct 1, 2014 | 30 |
| 28 | Sep 2014 | Oct 1, 2014 | 88,247,987 | Nov 21, 2014 | 51 |
| 29 | Oct & Nov 2014 | Dec 3, 2014 | 168,935,800 | Jan 7, 2015 | 35 |
| 30 | Dec 2014 | Jan 3, 2015 | 101,948,284 | Feb 6, 2015 | 34 |

During our discussion of the September 2014 MTR meeting document in Slide 56, you asked the time period covered by "BUD 2014." We have confirmed with the Company that this was the Budget for fiscal year 2014, which ran from April 2014 to March 2015.

During our discussion of the consultant Sai Balaji Electricals, who worked on the initial Hyderabad Incubation project, you asked us to confirm whether any bills were actually paid. We have determined that a payment of INR 479,610 has been made on June 4, 2014.

You also asked about the reference to the Vice Chairman of Telangana State Industrial Infrastructure Corporation ("TSIIC") as a recipient of a request for approval in connection with the Hyderabad ISC project, and a related payment to the consultant Jhanavi Consultants of 30.4 Lakhs upon achieving that milestone. We have confirmed that the reference to the Vice Chairman is to the government official who receives the application as part of the normal process of dealing with TSIIC. We are also informed

Kevin Gingras, Esq.                  4                     September 13, 2017

that the application to TSIIC is submitted online and there are no personal interactions with the Vice Chairman of TSIIC in connection with submitting the application.

Finally, in response to your questions about variations in the LNTECC email addresses displayed on several of the slides in our presentation (compare, for example, Slide 39 with Slide 41), we asked LNTECC's information technology personnel to provide more information about the two domains: "*lntmail.org*" and "*lntecc.com*." The company has clarified that LNTECC has only one email Exchange domain, *lntecc.com*. The domain *lntmail.org* is LNTECC's internal alias for *lntecc.com*. There is no email Exchange or domain registered in the name of *lntmail.org* and our understanding is that all emails (regardless of the lntmail.org or lntecc.com designation) are routed to the same Exchange server. This is the same Exchange server that we understand is synchronized with the computers from which we have made our data collection and from which we have collected and restored backup tapes as part of our review.

Based on our notes of the meeting, these responses, together with our production of the annotated presentation and supporting documents made on August 4, 2017, cover all the requests and questions made by you and your colleagues during our July 27 presentation. Of course, if we have overlooked any questions or if you have additional questions, please do not hesitate to let us know.

* * * * *

Pursuant to 28 C.F.R. §16.8, we request on LNTECC's behalf that confidential treatment be accorded to all copies of this letter, the accompanying documents, and any notes, memoranda, or other records created by or at the direction of the DOJ or other federal law enforcement agencies, their officers or staff members, that reflect, refer, or relate to this letter or the enclosed documents. Among other things, the enclosed documents contain trade secret information or privileged and confidential commercial or financial information exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(4).

Please promptly inform me of any request under the Freedom of Information Act seeking access to any of the foregoing records, including this letter, to enable us to substantiate the grounds for confidential treatment.

Provision of these materials is not intended to, and does not waive any applicable privilege or other legal basis under which information may not be subject to production. If it were found that production of any of the enclosed materials constitutes disclosure of otherwise privileged matters, such disclosure would be inadvertent. By the production of

Kevin Gingras, Esq.  5  September 13, 2017

such documents, LNTECC does not intend to waive and has not waived the attorney-client privilege or any other protections.

Please let me know if you have any questions about this letter.

Very truly yours,

Colby A. Smith

Enclosures

*By Electronic Mail and Federal Express*

Copy:
Andrew Bruck, Esq.
Assistant U.S. Attorney, District of New Jersey
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102