# EXHIBIT 31



# FEDERAL BUREAU OF INVESTIGATION

Date of entry  07/09/2018

    RAMESH VADIVELU (RV), was interviewed at the Four Seasons Hotel located at 190 Orchard Blvd, Singapore. Trial Attorney Kevin Gingras, Department of Justice, Fraud Section (DOJ), AUSA Courtney Howard, United States Attorney's Office, District of New Jersey, and FBI Special Agent (SA) Kelly Blanchfield participated in the interview. BS was represented by legal counsel William Stellmach, Zachary Cobb, and John Joy from Willkie Far & Gallagher.

    Prior to the interview commencing, RV reviewed and signed a proffer agreement with the DOJ. RV was told to be truthful as to whatever he can remember. RV was advised that at any point, he can discuss with his legal counsel or take breaks as needed. After being advised of the identity of the interviewing agent, DOJ, and AUSA, and the nature of the interview, RV provided the following information:

    RV went to college for civil engineering and joined L&T after graduation from college. RV held the following positions at L&T:
-Trainee
-Junior Engineer
-Engineer
-Manager
-General Manager

    In 2006, RV transitioned as the Department Head for the Commercial Buildings Department. RV's responsibilities included obtaining the proposal requests for various clients, supported tenders, and supported proposals for various projects. RV ensured that the proposals were in line with company policy. The costing engineers were responsible for the direct costing, indirect costing, and additional mark ups.

    L&T utilized two different types of contracts:
      -Item Read contracts: L&T was not responsible for the design of the facility.
      -Design Build contract: L&T presented 2-3 proposals to the client for the design of the facility. The client picked one design and L&T would built the facility. L&T provided a lump sum contract amount to COGNIZANT for the entire project. The majority of the contracts with COGNIZANT were

| | | |
|---|---|---|
| Investigation on  05/17/2018 | at | Singapore, Singapore (In Person) |
| File #  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | Date drafted  06/28/2018 |
| by  BLANCHFIELD KELLY SUSAN | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

design build contracts. RV worked on 8-9 contracts for COGNIZANT over 10-11 years. The KITS facility was a lump sum amount that was agreed upon at the time of the contract. The site manager worked in conjunction with COGNIZANT on milestone payments.

L&T did not expect variations in the project at the time that the lump sum price was provided to the client. Variations are generated during the course of the project due to changes, delays, etc. L&T tracked the variations throughout the construction process and then propose the variation amounts to the client for reimbursement. L&T requested reimbursement for extended stay expenses if the project was delayed.

There were variations in the majority of COGNIZANT projects. RV did not recall a COGNIZANT contract that did not have variations. RV got involved with the variation process in the final stages. RV gave direction to the team on site to inflate the variation amounts in preparation for negotiations with the client.

RV was unsure if there was a fixed amount that was built into the contracts for variations.

### STATUTORY APPROVALS

As a business practice, L&T did not get statutory approvals for other clients except COGNIZANT. L&T assisted COGNIZANT with statutory approvals since COGNIZANT was a long term customer and it was included in the contract. L&T did not want to be involved in the statutory approval process since it was difficult to commit to statutory approval timelines. L&T's real estate division had more expertise than COGNIZANT in the statutory approval process.

*{Agent Note: RV was shown document DOJ_RV000002 through DOJ_RN000005 which was an e-mail correspondence dated May 14, 2012 through June 18, 2012 with the subject of "RE; COGNIZANT Siruseri - Certification Fee to IGBC")*

IGBC was the government agency that provided the green building certificate. COGNIZANT said that the green building certificate was included in the lump sum price in the contract with L&T.

DD was a demand draft or a commitment from the bank. The green building certificate was not a mandatory certificate.

*{Agent Note: RV was shown document DOJ_RV000251 through DOJ_RN000252 which was an e-mail correspondence dated March 21, 2013 through July 8, 2013 with the subject of "RE: Revised Offer for COGNIZANT Adibatla Hyderabad 01.04.2013 L&T"}*

Adibatla is located in Hyderabad. RV requested 50 lakhs for statutory approvals. The amount was for a professional consultant firm and the engagement with different government agencies. L&T did not have the local knowledge of the rules and regulations of Hyderabad. L&T hired an expert for Hyderabad. The amount was a "rule of thumb" number based on the size of the project and the cost of experts.

The site operational team handled the reimbursement and the consultant forms. RV did not work on the operational team.

*{Agent Note: RV was shown document DOJ_RV000011, which was an e-mail correspondence dated December 3, 2013 with the subject of "KITS- MOM for the statutory meeting held on 27th Nov 13"}*

MOM was the minutes of the meeting.

RV's responsibility was to get the tentative cost for the planning permit in the budget to be approved. RV was unaware if L&T paid a scrutiny fee. L&T interfaced with the government agencies to finalize the amount that the planning permit would cost. L&T was the "middle man" between the government agencies and COGNIZANT.

RV has one e-mail address with L&T.

RV did not have expertise knowledge on the process for obtaining planning permits. The planning permit process can be extensive based on information that RV pulled from the government agencies' websites. RV was unsure how long it took for companies to obtain a government order from the government agencies.

There was a significant delay in the planning permit for the KITS project. COGNIZANT was unable to get the correct land paperwork from the land survey for the facility. L&T could not submit the paperwork for the planning permit without the proper land paperwork. It took COGNIZANT almost a year to obtain the correct land paperwork. On December 3, 2013, the land deed issue was resolved at KITS. COGNIZANT pressured L&T to expedite the planning permit. L&T committed dates to COGNIZANT to obtain the planning permit. L&T told COGNIZANT that they would get the planning permit.

*{Agent Note: RV was shown document DOJ_RV000204 through DOJ_RV000219, which was an e-mail correspondence dated April 22, 2013 through December 3, 2013 with the subject of "RE: KITS - Update Required- Urgent"}*

The content of the e-mail was the timing of the planning permit for KITS. The planning permit for KITS was with Chief Ministry for about a month prior to getting approval.

*{Agent Note: RV was shown document DOJ_RV000013 through DOJ_RV000014, which was an e-mail correspondence dated January 20, 2014 with the subject of "Re: Discussions we had last Fri in connection with KITS approval"}*

The senior leadership meeting with the Chief Ministry. RV recalled the conversation that was referenced in the e-mail correspondence. L&T's management agreed to tell COGNIZANT to speak to the CM about expediting the planning permit. RV did not recall the individuals in L&T's management that made the decision for COGNIZANT to meet with the CM.

RV conveyed the message to COGNIZANT about the meeting request with the CM. RV did not recall whether it was communicated via telephone or e-mail. The CM did not request a meeting with COGNIZANT. It was L&T's idea for COGNIZANT to meet with the CM.

RV forwarded the e-mail to SNS to keep him "in the loop".

L&T's role with the planning permit was coordination with the client and the government agencies. L&T did not take responsibility for acquiring the permits.

*{Agent Note: RV was shown document DOJ_RV000015 through DOJ_RV000017, which was an e-mail correspondence dated January 20, 2014 with the subject of "CTS - 20-1-14"}*

The attachment was the final draft. The attachment was drafted due to a "push and pull" from L&T and COGNIZANT about the planning permit.

R. CHANDRASEKARAN was the Executive Vice Chairman in India. RV believed that NAKKIRAN drafted the attachment.

RV did not recall if the letter was sent to COGNIZANT. RV did not recall providing any feedback with the letter.

RV did not have any concerns with a meeting between COGNIZANT and the CM. RV did not have personal knowledge that the CM was corrupt.

   After the letter was drafted, RV did not have any further conversations with COGNIZANT about a meeting with the CM.

   *{Agent Note: RV was shown document DOJ_RV000272 through DOJ_RV000278, which was an e-mail correspondence dated December 3, 2013 through February 25, 2014 with the subject of "RE: KITS - MOM for the statutory meeting Held on 27th Nov 13")*

   The scrutiny fee was the statutory fee. RV did not recall the meeting with the CM being discussed in the statutory meeting. RV was "not surprised" that there were meetings held with the Ministries.

   The government order was released for developmental charges, which was not for the planning permit. In order to obtain a planning permit an application was submitted to the government agencies and a scrutiny fee was applied for the permit. There are also additional charges for development changes.

   The government order for the development charges was different than the government order that was issued for the planning permit. Throughout the cycle of a project there are multiple government orders that are obtained.

   RV did not recall a meeting with the CM for the planning permit or the road incident. In February 2014, RV requested assistance from his supervisors for help from the legal department regarding the planning permit. It was not common practice for L&T to write contractual letters to clients.

   *{Agent Note: RV was shown document DOJ_RV000018 through DOJ_RV000020, which was an e-mail correspondence dated March 6, 2014 with the subject of "RE: CTS-Contract"*

   RV did not know what "OC" stood for in the e-mail correspondence. K. JAGANNATHAN was L&T's Head of Legal. COGNIZANT needed to pay; however, RV was unsure about what they needed to pay. COGNIZANT should not have blamed L&T for the planning permit delay.

   An L&T employee in the legal department drafted the attachment to the e-mail. The goal of the attachment was to bring the issues between COGNIZANT and L&T back to the contract that was signed between them.

   COPA was the Conditions of Particular Applications, which was part of the contractual agreement. RV was unsure about the fee that was described in the letter. RV believed that L&T paid smaller statutory payments on behalf of COGNIZANT and requested reimbursement from COGNIZANT. The

scrutiny fee was already paid prior to the e-mail correspondence. RV believed that the fee amounts discussed in the e-mail were developmental charges even though the government order was not issued yet. RV was not aware of any other fees for the planning permit besides the scrutiny fee and the developmental charges.

There was an outstanding payment that L&T was saying that COGNIZANT was responsible for. The application was at the Urban Developmental Ministry. L&T's legal department told COGNIZANT that L&T did not have to contractually make the payment.

*{Agent Note: RV was shown document DOJ_RV000131 through DOJ_RV000132, which was an e-mail correspondence dated March 12, 2014 with the subject of "Re: Meeting"}*

RV was unsure if the draft letter was sent. L&T's legal department discussed with RV about wanting to meet with COGNIZANT's legal team to discuss the items in the letter.

*{Agent Note: RV was shown document DOJ_RV000281 which was a meeting invite dated March 13, 2014}*

RV did not recall the specific conversation of the meeting; however, RV remembered that there was no discussion about payments. The result of the meeting was a continued standstill between L&T and COGNIZANT.

RV attended some of the MRM meetings. RV did not recall lunch at a Thai restaurant with COGNIZANT employees after a MRM meeting.

*{Agent Note: RV was shown document DOJ_RV000041, which was an e-mail correspondence dated April 21, 2014}*

RV did not recall the details of the meeting with SNS.

*{Agent Note: RV was shown document DOJ_RV000142, which was an e-mail correspondence dated May 17, 2014 with the subject of "RE: COGNIZANT KITS Sholinganallur- Invoice/Fund Allocation- Reg"}*

LAKSHMANAN ATHAPPAN was the project manager. "RAB" was the running account bills for each project. The planning permit was with the Urban Development Ministry and was waiting for the government order. L&T Headquarters did not release payments to the project site in order to pay vendors and subcontractors. RV requested in writing for the release of funds.

DOJ-302-00000197

Continuation of FD-302 of (U) Interview of RAMESH VADIVELU ,On 05/17/2018 ,Page 7 of 10

L&T was coordinating with the government agencies for the planning permit. RV gave a time commitment for the planning permit in order for COGNIZANT to unfreeze the payments. There was nothing that L&T could do to expedite the planning permit. The e-mail was not a change in L&T's stance in regards to the planning permit. The commitment dates were not a real commitment; however, COGNIZANT thought the date commitment was real.

RV did not recall a conversation with MANI about L&T trying to get the planning permit.

*{Agent Note: RV was shown document DOJ_RV000138 through DOJ_RV000141, which was an e-mail correspondence dated June 30, 2014 with the subject of "KITS-Planning permit"}*

There was a building collapse where 50 people died. As a result, L&T did not want anyone to know that L&T obtained the government order. The accident occurred a couple days before June 30, 2014. As a result of the accident, the government was going to "go after" the company that obtained the planning permit for the building that collapsed. COGNIZANT was "desperate and afraid" that the government agency was going to seize all construction contracts that started construction prior to obtaining the permits. L&T went to the government offices to follow up on the permit. COGNIZANT did not interact with the government officials. L&T obtained the planning permit and the official copy was sent to COGNIZANT three to four days later.

RV made a representation to COGNIZANT about obtaining the planning permit in order to receive a $100K payment from COGNIZANT for the project.

*{Agent Note: RV was shown document DOJ_RV000027 through DOJ_RV000028, which was an e-mail correspondence dated June 30, 2014 with the subject of ""RE: KITS - Planning Permit"}*

The process for getting the planning permit was taking a long time.

*{Agent Note: RV was shown document DOJ_RV000289, which was an e-mail correspondence dated July 17, 2014 through July 19, 2014 with the subject of "FW: KOCHI"}*

The e-mail correspondence was an acknowledgment that L&T got the planning permit.

*{Agent Note: RV was shown document DOJ_RV000029 through DOJ_RV000031, which was an e-mail correspondence dated July 23, 2014 through October 6, 2016 with the subject of "RE: Outstanding Payments- CTS payments"}*

COGNIZANT withheld the payments because they wanted L&T to get the planning permit. L&T received the planning permit in June 2014. COGNIZANT kept a freeze on the payments until the permit was received.

RV forward the e-mail in 2016 as a result of a media article about problems at COGNIZANT. RV was not aware of the actual problem with COGNIZANT; however, L&T's legal team advised L&T employees to print out all records associated with COGNIZANT.

*{Agent Note: RV was shown document DOJ_RV000037, which was an e-mail correspondence dated October 23, 2016 with the subject of "FW: COGNIZANT KITS Sholinganallur- Variation List"*

RV received a list of variations from the team on site. The e-mail was forwarded years later in conjunction with the advice from the L&T legal team.

*{Agent Note: RV was shown document DOJ_RV000128}*

The document was approximately six weeks after the government order was issued. NAGA SUBRAMANIAN (NAGA) coordinated with the design department, L&T, and COGNIZANT. NAGA was an L&T employee and interfaced with the government offices.

RV was not an expert on the developmental charges.

*{Agent Note: RV was shown document DOJ_RV000032 through DOJ_RV000033, which was an e-mail correspondence dated November 4, 2014 with the subject of "FW: KITS- Planning Permit"*

The Mugalivakkam incident was the building collapse that happened on June 28, 2014. RV was unaware of constraints with the government agencies. RV was told by a contact in the government office that the planning permit for KITS was the first to be approved since the Mugalivakkam incident.

*{Agent Note: RV was shown document DOJ_RV000129 through DOJ_RV000130, which was an e-mail correspondence dated November 4, 2014 with the subject of "RE: KITS- Planning Permit"}*

COGNIZANT was appreciative that the planning permit was approved for KITS. Everyday L&T followed up with the government offices for the planning permit for KITS. L&T went to the several government agencies, provided feedback to the design teams, submitted the requested documentation to the government agencies, etc.

*{Agent Note: RV was shown document DOJ_RV000142, which was an e-mail correspondence dated May 17, 2014 with the subject of "COGNIZANT KITS Sholinganallur- Invoice/Fund Allocation- Reg"}*

The e-mail was a reaction to COGNIZANT freezing payments to L&T. It was a coincidence that the government order was issued a month after the false promises to COGNIZANT.

*{Agent Note: RV was shown document DOJ_RV00076 through DOJ_RV000127, which was an e-mail correspondence dated November 12, 2014 with the subject of "KITS COGNIZANT Campus- Variation Document"}*

The variation document was dated November 12, 2014. RV increased the variation amount three times because of hard negotiations with COGNIZANT. The variation amount was very large.

The breakdown of campus regularization was due to the delay at the KITS facility. L&T lost labor wages and other expenses due to the delay.

The statutory approval line item was a fixed lump sum price and L&T was unable to recover the price elsewhere. COGNIZANT would not approve reimbursement for "extended stay expenses". The amount wasn't for statutory approvals. COGNIZANT did not review the variations on a line by line basis. COGNIZANT's top management reviewed the total number for the reimbursement of variations to L&T. COGNIZANT did not look at line items for any project with L&T.

*{Agent Note: RV was shown document DOJ_RV000133 through DOJ_RV000135, which was an e-mail correspondence dated November 21, 2014 with the subject of "RE: SNS Meeting with Sridhar"}*

RV did not recall the meeting. The e-mail seemed like a "courtesy meeting".

*{Agent Note: RV was shown document DOJ_RV000039 through DOJ_RV000040, which was an e-mail correspondence dated February 21, 2015 with the subject of "RE: Variation Items"}*

DOJ-302-00000200

    ATR was the Tender Manager at L&T. RV did not care the classification of the line item, as long as, L&T was reimbursed. There was no statutory approval expense of 22cr. The 22cr was for extended stay expenses.

    The statutory approval line item represented approximately 1/3 of the total amount to be recovered. RV was unsure about the reasons for the reclassification of the amount to other line items. L&T received a telephone call from COGNIZANT to remove the statutory approval line item. The statutory approval line item did not represent a payment that was made for statutory approvals.

*{Agent Note: RV was shown document DOJ_RV000327 through DOJ_RV000330, which was an e-mail correspondence dated April 16, 2015 through June 2, 2015 with the subject of "RE: COGNIZANT KITS & Hyderabad Campus"}*

    The challenges in obtaining the permits was a delay with the government agencies. L&T took responsibility with the coordination with the government agencies for the permits.

    The e-mail correspondence was a result of the Hyderabad project. L&T submitted a bid for the Hyderabad project. MANI told RV that the bid that was submitted by L&T was significantly higher than the lowest bid that COGNIZANT received. RV offered COGNIZANT a lower price for the contract.

*{Agent Note: RV was shown document DOJ_RV000337 through DOJ_RV000338, which was an e-mail correspondence dated March 1, 2016 through March 2, 2016 with the subject of "RE: TNEB - 10.6 MVA 110 KV power line"}*

    COGNIZANT requested a breakout of the total amount of incidental expenses that were listed in the attachment.