# EXHIBIT 44

```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
 2   _____

 3   UNITED STATES OF AMERICA,          CRIMINAL ACTION NUMBER:

 4                                      2:19-cr-00120-KM
     vs.
 5                                      Status Conference (Remotely)
     GORDON J. COBURN and
 6   STEVEN SCHWARTZ,

 7        Defendants.
     _____
 8   MARTIN LUTHER KING BUILDING & U.S. COURTHOUSE
     50 Walnut Street, Newark, New Jersey  07101
 9   January 6, 2021
     Commencing at 3:00 p.m.
10
     B E F O R E:     THE HONORABLE KEVIN MCNULTY
11                    UNITED STATES DISTRICT JUDGE

12   A P P E A R A N C E S: (Remotely)

13   OFFICE OF THE UNITED STATES ATTORNEY
     BY:  NICHOLAS P. GRIPPO, ASSISTANT UNITED STATES ATTORNEY
14   970 Broad Street
     Newark, New Jersey  07102
15
     UNITED STATES DEPARTMENT OF JUSTICE
16   BY:  DAVID A. LAST, TRIAL ATTORNEY
          SONALI DINESH PATEL, TRIAL ATTORNEY
17   1400 New York Avenue, N.W.
     Washington, DC  20530
18
     A L S O   P R E S E N T:
19
     Gordon J. Coburn, Defendant
20   Steven Schwartz, Defendant

21   Proceedings recorded by mechanical stenography; transcript

22           produced by computer-aided transcription.

23
              Rhéa C. Villanti, Official Court Reporter
24                   RheaVillanti@Yahoo.com
                       (732)895-3403
25
```

```
1   (Continuing)

2   A P P E A R A N C E S:  (Remotely)

3   JONES DAY®
    BY:  HENRY KLEHM, III, ESQUIRE
4        JAMES PATRICK LOONAM, ESQUIRE
    250 Vesey Street
5   New York, New York  10281
    For the Defendant Gordon J. Coburn
6

7   JONES DAY®
    BY:  HANK B. WALTHER, ESQUIRE
8   51 Louisiana Avenue, N.W.
    Washington, D.C.  20001-2113
9   For the Defendant Gordon J. Coburn

10

    KRIEGER KIM & LEWIN LLP
11  BY:  NICHOLAS LEWIN, ESQUIRE
         ALEXANDRA SAGE MESSITER, ESQUIRE
12  500 Fifth Avenue, 34th Floor
    New York, New York  10110
13  For the Defendant Gordon J. Coburn

14

    BOHRER PLLC
15  BY:  AMIR TOOSSI, ESQUIRE
    One Pennsylvania Plaza, Suite 2520
16  New York, New York  10119
    For the Defendant Steven Schwartz
17

18  PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
    BY:  ROBERTO FINZI, ESQUIRE
19       THEODORE V. WELLS, JR., ESQUIRE
    1285 Sixth Avenue
20  New York, New York  10019
    For the Defendant Steven Schwartz
21

22  GIBBONS, PC
    BY:  LAWRENCE S. LUSTBERG, ESQUIRE
23       DANIEL B. WEINSTEIN, ESQUIRE
    One Gateway Center
24  Newark, New Jersey  07102-5310
    For the Defendant Steven Schwartz
25
```

```
 1              (PROCEEDINGS held remotely, before The Honorable
 2   Kevin McNulty, United States District Judge, at 3:00 p.m.)
 3              THE COURT:  Good afternoon.  We are here for a status
 4   conference in U.S. v. Coburn, Criminal Docket 19-120.  I know
 5   that you did your appearances.
 6              There were a number of letters, which I've read.  I
 7   won't promise I have absorbed every word, they were complex,
 8   but let's knock them off one by one.
 9              First of all, is there anything anybody wants to say
10   just going in to structure this whole thing?  Is there a top of
11   the list, in other words?
12              MR. LUSTBERG:  Judge, this is Larry Lustberg.  And I
13   don't know why I say that because you can see who I am but,
14   nonetheless, it's the way I've always done it.  So, you know,
15   that's the way --
16              THE COURT:  All right.
17              MR. LUSTBERG:  -- I still do it.
18              THE COURT:  So the person who claims to be Larry
19   Lustberg, I'll hear you.
20              MR. LUSTBERG:  So we -- so the defendant sent the
21   Court a letter on New Year's Eve, I'm sure it's what you did as
22   you were celebrating the new year, Judge, trying to lay out
23   what we thought were the issues before the Court in the order
24   that we thought made some sense to think about them.
25              Just in terms of summary, this Court set this status
```

1   conference date in order to kind of assess where we were after

2   setting a control date, in quotes, for May.

3          I think first things first on this list is that there

4   are a number of -- I think we'd like to kind of get a sense of

5   where things are in terms of when a trial might be, and I think

6   a lot of other things will fall into place after that.

7          As you know, if you read that letter, you know, we

8   think there are a number of proceedings that are pending and a

9   number of investigative processes that need to take place in

10  order for us to be ready for trial, and we don't think at this

11  point that that May date is even within the realm.  But that

12  may be in any event because, as I understand it, I don't think

13  that there's any real likelihood of jury trials of this

14  magnitude by then anyway.  So --

15         THE COURT:  I'll stop you there and say that's what

16  I'm hearing.  From all of us to God's ears, we could be past

17  this in May but I'd be very surprised.  So unfortunately, that

18  does seem to be it.

19         So who will be speaking for the government?

20         MR. GRIPPO:  I will, Your Honor.  Good afternoon.

21         THE COURT:  There you are.  Yes, Mr. Grippo, for

22  practical reasons having to do with what's going on in the case

23  May is not looking great, but for COVID reasons it's really not

24  looking great.  I'm afraid -- although I know you're eager to

25  press forward, and rightly so, I'm afraid that may not be in

United States District Court
Newark, New Jersey

1    the cards.  Though I'm willing to hear you on it if you don't

2    agree.

3                MR. GRIPPO:  Understood, Your Honor.  Thank you.

4                Your Honor, we are eager to press forward but we are

5    mindful of the current environment and in particular the

6    COVID-related limitations and the fact that the Court is not

7    currently handling jury trials or in-court proceedings for the

8    most part.  Everything has been stayed I think until the

9    beginning of March.  But with that said, Your Honor, we

10   think -- so we have no objection to adjourning the trial date

11   and rescheduling that.

12               We've read the defendants' letter.  We understand

13   their request, and we're mindful of the limitations that

14   continue to exist.

15               In our view we think a fall trial date is still

16   realistic at this point.  Hopefully things will improve with

17   respect to COVID and the operations of the court by then.  That

18   would still be, you know, several months out from when the

19   current standing order contemplates the court resuming in-court

20   proceedings.  It would be several months out from the current

21   May date, and in our view it gives the parties plenty of time

22   to resolve the open pretrial issues and prepare for trial.

23               So our request today is to pick a date in the fall,

24   in the September or October time period, and then convert the

25   current May 3rd date to a status conference.  And we can talk,

```
 1    you know, I think as we go along the list here, about some of

 2    the other scheduling issues that may fall into place with a

 3    schedule along those lines.

 4              THE COURT:  Yes.  So let's start with the big one.

 5    Mr. Grippo is suggesting September, October.  That sounds like

 6    a plan to me, but let me know from the defense side, what do

 7    you think?

 8              MR. LUSTBERG:  Judge, this is Larry again --

 9              THE COURT:  I'll get to you in a second, Mr. Finzi.

10              Mr. Lustberg, you go first, then Mr. Finzi.

11              MR. LUSTBERG:  I'm happy to have Mr. Finzi go, but

12    all I wanted to say was this, Judge.  During -- and we've tried

13    to point this out in our letter.  During the course of this

14    pandemic a lot of things have gone by the boards.  There were

15    court proceedings that could and would have taken place that

16    didn't.

17              But among the things that's most critical for us, and

18    I think this is perhaps what Mr. Finzi wanted to address, is

19    that our case is a case that involves actions that took place

20    in India, and we were in the process of doing investigation, as

21    one would have to do in order to fulfill our obligations as

22    defense counsel, with regards to the facts of the case in

23    India.

24              Obviously we cannot now and we have not been able

25    to -- for some time now, been able to get on a plane to go do
```

United States District Court
Newark, New Jersey

1　　that investigation and to take the other actions that are

2　　absolutely required for us to fulfill our clients' Sixth

3　　Amendment rights and for us to fulfill our professional

4　　responsibilities.

5　　　　　　I will tell you that I am very doubtful that all of

6　　that as well as all the proceedings that have to take place can

7　　be done by the fall.  We have -- speaking -- I don't have a

8　　problem if the Court wants to set some sort of control date of

9　　the sort it set this time for the fall, in quotes, but I do

10　　think that Your Honor should have in mind that we may need more

11　　time at that time.

12　　　　　　So I'll let Mr. Finzi finish that thought because I

13　　didn't mean to interrupt him.

14　　　　　　THE COURT:  How did he do, Mr. Finzi?

15　　　　　　MR. FINZI:  He did great, Your Honor, and the only

16　　thing I was going to say, but Mr. Lustberg covered this

17　　perfectly, is that I think there's two buckets of things here;

18　　one which the government has addressed and one which they

19　　haven't.

20　　　　　　The first issue is the bucket of things that need to

21　　be litigated and decided, and this may and likely will need the

22　　Court's intervention, and there are some knotty issues in there

23　　that need to be briefed and perhaps even heard and then

24　　decided.  But there is also, as Mr. Lustberg indicated, a whole

25　　investigation front of this case, a case that is pretty much

1  totally centered in India.

2        The conduct took place in India.  The recipient of

3  the bribe, alleged bribe, is an Indian government official.

4  The payors of the bribe or the company that is alleged to have

5  transmitted the bribe is an Indian company, and two of the four

6  members of the conspiracy identified by the government are

7  Indian nationals who reside in India.

8        So all of this is to say there's a tremendous

9  overseas and India focus to the case, so much so that the

10  government I believe, and they've acknowledged as much, we have

11  it in their 302s, they traveled overseas I think more than once

12  to conduct their interviews and to gather documents and

13  information, and we need to factor into our timing that we just

14  need to do the same.

15        And I am in a position today where I don't think I

16  could book a trip to India.  And if I could book a trip to

17  India, I don't think I could make arrangements there for anyone

18  to meet me.  So I would just like the Court to think about not

19  just the litigation component but the defense investigation

20  component as we go forward.

21        THE COURT:  Sure.  I understand.  Nobody, as you say,

22  is getting on a plane now.  And even if you did, it's not clear

23  what you could do when you got there.  So I certainly

24  understand that.

25        Anybody else want to be heard on this?

1          Look, I'm going to put this on for a date in October.

2    I am mindful that things could get worse between now and

3    October.  We just don't know.  Maybe things will get better.

4    We all hope so but we just don't know.

5          I am putting it on for October.  For now everybody

6    ought to treat that as a trial date, and I'll give you a

7    specific date in a minute.  But, of course, I will be taking

8    the suggestion that the May 3rd date be converted to a status

9    conference date.  We can regroup at that time and see how it

10   looks for October.  Maybe we'll know a little more.  Maybe not.

11         As a judge I hate to be sitting here saying, hey,

12   maybe, maybe not all the time, but unfortunately we're all in

13   that position.  So we're just going to do our best.  I am

14   putting it on for a date in October.

15         Ms. Creegan, what have we got in October?

16         THE COURTROOM DEPUTY:  Good afternoon, everyone.

17   October 4th at 9:00 a.m.

18         THE COURT:  What day of the week is that?

19         THE COURTROOM DEPUTY:  It's a Monday.

20         THE COURT:  All right.  Want to call it Monday, 10/4,

21   at 9:00 a.m.  Obviously we are going to revisit this on

22   May 3rd.  We're steering an ocean liner here, and we can't just

23   make up our mind the week before, hey, let's go to trial.  And

24   I'm very -- having been in practice I am very conscious that

25   every minute you spend in front of me implies many, many hours

1    not in my presence, and I know that.  So that's where we'll

2    stand for now.

3            With due regard for the uncertainty about the future

4    and indeed the present, I want everybody to regard it for now

5    as a real date and not just treat it as -- I hope I'm doing

6    something more than blowing hot air here, and I want to put it

7    on for that date and I would like to have the trial on that

8    date if at all possible.  So everyone should go at it with that

9    attitude and not just say, Well, the Judge said October but no

10   way it's going to be October so let's put our feet up.  Not

11   that you would do that but you know what I'm saying.

12           So that's that.  Our dates I think should work back

13   from that with that in mind.  And if it turns out in May that

14   that's not the day, well, we will readjust again, but for now

15   let's work from there.

16           So that's the big overarching scheduling issue.  Now,

17   I know that there's another scheduling issue having to do with

18   an evidentiary hearing on the motion having to do with the SEC

19   materials.

20           MR. LOONAM:  Yes, Your Honor.

21           THE COURT:  Now, are we pulling for that?  Does more

22   need to be done before we're ready to have that?

23           MR. LOONAM:  Your Honor, it's James Loonam on behalf

24   of Gordon Coburn, and it's our position that we are -- that

25   hearing should be scheduled.  We have an outstanding subpoena

request with Your Honor for materials for interagency
communications between the DOJ and the SEC that can be admitted
during that hearing.  And Your Honor should decide whether to
issue that subpoena in advance of the hearing, but we would
request that the hearing be scheduled for a date reasonably
soon after the return date for that subpoena.

      The government argued that the need for this
evidentiary hearing has been mooted by its offer to review SEC
files for notes of the 13 witness interviews that DOJ and SEC
attended together, to review any internal memorandum concerning
the substance of those interviews at the SEC, and for any notes
that the SEC took during joint meetings with Cognizant and L&T.

      Our position is that that's inadequate, and we've
been telling the DOJ this for quite some time and have given
them every opportunity to try and avoid this evidentiary
hearing.  And during the course of trying to get information
from DOJ we have not obtained any explanation of the extent and
scope of the full cooperation between DOJ and SEC, but we have
gotten dribs and drabs of information that just raise
additional factual questions.

      So, for example, we have learned that DOJ shared all
of the 302s with the SEC, not just the 302s for the 13 witness
interviews that DOJ is willing to look at the notes for.  So
the other half of the interviews that they're not willing to
look at the notes for, you know, or any memoranda generated,

1    the SEC got those 302s.  And we don't know when.

2           We know at the latest they got access to a relativity

3    database some time in November, but we don't know if they got

4    the 302s for those witness interviews beforehand and whether

5    DOJ and SEC discussed those interviews and analyzed the

6    substance of those interviews together.

7           Similarly, we learned that in October of 2018, months

8    before this case was indicted, the SEC provided DOJ with its

9    statement of facts, its draft statement of facts for the

10   cease-and-desist order against Cognizant.  And so there are

11   just further indications of DOJ and SEC acting as a team,

12   sharing resources, closely coordinating in a way that would

13   suggest under the *Risha* factors that DOJ's obligations to

14   review the SEC files go beyond what it has offered to do here.

15          And so after trying everything we could to avoid the

16   evidentiary hearing and giving very specific questions to DOJ

17   to answer, DOJ has taken its position, and we think the only

18   way to resolve this is through an evidentiary hearing so that

19   Your Honor has the facts and understands the scope of the

20   extent of the cooperation between DOJ and SEC so that the Court

21   can determine the scope of its *Brady* obligations, which Your

22   Honor has rightfully noted are of the utmost importance here.

23          THE COURT:  Right.  But what you tag on the end there

24   is kind of the important part, which is, look, we're not just

25   trying to uncover cooperation as if it were some sort of

```
 1    wrongdoing or something, right?

 2              MR. LOONAM:  Correct.

 3              THE COURT:  This is directed toward a particular

 4    issue.

 5              MR. LOONAM:  Your Honor, that's right --

 6              THE COURT:  Where do you think that's going?  I mean,

 7    maybe you don't know but what's your view of the target here?

 8              MR. LOONAM:  I will tell you, Your Honor.  So very

 9    practically, right -- and I have shared some of this thinking

10    with the government and been pretty transparent about this.

11              So, for example, they are willing to look at the 13

12    witness interviews.  That's about half of the witness

13    interviews.  What about the other half, right?

14              So to the extent that those interviews occurred and

15    it's investigation by proxy, right, DOJ is conducting these

16    interviews, SEC stays out of them, but that night DOJ is on the

17    phone with the SEC trial attorney telling them, Hey, this is

18    what happened.  This is what we saw.  And they're exchanging an

19    analysis of those facts, right?  And the SEC takes a memo of

20    this in their file.

21              We think DOJ -- that's joint investigative activity.

22    That is them acting as a team.  We think that they should

23    review those notes that flow out of that conversation to the

24    extent they exist.  We don't know.

25              So in the Sridhar resolution, right?  Key witness,
```

1    right?  There are four people on a phone call that are at the

2    center of this case; two of them are charged, one of them was

3    given a non-prosecution agreement by the government, and the

4    third enters into a civil resolution that is a neither admit

5    nor deny, right, that requires his cooperation.  And when you

6    review the 302s for that witness, that witness made very

7    significant *Brady* statements in his meetings with DOJ and the

8    SEC.

9            Now, to the extent after the joint meetings with SEC

10   and DOJ that are part of the 13, if the SEC had proffers or

11   meetings with Sridhar or his counsel and shared that

12   information with DOJ, and DOJ in some coordination, you know,

13   they allow this to go through a civil resolution that requires

14   the SEC -- that requires Sridhar to cooperate with the SEC and

15   that cooperation could potentially require him to testify in

16   this case pursuant to a DOJ request, but then the DOJ is

17   putting up blinders and saying, I don't have to look at the

18   SEC's file with respect to Sridhar except to the two joint

19   meetings that I've already admitted to.

20           But there's a whole file out there of additional

21   further conversations with this critical witness who's already

22   made *Brady* statements.  We think that's a serious problem in

23   this case, and we think the DOJ's obligations would include

24   that as well.

25           So those are just examples, Judge --

1          THE COURT:  No, I understand, you are giving an

2    example.  There was some *Brady*; maybe there's more.

3          MR. LOONAM:  So, Judge, this isn't just an exercise

4    in, let's have an academic exercise about the relationship here

5    between DOJ and the SEC.  We believe there that DOJ has an

6    obligation under *Risha*, under *Brady*, under *Kyles*, to look at

7    additional materials in the SEC's files beyond what it's

8    currently offered here.

9          We've tried to obtain the information we need from

10   the government in order to define the contours of how much more

11   they need to look at, but they refuse to provide that

12   information.  They've refused to provide information sufficient

13   for us to determine what additional files they need to look at

14   so an evidentiary hearing is our only answer.

15          THE COURT:  Just for fun, suppose Mr. Grippo came

16   back to you next week and said, Okay, I looked.  You know what?

17   The heck with it.  I looked at everything.  I've read it all,

18   and there's nothing more than what you know.

19          Are we done?

20          MR. LOONAM:  Your Honor, if DOJ agrees that it has to

21   review the SEC's entire file per your hypothetical and comes

22   back and says, There's no further *Brady* material, and then --

23   and let's put timing aside here because I don't want to get

24   into a semantic timing argument.  There's no *Giglio*, there's

25   nothing else under *Jencks* that I have to turn over at any

1    course during the course of this proceeding, that is what it

2    is.  I mean, we have to rely on the government to meet its

3    obligations.

4          But what we're talking about here for purposes of

5    this evidentiary review is the scope of its review and its

6    obligation.

7          THE COURT:  I understand.  I am just getting the

8    parameters.

9          All right.  Mr. Grippo?

10         MR. GRIPPO:  Thank you, Your Honor.

11         Your Honor, as an initial matter, as is clear from

12   our submissions to the Court, we disagree strongly with

13   Mr. Loonam on his characterizations of our meet and confer and

14   our efforts.

15         In our view, Your Honor, the Court's decision in

16   September was clear and focused on really two issues with

17   respect to the motion to compel.

18         First, the Court decided that there may be materials

19   in the SEC's files that may be discoverable and the only issue

20   is whether the government is obligated to look.  The Court then

21   decided that more information was needed to make that

22   determination.  The government then undertook efforts to both

23   provide more information and agree to review documents that we

24   believed go to the heart of the Court's decision.

25         Between those two things, Your Honor, the agreement

1   to review the three categories of documents that we identified

2   and the supplemental information we provided, we think we've

3   addressed the concerns in the Court's decision and have

4   satisfied our obligations.

5        Your Honor, I think you were right on point to ask

6   Mr. Loonam about the purpose of this.  If the purpose is to

7   identify *Brady* material and review it and disclose it, that is

8   one thing.  But that does not appear to be the goal of the

9   defense team on this issue.

10       We have received a set of questions that in our

11  view -- and I know we've said this before in other contexts,

12  but that really read like interrogatories that seek to catalog

13  every communication related to broad topics for the purpose of

14  what?  Of just identifying all of the interactions?  DOJ

15  interacted with the SEC.  We had a parallel investigation.

16  That is standard.  There is nothing wrong with that.

17       But if the concept is, let's figure out if there's

18  any discoverable information in the SEC's files, then that

19  should be the focus.  And during our exchange with defense

20  counsel they did not offer or propose additional categories of

21  documents for DOJ to review or engage in any way on it.  They

22  proposed this free-ranging set of questions that, again, are

23  like interrogatories with multiple sub-questions and, you know,

24  limitless sub-parts, and that was it.  And they refused to

25  consider other options.

1          And I don't want to bore the Court with too much back

2   and forth on this process but from our perspective if the

3   concept here is jointly undertaken investigative activity,

4   that's fact gathering in which both agencies participated, and

5   then any substantive factual, potentially exculpatory

6   information that comes out of that, we think the review that

7   we've proposed and the additional information we've provided

8   addresses those points and should resolve the issue.

9          And so we do not think a hearing is necessary, Your

10  Honor, based on our offer to review those materials and the

11  information we've provided.

12          MR. LOONAM:  Your Honor, if I may?

13          THE COURT:  Sure.

14          MR. LOONAM:  So we obviously disagree.  I think we

15  put the questions -- Your Honor has the questions we put to the

16  government in writing, and you can see that there are sub-parts

17  because we tried to be very specific and put them as yes or nos

18  so that we weren't getting to even the substance -- the

19  nitty-gritty substance or the tick tock -- and we've actually,

20  during the course of the meet and confer, expressed to the

21  government we weren't looking for a catalog of every

22  communication, and that was in the context of us on our own

23  withdrawing one of our requests which was to explain -- have

24  the government explain what it meant by "the significant

25  cooperation of the SEC" in its press release.  You know, that's

1    a statement the government made, you know, it praised the

2    significant cooperation of the SEC.

3           And so we asked the government:  What did that

4    consist of?  But understood that, well, you know, look, we're

5    trying to avoid the hearing here.  We want efficiency, and so,

6    you know, let's -- that can be construed as a catalog of the

7    communications, and that's not what we're after here.  And so

8    we actually took that request off the table on our own in an

9    effort to try and avoid the evidentiary hearing.

10          But if you heard what Mr. Grippo said, Your Honor,

11   what he doesn't address are the circumstances I raised.  I

12   think it's just a disagreement about the law.  And as Your

13   Honor already recognized, this is -- Your Honor, I think

14   they're misreading Your Honor's opinion.

15          Your Honor found:  If the prosecution's views were

16   accepted, the DOJ might closely partner with the SEC yet ignore

17   potentially exculpatory material in the possession of the SEC

18   so long as it did not directly order the SEC to do anything.

19   The *Risha* factors I think are intended to guide a more general

20   inquiry into whether the two worked so closely that the

21   prosecution may be deemed to be in constructive possession of

22   the materials gathered by the agency.

23          Right?

24          And then Your Honor says:  Defendants request in

25   their reply brief an evidentiary hearing to determine the

1   extent of the cooperation between the prosecution and the SEC.

2   I agree that there remain questions of fact.  The prosecution

3   denies that certain joint steps were taken but does not provide

4   a comprehensive explanation as to what kind of cooperation

5   there was.

6           The admission that the SEC attended meetings with

7   Cognizant counsel and the press releases praise the significant

8   cooperation, perhaps a bit of interagency diplomacy but perhaps

9   not, provide enough of a basis for an inquiry into whether

10  there was more to the relationship than the SEC's merely

11  sitting in on witness interviews.

12          So, in other words, the statement in the press

13  release, the interviews, that's a basis to see what the extent

14  of the cooperation was here.  Mr. Grippo's inquiry and his

15  offer does not address those other interviews that we now

16  know -- after Your Honor wrote this opinion, we now know that

17  DOJ provided those 302s for the interview that the SEC didn't

18  even take part in but gave them during the course of the

19  investigation.  This isn't after the investigation, after the

20  indictment.  This is during the investigation they gave the

21  302s for these witness interviews to the SEC.

22          To the extent --

23          THE COURT:  Yes, but that leads us where?  That

24  sounds like information flowed the other direction from the one

25  you're talking about.

 1            MR. LOONAM:  Well, maybe.  Maybe not.  But it

 2   indicates -- we don't know, right?  So the DOJ hasn't answered

 3   the question:  Did you discuss the substance of the interview?

 4   Was there analysis?  Did DO -- did SEC contribute to the

 5   analysis of those witness interviews, right?

 6            There's -- there's -- there's no -- we don't know.

 7   We're in the dark with respect to that so there could be

 8   information flowing the other way.  We don't know if SEC, you

 9   know, had attorney proffers with counsel for these witnesses

10   and then flowed information back to DOJ.  We don't know that.

11   We've put those questions to DOJ, and they haven't answered

12   them in this sort of meet-and-confer process.

13            So now we're stuck with an evidentiary hearing to get

14   answers to those, we think, very important questions.

15            THE COURT:  Okay.  In your letters do I have -- just

16   because there have been communications over time, do I have the

17   current state of play, if you will?

18            MR. LOONAM:  You do, Your Honor.

19            THE COURT:  All right.

20            MR. GRIPPO:  Your Honor --

21            THE COURT:  I will review them.  I will get back

22   to --

23            MR. GRIPPO:  Your Honor.

24            THE COURT:  Yes, I'm sorry, go ahead.

25            MR. GRIPPO:  Apologize.  Briefly -- if I can just be

1    heard very briefly in response?

2            I would just say on that last part from Mr. Loonam I

3    would remind the Court that our -- we offered to review

4    documents relating to the interviews the SEC attended.  So for

5    purposes of the interviews they attended, we are covering in

6    our proposal any notes that they may have attended -- that they

7    may have generated during the interviews and any memos or other

8    documents generated, you know, after that would contain

9    substantive information about the interviews.

10           With respect to other interviews that they didn't

11   attend but were given access to the information through 302s,

12   so that -- the second part of Mr. Loonam's comments, we did

13   address that in our answers to the questions we proposed by

14   explaining that the SEC did not solicit input or provide input

15   about things like sequencing of questions and strategy.

16           Those are the important parts, if we understand

17   Mr. Loonam and the defense inquiry here, that really should be

18   the focus, not describe every communication that anyone ever

19   had with the SEC about witness interviews or things like that.

20   So I think we have addressed in a sufficient manner the areas

21   of factual development between the -- where the two agencies

22   participated in a way that should resolve this motion without

23   an evidentiary hearing.

24           THE COURT:  Mr. Grippo, let me ask the same

25   embarrassing question I asked Mr. Loonam, basically, what would

1  it take to get you to give up?  If the question is just what's

2  the scope of what I have to read, well, why don't you just read

3  it?

4        MR. GRIPPO:  Well, Your Honor, a few points on that.

5        First, we do not -- obviously do not control the SEC,

6  and we do not have access to their full files.  It's not like

7  we're talking about a Bankers Box® of documents sitting in a

8  conference room and it's just a question whether we open it and

9  review it.  There are logistical issues and issues we have to

10  work through, and we don't know the SEC's position on those

11  matters yet.

12        And, also, we don't think there is legal support for

13  that kind of approach.  Respectfully, Your Honor, even in the

14  cases that the defense has cited in their underlying motion,

15  the SDNY cases like *Martoma* and *Gupta*, and even in the *Blumberg*

16  case here in New Jersey, the review by the government was

17  always connected to some piece of the investigation that

18  involved either joint activity or investigative action by the

19  two agencies.

20        And I understand Your Honor's --

21        THE COURT:  And believe me, I was not implying by my

22  question that you have to or that the law requires you to.  I

23  was just --

24        MR. GRIPPO:  Understood, Your Honor --

25        (Simultaneous crosstalk.)

United States District Court
Newark, New Jersey

```
1              THE COURT:  -- on a solution to this.

2              MR. GRIPPO:  No, understood, Your Honor.  We

3    appreciate that.  We're obviously open to alternate paths here

4    but I think reviewing the entire SEC file for an investigation

5    that spanned several years would be challenging and not

6    something that I think we're in a position to volunteer to do

7    today.

8              But with that said, if Your Honor is inclined to rule

9    that way, then we will do whatever we have to do to comply.

10   And we're happy to confer internally, and perhaps with the SEC,

11   if the Court would like to hear back from us on that.  But I

12   can't commit to that sitting here today, Your Honor.

13             THE COURT:  No, that was a conversation piece, not an

14   order, and I understand your position.

15             All right --

16             MR. LOONAM:  Your Honor, just to --

17             THE COURT:  Okay.

18             MR. LOONAM:  Your Honor issued the order last time

19   for an evidentiary hearing to determine the scope of the

20   cooperation.  The government came back and asked for a two-week

21   extension, and then filed a letter saying:  Your Honor, it's

22   moot because we have access to the SEC files for these 13 that

23   we've now requested from the SEC.

24             There's no indication that access is a real issue

25   here.
```

1          THE COURT:  I'm going to -- because there's been some

2     back and forth between the last time I ruled on this, I am

3     going to give you something on the scope of the hearing,

4     assuming the hearing is to occur, and the date, assuming that

5     it is to occur.  Okay?  So I will get back to you on that.

6          Let's move to the next issue.  We've got -- there's

7     some subpoena requests?  Yes.  Where are we --

8          MR. LUSTBERG:  Your Honor, I --

9          THE COURT:  Start with the Cognizant ones.  Where are

10    we on that?

11         MR. LUSTBERG:  Mr. Grippo may have more on that.  As

12    Your Honor knows, we served subpoenas on Cognizant.  Unlike

13    L&T, which we'll get to, Cognizant accepted service.

14         Since then we have been involved in a lengthy --

15    lengthy -- a number of meetings where we've met and conferred

16    with regard to the scope of those subpoenas.  Mr. Loonam was on

17    the line here representing Mr. Coburn in that and I represented

18    Mr. Schwartz on that, and Mr. Solano, who has indicated to us

19    that he is available if the Court wants to hear from him today,

20    but he represents Cognizant with regard to that.

21         We have always, I should say, pressed hard to have

22    those documents sooner rather than later.  I think Mr. Solano,

23    if he were here, would tell you that we were -- you know, we

24    have been pushing this very hard, understanding that we wanted

25    to get this moving, we want these materials.  The schedule that

 1    we proposed to the Court was literally the best that we could

 2    get under the circumstances.

 3            But I should tell you, Judge, and we need to really

 4    be on the same page about this, because this is not going to be

 5    that smooth.  We are going to get materials from Cognizant.

 6    They may be completely satisfactory, and we may say fine.  If

 7    you want my prediction, I doubt it.  I think that there will be

 8    fights with regard to privilege.  I think there will be

 9    significant disputes with regard to the scope of their

10    compliance with Your Honor's subpoena.  I do think that there

11    will be proceedings.

12            But what we decided to do was to get from them what

13    they could get from us.  This is a challenging thing for them

14    because they're dealing with a few law firms that represented

15    Cognizant through the course of this matter.  And honestly, if

16    we could have had those documents and be moving forward with

17    this more quickly, we certainly would have.

18            And that does raise an issue I just want to raise

19    with the Court here which is, you know, you've set an October

20    trial date.  Fine.  I mean, we'll all be back to revisit that

21    if we need to.  But this requires everybody to work together on

22    this.  And the idea, you know, that there have been times when

23    other people -- we're not -- this is not a matter of the

24    defense seeking delay.  At times we have made requests to the

25    government which they have either not responded at all or taken

1    days or weeks or months to respond.

2            With Cognizant we have worked hard but we still don't

3    have documents on a subpoena that you authorized in September,

4    and we had to amend and then we served in October.  It's not

5    for lack of work.  People have worked together trying to get

6    this done but this stuff takes time, and so we are working hard

7    to get that.

8            I know we arrived at a schedule whereby production

9    would commence within I think a week or two of today, and then

10   a process would be completed, and there will be a privilege log

11   and the like and all that.  The last I heard, the government

12   had sent in a letter to Your Honor objecting to that schedule.

13   It's a little disturbing that the government would object to

14   that schedule having seen three requests for extensions of time

15   by Cognizant and never having weighed in on it before.

16           But be that as it may, we think that schedule is

17   reasonable.  If Your Honor wants to push Cognizant to produce

18   more quickly, we're all for it.  But we became persuaded, as

19   hard as we worked at it and not because we were trying to

20   delay, that they were producing as quickly as they could under

21   the difficult circumstances.

22           So these are critical documents, as Your Honor knows,

23   to the outsourcing motion, to the scope of that motion, and to

24   the ultimate adjudication of those very significant

25   constitutional issues that we believe exist.  And so we have

1  proposed a schedule.  Cognizant has agreed to it.  The

2  government opposed it, and that's where we are.

3          THE COURT:  Okay.  Mr. Grippo, I'm not entirely clear

4  on what I'm being asked here, but why don't you give me your

5  point of view.

6          MR. GRIPPO:  Thank you, Your Honor.

7          Your Honor, first of all, just to clarify, we did not

8  object to the proposed schedule.  We said we had serious

9  concerns about it.  And so I just want to put that aside for a

10  moment.

11          There are two things I'd like to address with respect

12  to this issue.  One is to just take a step back and refocus and

13  recalibrate so that we do not lose sight of the bigger picture

14  here because I think it's important to view all of these timing

15  issues through the lens of the substantive issue that we are

16  addressing, and that is the very limited *Garrity*-related

17  outsourcing motion.

18          And then second I'll address the schedule.  And just

19  to kind of cut to the chase, I think, Your Honor, we are going

20  to be on the same page or at least there is some common ground

21  on the schedule, although we do have a request to add into it.

22          But with respect to the first part, to remind the

23  Court, in September of 2020, in the Court's September 14th

24  order Your Honor was very clear that the Rule 17 subpoenas were

25  being authorized for a very specific purpose, and that is that

1    the Court granted the issuance of trial subpoenas relevant to

2    the narrow issue of investigative outsourcing as it relates to

3    a potential pretrial motion for suppression of coerced

4    statements of Coburn and Schwartz.

5          Relevance for these purposes means relevant to a

6    potential *Garrity* motion to suppress the coerced statements of

7    the defendants.  The Court, therefore, focuses on accelerated

8    pretrial production of category (a) items, which were the items

9    relevant to the alleged outsourcing germane to such a hearing.

10          So, Your Honor, just keeping that in mind we feel is

11   important because when we look at a schedule that contemplates

12   months of document productions, privilege logs, potential

13   objections, and then at the end of it there's just an

14   open-ended statement that the parties will then propose a

15   schedule for briefing, it can easily turn into something that

16   spans for months and months, and then begins to control and

17   dictate the pace of any trial schedule.

18          And that's our main concern, Your Honor, is making

19   sure that whatever trial schedule we set, and the Court has now

20   set one for October, that it is not completely derailed over

21   this issue because of unnecessarily lengthy proceedings that

22   really should be truncated.  And so we just ask the Court to

23   remain mindful of the narrow scope of the issue pursuant to the

24   Court's order.

25          And then second, with respect to the actual schedule,

1    we have spoken with counsel for Cognizant.  We discussed with

2    them the concept of truncating the schedule, and we still think

3    that a shorter schedule would be reasonable and doable because

4    we understand the universe of responsive documents, at least

5    from Cognizant's perspective, is relatively limited.

6           But with that said, we also appreciate that it may

7    take some time to collect the documents, to review them, and to

8    get them ready for production, to prepare privilege logs.  We

9    want to be reasonable and practical, Your Honor.  We know these

10   things take time, and so we do think it would be totally

11   appropriate and reasonable to truncate the schedule.

12          But with that said, we don't have an objection to the

13   schedule that Cognizant has laid out; however, what we would

14   ask the Court to do is to include in that schedule a briefing

15   schedule for any disputes that arise relating to the subpoena.

16   So instead of just saying, you know, the schedule ends on

17   April 9th, as is currently presented, we would ask the Court to

18   include a deadline for any motions relating to the subpoenas,

19   whether it's a motion to quash or a motion to modify or

20   privilege-related motions.  And that that deadline be close in

21   time to the October 9th date, so maybe two weeks out, or

22   something in that range, to give the parties certainty about

23   what comes next after that multi-month process of document

24   production and related activity.

25          And then, Your Honor, of course there's the issue of

1    the actual *Garrity* motion and any related hearing, and we

2    understand that it may be a little bit too early to address

3    that schedule now but we're hopeful that we can do that when we

4    reconvene in May.

5              But for today we would ask the Court, if Your Honor

6    is going to accept the proposed schedule that goes into early

7    April, we would respectfully ask the Court to include a

8    deadline for any motions relating to the subpoenas.

9              THE COURT:  Well, look, I'm guessing there is going

10   to be ongoing multiple disputes and not a motion or two

11   motions.  So how about this?  How about we set up the proposed

12   schedule but I give you a Magistrate to whom you can bring

13   ongoing disputes as they happen and hopefully on an informal

14   basis the way we do with discovery disputes.  It seems to me

15   that might be a more flexible way of going about this.

16             Does that make any sense to you, Mr. Grippo?

17             MR. GRIPPO:  It does, Your Honor.  I think that's a

18   creative and efficient way to handle this but we would still

19   ask the Court to consider having some deadline in sight so that

20   it's not just left open-ended so that it doesn't just go on for

21   months and months.

22             And, of course, like any deadline it's subject to

23   adjustment if the parties make an application and there's a

24   basis to revisit it, but at least having a backstop in the

25   schedule so that there's some structure to it.  I think that

1   would make sense, Your Honor.

2           THE COURT:  I'm having a hard time getting my mind

3   around what you're asking me; that is, what would that order

4   look like?

5           One of the first things I learned in law school was,

6   tell the Court what you want.  What are you asking me to do?

7           MR. GRIPPO:  I'm asking you, Your Honor, to impose a

8   deadline for any motions relating to the subpoenas.  So if the

9   Court is going to refer the matter to a Magistrate Judge for

10  issues that arise during the course of the document

11  productions, that's totally fine.  That makes sense.  But I

12  think the order should say, you know:  Any and all motions

13  should be filed by April 30th, or something like that, a

14  deadline, so that it's not just left open.

15          Because as it stands now there's no end in sight with

16  this process.

17          THE COURT:  Okay.  I'm not sure if that works or I'm

18  not sure how that fits together with my proposal, which is,

19  what I had in mind was almost like what we do in civil

20  discovery, which is when you hit a snag, you get on the phone

21  with the Magistrate.  If more is required in terms of letter

22  briefs that this -- that document is privileged or beyond the

23  scope of the request, or whatever it is, that can be done.

24          But it seems to me those can be done on a rolling

25  basis; that is, I don't want to have a deadline that indicates:

1    Okay.  Go through this whole process, just let it all fly, and

2    then file a big motion at the end telling us what the disputes

3    were.  I don't know if that's an efficient way to do it.

4           Now, what is the proposed schedule?  Remind me, the

5    Cognizant proposed schedule.

6           MR. GRIPPO:  Your Honor, it begins with an initial

7    production -- I don't have it right in front of me, but it

8    begins with an initial production in January, a supplemental

9    production in February.  Privilege logs being produced I

10   believe in February or March.  Meetings between counsel.  And

11   then ultimately the key date, the end date as we understand it

12   is April 9th, which is the date by which the parties will

13   inform the Court if the subpoena has been satisfied or if there

14   are open disputes.

15          And then the proposal says that, you know:

16   Thereafter, the parties will propose a briefing schedule for

17   any disputes.

18          And I think everyone on this call or Zoom can

19   acknowledge that there is a high likelihood -- including

20   Mr. Lustberg acknowledge it, that there's a high likelihood of

21   disputes, some of which may be complex.  And that's the part

22   that gives us concern is the open-ended ending of that time

23   period.

24          And of course the Court has now set a trial date so

25   that does provide, you know, some structure to the end of this,

1    but we are trying to avoid being in a situation where the sole

2    basis for an adjournment request of the trial date is the

3    ongoing motion practice relating to this subpoena.

4            THE COURT:  Okay.  I'll hear -- I don't know,

5    Mr. Lustberg, whoever wants to --

6            MR. LUSTBERG:  Yes.  Yes, thank you, Judge.  Just a

7    few reactions to that.

8            Look, I'm -- we're -- I'm fine with Your Honor's

9    suggestion to have somebody monitor discovery and resolve

10   disputes as they go along.

11           One of the reasons that we proposed the schedule that

12   we did, which included setting a briefing schedule after that

13   date, was that we really don't know what the issues are.  So we

14   don't -- I mean, it may be that we can file briefs in a week

15   and maybe it will take longer.

16           The idea is that -- and by the way, I should note

17   that the party that will be involved in this briefing is not on

18   this call, that's Cognizant, because this would be a motion to

19   quash by them or to compel by us.  So I don't think -- I'm not

20   sure this is completely fair to do, but it strikes me that

21   reasonable counsel getting together, understanding that we're

22   trying to move this forward, will come to a briefing schedule

23   that makes sense, but this does require everybody to work

24   together.

25           And let me just say in that regard, I mean, the

```
 1    government is pressing and pressing timely, we have to move
 2    this, we need briefing schedules.  I mean, we have made
 3    requests -- I just want to give you one example, and I don't
 4    mean to complain.  It's water under the bridge to a certain
 5    extent.  But in late July we asked the government to answer a
 6    simple question to us, which is when were certain downloads,
 7    so-called downloads which are the interviews that Cognizant did
 8    of various witnesses, provided to the government?
 9              They answered that correspondence, which we sent them
10    on July 27th, on September 11th with the answer:  We won't tell
11    you.
12              You know, if they're going to press us for time, they
13    have to take seriously that everybody has to move this along.
14    And so I just think we should be evenhanded with the way we do
15    this, that -- now I vented.  So that having been said, we are
16    perfectly happy to have some other way of resolving issues as
17    they go along.  There will be issues.
18              And let me just finally say this, it is true that
19    this Court's September 14th order for now, and you were very
20    clear it was for now, limited the inquiry to *Garrity*.  But you
21    said, and I'm reading, too:  The hearings ordered by the Court
22    here may alter the picture as to the outsourcing claim.
23              And what I think, what I can tell you, I can predict
24    what our position is likely to be, which is that I believe
25    we're going to be able to show the Court that the government
```

1   outsourced this investigation.  And once we prove that to the
2   Court, there will not only be *Garrity* claims, there will be
3   *Brady* claims.

4           And it's not going to be *Brady* in the sense that the
5   government has to get *Brady*, you know -- uncover information.
6   But if Cognizant is acting in the shoes of the government, then
7   what's in Cognizant's possession that's exculpatory is *Brady*
8   material, and I'm not making this up.  That's what *Blumberg*
9   says, and we will show Your Honor that's what the case law
10  stands for.

11          And what I understand Your Honor did on
12  September 14th was say we haven't made that threshold showing
13  yet.  You were very clear that we hadn't really even had the
14  opportunity to do that.  That was one reason why you were
15  providing us the discovery you were, but that that may change.
16  That is going to affect the scope of the subpoenas, and so that
17  is going to be litigated at that time.

18          But as you recognize, that's what we need to get this
19  information for, and that's what we're trying to get.

20          And believe me, we will move this as quickly as we
21  can but everybody has to work together to do that.  We're happy
22  to do this in some alternative way such as having a Magistrate
23  Judge preside over discovery disputes.  There are going to be
24  sticky issues of privilege that are going to have to be
25  resolved, and we'll work together to do that as expeditiously

1    as possible but it has to be done right.

2            We have a client here, as does -- and this applies to

3    Mr. Coburn as well, we are not only presumed innocent but

4    candidly are.  And we want the opportunity to fully vindicate

5    their due process rights through careful hearings of the sort

6    that I know this Court will provide.

7            This should not be rushed and --

8            THE COURT:  Here's what I'm going to do.  The way I

9    see this going is, I think you're going to have day-to-day and

10   week-to-week disputes, and I think having a Magistrate sort of

11   on call and educated about the case will really minimize some

12   of that friction as you go along.

13           I suspect you're going to have some big issues at the

14   end of it all that you will not have been able to work out, and

15   that that will be the subject of motion practice once this

16   whole schedule -- once the agreed upon schedule ends on April,

17   whatever it was, 9th.

18           But here's what I'm going to do.  I'm going to give

19   you a date to file motions in April.  It could be that you're

20   going to come back to me in April and say, Well, look at all

21   that's happened since we talked in January.  You know what, I

22   need a little more time to prepare my motion given all that.

23   Fine.  But let's give it a control date of -- we can call it

24   April 23rd.  I don't even know if that's a Saturday or Sunday

25   as I sit here.  But that will be the target date for filing the

United States District Court
Newark, New Jersey

1   motions.

2          If there is good -- you won't find me unreasonable if

3   that turns out to be an unreasonable amount of time to get your

4   motions together.  But I think you probably can and you

5   probably don't need to wait until the very last thing has

6   happened in the production process before you start thinking

7   about what the motion is going to look like.

8          There will be things you can do going along.  I know

9   you all can do more than one thing at a time.

10         So that's what we're going to do.  We're going to --

11  so the Cognizant proposed schedule plus, and the "plus" is

12  motions to be filed by April 23.  Okay?  As always, subject to

13  reasonable applications.

14         All right.  Now, we have -- the next sticky issue is

15  the L&T subpoenas, which apparently we were having -- we did a

16  service or jurisdiction glitch here.  Who wants to talk about

17  that?

18         MR. LUSTBERG:  I guess Roberto can.

19         MR. FINZI:  Yeah, I'm happy to address it, Your

20  Honor.

21         Just by way of very brief background so we have some

22  context, L&T is the Indian construction company with which

23  Cognizant contracted to build the building in question and for

24  which the alleged bribe was paid to get a building permit.

25         THE COURT:  Yes, I remember.

```
1              MR. FINZI:  Okay.  L&T is significant in various

2    respects; namely that it is -- or one is that it is the alleged

3    bribe payor in the sense that they are the ones that are

4    alleged to have transmitted the bribe from Cognizant to the

5    Indian government official on behalf of L&T.

6              The second way in which they're significant is that

7    they have absolutely denied any involvement in any of this.  So

8    they have said that they, after doing a thorough investigation,

9    have found no evidence.

10             So you have a supposed member of the conspiracy or at

11   least somebody along the chain that says:  We don't know what

12   you're talking about.  We didn't do this.  We can't find any

13   evidence of it.

14             That is, at a minimum, we think either Brady material

15   or certainly material to the defense and potentially

16   exculpatory.

17             When we went to L&T to ask them for relevant material

18   and information, they said:  No, thank you.

19             Again, we think that's curious for a couple different

20   reasons.  One is, as a general matter, L&T is active in the

21   U.S.  They have contracts with -- or at least a contract with

22   the U.S. government, so there may be an issue of what I think

23   of that as general jurisdiction.

24             But more importantly, in the course of the

25   investigation they cooperated repeatedly with the U.S.
```

1    Attorney's Office.  So they have U.S. counsel.  They came in

2    and made presentations to the government.  They provided the

3    government documents and information.  They made their pitch or

4    presentation, more than one.  They suggested to the government

5    which witnesses the government ought to interview, which the

6    government took them up on and interviewed.  And now they're

7    saying:  Judge, I don't want any part of this.

8            Our position is they can't -- they passed that

9    rubicon, and we need to deal with the service and jurisdiction

10   issues but we need that information, Your Honor.  It's material

11   to the defense and potentially exculpatory.

12           We've asked the government -- this issue may not yet

13   be ripe for the Court.  We've asked the government for

14   assistance on that.  Presumably they are the ones who sent

15   document -- well, not presumably, but they are the ones who

16   sent document preservation orders to L&T's affiliate in the

17   U.S.  They are the ones that engaged in a dialogue with L&T.

18   L&T was clearly willing to respond to the government.

19           It's our hope that if the government -- with the

20   government's help we can get L&T's attention.  If we can't, we

21   will need to be back to the Court to ask for the Court's

22   intervention in getting L&T in front of the Court as a matter

23   of service and jurisdiction, but I don't know that that's

24   today's problem, Your Honor.  We just wanted to make sure, in

25   the interest of previewing what may be thorny issues, that we

1   brought it to Your Honor's attention.

2           THE COURT:  Okay.  Well, you key it up for me, and

3   I'll give you a decision.

4           Mr. Grippo, I'm not going to put you on the spot.

5   Apparently they have requested assistance either through an

6   MLAT or however with getting what they want.  Does the

7   government have a position on that yet, or are you prepared to

8   respond?

9           MR. GRIPPO:  Your Honor, we have not responded

10  directly to defense counsel yet.  We have their request.  But

11  since we're on the record and the issue is being raised, I can

12  say that we do not intend to get involved in this.

13          If defense counsel files an application, I don't

14  envision us getting in the way or objecting, but this is really

15  not our issue.  We have turned over everything we have from

16  L&T.  We do not have an ongoing agreement or relationship or

17  cooperation relationship of any sort with L&T, and we've turned

18  over everything in our possession, custody, and control that we

19  received from L&T.

20          We are certainly not going to pursue an MLAT to India

21  or take other steps to assist the defense in this regard.  With

22  that said, if they file an application, we are not going to get

23  in the way but this does not seem to be a fight that the

24  government should or will jump into.

25          MR. LEWIN:  Judge, if I might?  Nick Lewin for

1    Mr. Coburn, with your permission.

2              THE COURT:  Oh, there you are.  Yes.  Go ahead.

3              MR. LEWIN:  I mean, Judge, it is extraordinarily

4    striking that suddenly with respect to the L&T subpoena this is

5    not a concern of the government.  Suddenly with respect to the

6    L&T subpoena this is an issue between Mr. Coburn and

7    Mr. Schwartz on one hand and a company on the other hand, a

8    company that spent months and months cooperating with the

9    government, that produced volumes of documents but now the

10   government --

11             (Simultaneous crosstalk.)

12             MR. LEWIN:  Excuse me, Your Honor?

13             THE COURT:  They have given you access to those,

14   right?

15             MR. LEWIN:  They have given us access to some of the

16   documents produced, but this is no longer the government's

17   concern, unlike the CTS subpoena where the government elected

18   over a course of months to litigate repeatedly about our

19   entitlement to those documents, documents that regard real,

20   genuine constitutional issues.  Now that we passed that point,

21   the government is talking about timing and limiting and the

22   like.

23             So, Your Honor, I think there is nothing for the

24   Court to do now, but it is striking that with respect to L&T

25   and in light of a history of months-long intensive cooperation

1    and the centrality of L&T in a case, you know, alleged bribe

2    payor who denies having paid a bribe, that suddenly the

3    government is not willing to even request voluntary

4    cooperation; whereas with respect to CTS it seemingly is their

5    position to spend months litigating our entitlement to

6    documents.

7              MR. GRIPPO:  Your Honor, if I can just respond very

8    briefly?

9              THE COURT:  Sure.

10             MR. GRIPPO:  I'm not sure why it's so striking to

11   counsel but as counsel may recall, we opposed the issuance of

12   both the CTS and L&T subpoenas and litigated on both fronts,

13   and the Court ruled.  And now the question is service and

14   jurisdiction, and those are not our issues respectfully, Your

15   Honor, at this point.

16             So I will leave it at that.  And as I said, Your

17   Honor, if they file an application, I don't anticipate us

18   having much of a role unless, of course, the Court requests our

19   position.

20             THE COURT:  All right.  So defense counsel finds it

21   striking and government counsel do not.  Now we're getting

22   somewhere.

23             Any application you intend to file, I'll hear you.

24             MR. GRIPPO:  Your Honor, one last thing --

25             (Simultaneous crosstalk.)

1          MR. GRIPPO:  I apologize, but one last point is just

2    to remind the Court, with the focus being on *Garrity*, the Court

3    should also remember that L&T is not the former employer of

4    either of the two defendants.  And so to the extent the issue

5    is limited in the way we think it is, it's unclear what the

6    *Garrity*-related claim could end up being with respect to L&T in

7    that particular subpoena.  But putting that aside, it appears

8    that the issue is really limited to jurisdiction and service.

9          THE COURT:  Yes, one step at a time.  I'm sure --

10   yes, Mr. Finzi?

11         MR. FINZI:  Sorry, Your Honor, I was just going to

12   make the point that clearly our application to L&T goes beyond

13   *Garrity* issues.  This will be a merits-based request for

14   documents based on, you know, the actual merits of the case,

15   the truth and falsity of the government's allegations.  And so

16   to suggest that it's limited to a *Garrity* issue misunderstands

17   what it is we're looking for.  Sure we're looking for that.

18         But we're also looking for -- there's a

19   co-conspirator that says:  I didn't participate in this.  I

20   have no evidence.

21         And they have said publicly and to the Stock Exchange

22   and to all their investors and to anyone who will listen that

23   they're not responsible and they didn't participate in this.

24   So we are going to want merits discovery.

25         But I hear Mr. Grippo.  I am going to take his

United States District Court
Newark, New Jersey

1    response on the record as a response to our letter asking for

2    information, issue is joined, and we'll take it from there.

3              THE COURT:  Yes.  Do that.  Okay.  Let's get back to

4    things we can profitably deal with today.

5              All right.  And, again, I'm following along actually

6    at the moment in Mr. Lustberg's letter, but that doesn't

7    necessarily define the entire agenda.  So if anybody else has

8    anything else, please tell me.  But for now I'm at item D of

9    Mr. Lustberg's letter which is "other discovery issues."

10             Mr. Lustberg, why don't you tell us what you mean.

11             MR. LUSTBERG:  So actually, Judge, just before we get

12   there, there's one thing that's pertinent to the last

13   discussion, which is if Your Honor remembers, in your

14   September 14th letter you divided the subpoena categories into

15   groups, into category (a) and category (b).

16             I think the Court said at that time that it would

17   issue a decision with regard to category (b), which we haven't

18   received.

19             But that's okay because I think at this point we've

20   all learned some more, and I think what we would offer to the

21   Court in regard to category (b) is that both defendants will

22   submit some sort of consolidated category (b) subpoena so you

23   can look at it all at one time.

24             We have learned some more since that time, and so we

25   will supplement what we asked for before.  So it's kind of a

1  happy happenstance that Your Honor hasn't quite ruled on that

2  since time has kind of overtaken it a bit.  And we'll be

3  prepared to do that very expeditiously, and that we hope will

4  facilitate Your Honor's review.

5          THE COURT:  So my grand strategy worked out.  Okay.

6          MR. GRIPPO:  Your Honor, just to jump in very briefly

7  on that.  My comments earlier were directed at the category (a)

8  subpoena --

9          THE COURT:  Yes, I understand.  I understand your

10 point exactly, which is the prioritization of the category (a),

11 but that's not the whole universe of what we're talking about

12 or will be talking about.

13         There were some other things.  Now, the first one was

14 preservation of rough notes of meetings.  Apparently that sort

15 of dropped by the wayside at some point.  The defense made a

16 request but you haven't gotten a yes or a no; am I saying that

17 correctly?

18         MR. LUSTBERG:  Yes.

19         MR. FINZI:  Yes.

20         THE COURT:  Anyway, Mr. Grippo, not to ambush you,

21 what I'm looking at, page 5 of Mr. Lustberg's New Year's Eve

22 letter.

23         MR. GRIPPO:  Is there a question, Your Honor, or are

24 you just asking --

25         THE COURT:  The question is, they say they have made

1    a request and haven't gotten an answer.  Do you know what your

2    answer is?  Have you given them an answer?

3            MR. GRIPPO:  To the extent it's to preserve agent

4    notes, we have done that.  But we will respond separately on

5    that point to counsel, Your Honor.

6            THE COURT:  Yes, why don't you do that.  Give them a

7    written response just so they have something to work off.

8            MR. GRIPPO:  Certainly, Your Honor.

9            I think there's only one other issue but,

10   Mr. Lustberg, do you want to --

11           MR. LUSTBERG:  Yes, it's frustrating, you know, we

12   made that request in April but whatever.  Okay.

13           THE COURT:  All right.

14           MR. LUSTBERG:  So the final issue, and this could be

15   the subject of briefing if Your Honor wishes, is that there was

16   a so-called 2703(d) order to a -- that the government sought

17   with regard to personal emails of a former L&T employee who

18   apparently interfaced regularly with the Indian government.

19   They sought that order and ultimately did not turn over any

20   documents pursuant to it.  Apparently there weren't any.

21           We have sought the order, and why did we do that?

22   This is not -- and the government's response has been:  What do

23   you need it for?  You have no standing to move to suppress

24   those materials.

25           That's not what this is about.  If the government was

1   seeking information regarding somebody who was from L&T who was

2   interfacing with the Indian government, one suspects that there

3   was a reason for that, and that that reason could very well

4   uncover exculpatory evidence for us.

5          So we requested that order.  The government said:

6   No, you don't get it because you have no standing to move to

7   suppress.

8          We then sent a follow-up letter to the government

9   explaining what our theory was as to why this could very well

10  engender *Brady* information, and the government has not

11  responded to that.

12         And so our -- when we -- if we have a response, we

13  can make an appropriate application to the Court with regard to

14  that.  But one of the problems with *Brady* always is, the

15  government explains to us, Well, we don't know what *Brady* is

16  because we don't know what your theory is.

17         So here we tried to explain to the government why it

18  is that we thought this could be potentially exculpatory.  And

19  I think it's pretty clear why it would, if they were trying to

20  get information regarding somebody who was interacting from

21  L&T, who is, you know, this briber, alleged briber who was

22  interacting with the Indian authorities, you could see why we

23  would be interested in that because it could very well show

24  information that would be of assistance to us, or at least

25  highly relevant to the offense material is the word that

1    appears in Rule 16.

2              THE COURT:  Let me slow you down.  Am I correct

3    you're saying that they didn't get anything in response to the

4    order, correct?  Or did I misunderstand you?

5              MR. LUSTBERG:  I don't -- I don't think -- I'm not --

6    actually, as I sit here right now, I'm not sure.  I don't know

7    if anybody else on the call --

8              MR. FINZI:  I believe -- well, let me let Mr. Grippo.

9    He would know it best.

10             THE COURT:  Mr. Grippo, I'm having trouble following

11   here.

12             MR. GRIPPO:  Your Honor, we produced the data we

13   received from the email provider.  The defense has the data,

14   and we have represented to the defense that we do not intend to

15   use that data at trial as of now.  If that changes, we'll

16   reconsider their request.

17             We also pointed out that they do not have standing so

18   that -- in many cases, as Your Honor knows, the government will

19   turn over search warrant affidavits and other materials, court

20   applications, so that the defendant can assess whether to file

21   a motion to suppress.

22             That issue doesn't exist here so now we're left with,

23   what is in the application that may be discoverable?  We have

24   reviewed it.  We have turned over the underlying evidence

25   that's discussed in the application so they have the

1   substantive evidence-related information, and they have the

2   actual production from the email provider.

3           So all they're asking for is our application, which

4   really is our work product, mental impressions, and the like,

5   and, you know, statutory cites, and things like that, that are

6   common.  And we've reviewed it, Your Honor, and we don't think

7   it's discoverable or that there's a basis to turn it over.

8           The defense hasn't cited to any supporting authority

9   that would support their request beyond just laying out their

10  theory, which we have considered and we haven't responded to

11  them in writing yet.  But since we're dealing with this on the

12  record, I will tell them here that we are not going to produce

13  the application at this time for all of those reasons.

14          THE COURT:  Okay.  Here's what I am going to ask you

15  to do.  Mr. Grippo, send me -- I'm sure I can find it if I look

16  hard enough, but send me a copy of the application and order.

17  I'll review it in camera.  If I agree with you that there's no

18  *Brady* in there, then that will be the end of it.  So we'll

19  handle it that way.

20          MR. GRIPPO:  Certainly, Your Honor.  We will send the

21  Court a copy promptly.

22          THE COURT:  Get it to Ms. Creegan, and she will get

23  it to me.  But that seems like the most straightforward way to

24  deal with it.

25          MR. LUSTBERG:  Judge, if the Court will accept it,

```
 1    obviously we don't know what's in there, but we may, if Your
 2    Honor is okay with it, write a short letter to the Court
 3    explaining why we think it may be -- what's in there may be
 4    exculpatory, because you don't have the benefit of that.  We've
 5    articulated that theory to the government but not yet to the
 6    Court because we haven't made an application.  But we would
 7    like to provide Your Honor with our sense of why that
 8    information is potentially material under Rule 16 and *Brady*.
 9              THE COURT:  Sure.  I thought I understood what you
10    were saying but if you want to expand on that a little bit,
11    sure.  Give me a letter and then I'll look -- that is, just
12    state your theory of why you think this would be --
13              (Simultaneous crosstalk.)
14              MR. LUSTBERG:  It will be a short letter.
15              MR. GRIPPO:  Your Honor, in an effort --
16              THE COURT:  I mean, look --
17              MR. GRIPPO:  In an effort to --
18              THE COURT:  Yes --
19              MR. GRIPPO:  -- reduce the number of filings, I
20    believe counsel attached their letter to the government as an
21    exhibit to the December 31st filing.  So if their theory is
22    completely presented in that letter, that may be sufficient,
23    but obviously that's up to counsel to decide.  I just wanted to
24    point that out.
25              THE COURT:  Are you talking about that December 15
```

```
1   letter?
2           MR. GRIPPO:  Yes, it's Exhibit B to the New Year's
3   Eve filing.  But I don't know if that's the full picture, Your
4   Honor, so I'm not discouraging them.  I am --
5           THE COURT:  Yes --
6           MR. GRIPPO:  -- just pointing that out for
7   everyone's --
8           THE COURT:  How about that, Mr. Lustberg?  Does that
9   do the trick?
10          MR. LUSTBERG:  We'll take a look, Judge, and we will
11  let you know promptly whether we want to supplement that at
12  all --
13          THE COURT:  Yes, you can just email me.
14          MR. LUSTBERG:  I didn't recall we attached that.
15          THE COURT:  Yes, because he makes a point, if you
16  feel you have articulated it there, no need to do it again.
17          MR. LUSTBERG:  No.  So if that's the case then we'll
18  just point Your Honor to that letter as --
19          THE COURT:  Yes.
20          (Simultaneous crosstalk.)
21          MR. LUSTBERG:  -- in camera.  But we'll take a look
22  and see if we want to supplement that in any way.  And if we
23  do, we will do it quickly and briefly.
24          THE COURT:  Yes.  Okay.  That made a certain amount
25  of sense, Mr. Grippo.  Thank you.
```

1              All right.  That brings us to the end of the agenda

2    as seen from the point of view of Mr. Lustberg.

3              Now, what else do we have?

4              MR. GRIPPO:  That's it from our perspective, Your

5    Honor.  I'm sure if we poll the group we can come up with

6    additional issues, but I think that's it from our perspective.

7              THE COURT:  All right.

8              MR. LOONAM:  Nothing on behalf of Mr. Coburn at this

9    time.

10             THE COURT:  Okay.  I think we're done.  Thank you,

11   everyone.  Now, one other thing is -- you know what, I'm not

12   going to ask somebody to do me an order because it's going to

13   be woolly.  I will do the order.

14             Okay.  Thanks, everyone.

15             MR. GRIPPO:  Thank you, Your Honor.

16             THE COURT:  Let me just ask the court reporter,

17   Ms. Villanti, I would like at least a rough transcript as soon

18   as you can do it.

19             THE COURT REPORTER:  Yes, Judge.

20             THE COURT:  Thanks a lot.  Okay.  Thanks, everybody.

21             (Proceedings conclude 4:20 p.m.)

22

23

24

25

```
1        -------------------------------------------------

2        I certify that the foregoing is a correct transcript

3   from the record of proceedings in the above-entitled matter.

4

5

6   /S/Rhéa C. Villanti, CCR, CRCR              1/7/21

7   Court Reporter/Transcriber

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

United States District Court
Newark, New Jersey

MR. FINZI:
[6]    7/15
38/19 39/1
44/11
46/19 49/8
MR.
GRIPPO:
[31]    4/20
5/3 16/10
21/20
21/23
21/25 23/4
23/24 24/2
28/6 31/17
32/7 33/6
41/9 43/7
43/10
43/24 44/1
46/6 46/23
47/3 47/8
49/12
50/20
51/15
51/17
51/19 52/2
52/6 53/4
53/15
MR. LEWIN:
[4]    41/25
42/3 42/12
42/15
MR.
LOONAM:
[14]
10/20
10/23 13/2
13/5 13/8
15/3 15/20
18/12
18/14 21/1
21/18
24/16
24/18 53/8
MR.
LUSTBERG:
[20]    3/12
3/17 3/20
6/8 6/11

34/6 38/18
45/11
46/18
47/11
47/14 49/5
50/25
51/14
52/10
52/14
52/17
52/21
THE COURT
REPORTER:
[1]    53/19
THE COURT:
[69]
THE
COURTROOM
DEPUTY:
[2]    9/16
9/19

/

/S/Rhéa [1]
54/6

0

07101 [1]
1/8
07102 [1]
1/14
07102-5310
[1]    2/24

1

1/7/21 [1]
54/6
10/4 [1]
9/20
10019 [1]
2/20
10110 [1]
2/12
10119 [1]
2/16
10281 [1]
2/5
11th [1]
35/10
120 [1]

1285 [1]
2/19
13 [5]
11/9 11/22
13/11
14/10
24/22
1400 [1]
1/17
14th [4]
28/23
35/19
36/12
45/14
15 [1]
51/25
16 [2]
49/1 51/8
17 [1]
28/24
19-120 [1]
3/4

2

20001-2113
[1]    2/8
2018 [1]
12/7
2020 [1]
28/23
2021 [1]
1/9
20530 [1]
1/17
21 [1]
54/6
2113 [1]
2/8
23 [1]
38/12
23rd [1]
37/24
250 [1]
2/4
2520 [1]
2/15
2703 [1]
47/16
27th [1]

2:19-cr-001
20-KM [1]
1/4

3

302s [9]
8/11 11/22
11/22 12/1
12/4 14/6
20/17
20/21
22/11
30th [1]
32/13
31st [1]
51/21
3403 [1]
1/24
34th [1]
2/12
3:00 [2]
1/9 3/2
3rd [3]
5/25 9/8
9/22

4

4:20 p.m
[1]    53/21
4th [1]
9/17

5

50 [1]    1/8
500 [1]
2/12
51 [1]    2/8
5310 [1]
2/24

7

732 [1]
1/24

8

895-3403
[1]    1/24

9

970 [1]

9:00 a.m
[2]    9/17
9/21
9th [4]
30/17
30/21
33/12
37/17

A

a.m [2]
9/17 9/21
able [4]
6/24 6/25
35/25
37/14
about [33]
3/24 6/1
8/18 10/3
13/10
13/13 15/4
16/4 17/6
19/12
20/25 22/9
22/15
22/19 23/7
26/4 28/9
30/22
31/11
31/11
31/15
37/11 38/7
38/16
39/12
42/18
42/21
46/11
46/12
47/25
51/25 52/8
above [1]
54/3
above-entit
led [1]
54/3
absolutely
[2]    7/2
39/7

**A**

**absorbed**
**[1]** 3/7
**academic**
**[1]** 15/4
**accelerated**
**[1]** 29/7
**accept [2]**
31/6 50/25
**accepted**
**[2]** 19/16
25/13
**access [7]**
12/2 22/11
23/6 24/22
24/24
42/13
42/15
**acknowledge**
**[2]** 33/19
33/20
**acknowledge**
**d [1]** 8/10
**acting [3]**
12/11
13/22 36/6
**action [2]**
1/3 23/18
**actions [2]**
6/19 7/1
**active [1]**
39/20
**activity**
**[4]** 13/21
18/3 23/18
30/24
**actual [4]**
29/25 31/1
44/14 50/2
**actually**
**[5]** 18/19
19/8 45/5
45/11 49/6
**add [1]**
28/21
**additional**
**[7]** 11/20
14/20 15/7
15/13

53/6
**address [8]**
6/18
19/11
20/15
22/13
28/11
28/18 31/2
38/19
**addressed**
**[3]** 7/18
17/3 22/20
**addresses**
**[1]** 18/8
**addressing**
**[1]** 28/16
**adjourning**
**[1]** 5/10
**adjournment**
**[1]** 34/2
**adjudicatio**
**n [1]**
27/24
**adjustment**
**[1]** 31/23
**admission**
**[1]** 20/6
**admit [1]**
14/4
**admitted**
**[2]** 11/2
14/19
**advance [1]**
11/4
**affect [1]**
36/16
**affidavits**
**[1]** 49/19
**affiliate**
**[1]** 40/16
**afraid [2]**
4/24 4/25
**after [13]**
4/1 4/6
11/6 12/15
14/9 19/7
20/16
20/19
20/19 22/8

34/12 39/8
**afternoon**
**[3]** 3/3
4/20 9/16
**again [6]**
6/8 10/14
17/22
39/19 45/5
52/16
**against [1]**
12/10
**agencies**
**[3]** 18/4
22/21
23/19
**agency [1]**
19/22
**agenda [2]**
45/7 53/1
**agent [1]**
47/3
**agree [4]**
5/2 16/23
20/2 50/17
**agreed [2]**
28/1 37/16
**agreement**
**[3]** 14/3
16/25
41/16
**agrees [1]**
15/20
**ahead [2]**
21/24 42/2
**aided [1]**
1/22
**air [1]**
10/6
**ALEXANDRA**
**[1]** 2/11
**all [42]**
3/9 3/16
4/16 6/12
7/5 7/6
8/8 9/4
9/12 9/12
9/20 10/8
11/21
15/17 16/9

21/19
24/15
26/20
26/25
27/11
27/18 28/7
28/14
32/12 33/1
37/14
37/20
37/22 38/9
38/14
43/20
44/22 45/5
45/20
45/23
47/13 50/3
50/13
52/12 53/1
53/7
**allegations**
**[1]** 44/15
**alleged [8]**
8/3 8/4
29/9 38/24
39/2 39/4
43/1 48/21
**allow [1]**
14/13
**almost [1]**
32/19
**along [9]**
6/1 6/3
34/10
35/13
35/17
37/12 38/8
39/11 45/5
**already [3]**
14/19
14/21
19/13
**also [6]**
7/24 23/12
30/6 44/3
44/18
49/17
**alter [1]**
35/22

**alternate**
**[1]** 24/3
**alternative**
**[1]** 36/22
**although**
**[2]** 4/24
28/21
**always [5]**
3/14 23/17
25/21
38/12
48/14
**am [14]**
3/13 7/5
8/15 9/2
9/5 9/13
9/24 16/7
25/2 44/25
46/16 49/2
50/14 52/4
**ambush [1]**
46/20
**amend [1]**
27/4
**Amendment**
**[1]** 7/3
**AMERICA [1]**
1/3
**AMIR [1]**
2/15
**among [1]**
6/17
**amount [2]**
38/3 52/24
**analysis**
**[3]** 13/19
21/4 21/5
**analyzed**
**[1]** 12/5
**another [1]**
10/17
**answer [7]**
12/17
15/14 35/5
35/10 47/1
47/2 47/2
**answered**
**[3]** 21/2
21/11 35/9
**answers [2]**
21/14

| A | appearances | areas [1] | ASSISTANT | 24/20 25/2 |
|---|---|---|---|---|
| answers... | [1] 3/5 | 22/20 | [1] 1/13 | 25/5 26/20 |
| [1] 22/13 | appears [2] | argued [1] | assuming | 28/12 |
| anticipate | 44/7 49/1 | 11/7 | [2] 25/4 | 37/20 |
| [1] 43/17 | application | argument | 25/4 | 40/21 45/3 |
| any [32] | [13] | [1] 15/24 | attached | background |
| 4/12 4/13 | 31/23 | arise [2] | [2] 51/20 | [1] 38/21 |
| 11/10 | 41/13 | 30/15 | 52/14 | backstop |
| 11/11 | 41/22 | 32/10 | attend [1] | [1] 31/24 |
| 11/17 | 43/17 | around [1] | 22/11 | Bankers [1] |
| 11/25 | 43/23 | 32/3 | attended | 23/7 |
| 15/25 | 44/12 | arrangement | [5] 11/10 | based [3] |
| 17/18 | 48/13 | s [1] 8/17 | 20/6 22/4 | 18/10 |
| 17/21 18/5 | 49/23 | arrived [1] | 22/5 22/6 | 44/13 |
| 22/6 22/7 | 49/25 50/3 | 27/8 | attention | 44/14 |
| 29/17 | 50/13 | articulated | [2] 40/20 | basically |
| 30/15 | 50/16 51/6 | [2] 51/5 | 41/1 | [1] 22/25 |
| 30/18 31/1 | applications | 52/16 | attitude | basis [7] |
| 31/8 31/16 | s [2] | as [68] | [1] 10/9 | 20/9 20/13 |
| 31/22 32/8 | 38/13 | aside [3] | attorney | 31/14 |
| 32/12 | 49/20 | 15/23 28/9 | [6] 1/13 | 31/24 |
| 33/17 39/7 | applies [1] | 44/7 | 1/13 1/16 | 32/25 34/2 |
| 39/7 39/12 | 37/2 | ask [13] | 1/16 13/17 | 50/7 |
| 40/7 41/17 | appreciate | 17/5 22/24 | 21/9 | be [100] |
| 43/23 | [2] 24/3 | 29/22 | Attorney's | became [1] |
| 47/19 | 30/6 | 30/14 | [1] 40/1 | 27/18 |
| 47/20 50/8 | approach | 30/17 31/5 | authorities | because |
| 52/22 | [1] 23/13 | 31/7 31/19 | [1] 48/22 | [25] 3/13 |
| anybody [4] | appropriate | 39/17 | authority | 4/12 7/12 |
| 3/9 8/25 | [2] 30/11 | 40/21 | [1] 50/8 | 15/23 |
| 45/7 49/7 | 48/13 | 50/14 | authorized | 18/17 |
| anyone [3] | April [10] | 53/12 | [2] 27/3 | 21/16 |
| 8/17 22/18 | 30/17 31/7 | 53/16 | 28/25 | 24/22 25/1 |
| 44/22 | 32/13 | asked [8] | available | 26/4 26/14 |
| anything | 33/12 | 19/3 22/25 | [1] 25/19 | 27/19 |
| [4] 3/9 | 37/16 | 24/20 28/4 | Avenue [4] | 28/14 |
| 19/18 45/8 | 37/19 | 35/5 40/12 | 1/17 2/8 | 29/11 |
| 49/3 | 37/20 | 40/13 | 2/12 2/19 | 29/21 30/3 |
| anyway [2] | 37/24 | 45/25 | avoid [5] | 32/15 |
| 4/14 46/20 | 38/12 | asking [6] | 11/15 | 34/18 |
| apologize | 47/12 | 32/3 32/6 | 12/15 19/5 | 45/19 48/6 |
| [2] 21/25 | April 23 | 32/7 45/1 | 19/9 34/1 | 48/16 |
| 44/1 | [1] 38/12 | 46/24 50/3 | | 48/23 51/4 |
| apparently | April 23rd | assess [2] | B | 51/6 52/15 |
| [5] 38/15 | [1] 37/24 | 4/1 49/20 | back [15] | 53/12 |
| 41/5 46/14 | April 9th | assist [1] | 10/12 | been [16] |
| 47/18 | [2] 30/17 | 41/21 | 15/16 | 5/8 6/24 |
| 47/20 | 33/12 | assistance | 15/22 18/1 | 6/25 9/24 |
| appear [1] | are [65] | [3] 40/14 | 21/10 | 11/8 11/14 |
| | | 41/5 48/24 | 21/21 | |

**B**

**been...**
**[10]**
13/10
21/16   25/1
25/14
25/24
26/22
33/13
35/15
37/14
47/22
**before [10]**
3/1 3/23
9/23 10/22
12/8 17/11
27/15 38/6
45/11
45/25
**beforehand**
**[1]**   12/4
**beginning**
**[1]**   5/9
**begins [3]**
29/16 33/6
33/8
**behalf [3]**
10/23 39/5
53/8
**being [7]**
28/4 28/25
33/9 34/1
41/11 44/2
44/6
**believe [9]**
8/10 15/5
23/21
27/25
33/10
35/24
36/20 49/8
51/20
**believed**
**[1]**   16/24
**benefit [1]**
51/4
**best [3]**
9/13 26/1
49/9

**better [1]**
9/3
**between**
**[11]**   9/2
11/2 11/18
12/20 15/5
16/25 20/1
22/21 25/2
33/10 42/6
**beyond [5]**
12/14 15/7
32/22
44/12 50/9
**big [4]**
6/4 10/16
33/2 37/13
**bigger [1]**
28/13
**bit [4]**
20/8 31/2
46/2 51/10
**blinders**
**[1]**   14/17
**blowing [1]**
10/6
**Blumberg**
**[2]**   23/15
36/8
**boards [1]**
6/14
**BOHRER [1]**
2/14
**book [2]**
8/16 8/16
**bore [1]**
18/1
**both [5]**
16/22 18/4
43/12
43/12
45/21
**Box [1]**
23/7
**Brady [17]**
12/21 14/7
14/22 15/2
15/6 15/22
17/7 36/3
36/4 36/5
36/7 39/14

48/10
48/14
48/15
50/18 51/8
**bribe [9]**
8/3 8/3
8/4 8/5
38/24 39/3
39/4 43/1
43/2
**briber [2]**
48/21
48/21
**bridge [1]**
35/4
**brief [2]**
19/25
38/21
**briefed [1]**
7/23
**briefing**
**[8]**   29/15
30/14
33/16
34/12
34/17
34/22 35/2
47/15
**briefly [5]**
21/25
22/1 43/8
46/6 52/23
**briefs [2]**
32/22
34/14
**bring [1]**
31/12
**brings [1]**
53/1
**broad [2]**
1/14 17/13
**brought [1]**
41/1
**bucket [1]**
7/20
**buckets [1]**
7/17
**build [1]**
38/23
**building**
**[3]**   1/8

38/23
38/24

**C**

**call [7]**
9/20 14/1
33/18
34/18
37/11
37/23 49/7
**called [2]**
35/7 47/16
**came [3]**
15/15
24/20 40/1
**camera [2]**
50/17
52/21
**can [35]**
3/13 5/25
7/6 9/9
11/2 12/21
18/16 19/6
21/25
29/15 31/3
31/12
32/23
32/24
33/18
34/14
35/23
35/23
36/21
37/23 38/4
38/8 38/9
38/18
40/20
41/11 43/7
45/4 45/23
48/13
49/20
50/15
52/13 53/5
53/18
**can't [5]**
9/22 24/12
39/12 40/8
40/20
**candidly**
**[1]**   37/4

**cannot [1]**
6/24
**cards [1]**
5/1
**careful [1]**
37/5
**case [17]**
4/22 6/19
6/19 6/22
7/25 7/25
8/9 12/8
14/2 14/16
14/23
23/16 36/9
37/11 43/1
44/14
52/17
**cases [3]**
23/14
23/15
49/18
**catalog [3]**
17/12
18/21 19/6
**categories**
**[3]**   17/1
17/20
45/14
**category**
**[8]**   29/8
45/15
45/15
45/17
45/21
45/22 46/7
46/10
**CCR [1]**
54/6
**cease [1]**
12/10
**celebrating**
**[1]**   3/22
**center [2]**
2/23 14/2
**centered**
**[1]**   8/1
**centrality**
**[1]**   43/1
**certain [4]**
20/3 35/4

**C**

certain...
  **[2]** 35/6
  52/24
certainly
  **[6]** 8/23
  26/17
  39/15
  41/20 47/8
  50/20
certainty
  **[1]** 30/22
certify **[1]**
  54/2
chain **[1]**
  39/11
challenging
  **[2]** 24/5
  26/13
change **[1]**
  36/15
changes **[1]**
  49/15
characteriz
ations **[1]**
  16/13
charged **[1]**
  14/2
chase **[1]**
  28/19
circumstanc
es **[3]**
  19/11 26/2
  27/21
cited **[2]**
  23/14 50/8
cites **[1]**
  50/5
civil **[3]**
  14/4 14/13
  32/19
claim **[2]**
  35/22 44/6
claims **[3]**
  3/18 36/2
  36/3
clarify **[1]**
  28/7
clear **[8]**

16/16 28/3
28/24
35/20
36/13
48/19
clearly **[2]**
  40/18
  44/12
client **[1]**
  37/2
clients'
  **[1]** 7/2
close **[1]**
  30/20
closely **[3]**
  12/12
  19/16
  19/20
co **[1]**
  44/19
co-conspira
tor **[1]**
  44/19
COBURN **[13]**
  1/5 1/19
  2/5 2/9
  2/13 3/4
  10/24
  25/17 29/4
  37/3 42/1
  42/6 53/8
coerced **[2]**
  29/3 29/6
Cognizant
  **[22]**
  11/12
  12/10 20/7
  25/9 25/12
  25/13
  25/20 26/5
  26/15 27/2
  27/15
  27/17 28/1
  30/1 30/13
  33/5 34/18
  35/7 36/6
  38/11
  38/23 39/4
Cognizant's
  **[2]** 30/5

collect **[1]**
  30/7
come **[3]**
  34/22
  37/20 53/5
comes **[3]**
  15/21 18/6
  30/23
commence
  **[1]** 27/9
Commencing
  **[1]** 1/9
comments
  **[2]** 22/12
  46/7
commit **[1]**
  24/12
common **[2]**
  28/20 50/6
communicati
on **[3]**
  17/13
  18/22
  22/18
communicati
ons **[3]**
  11/2 19/7
  21/16
company **[5]**
  8/4 8/5
  38/22 42/7
  42/8
compel **[2]**
  16/17
  34/19
complain
  **[1]** 35/4
completed
  **[1]** 27/10
completely
  **[4]** 26/6
  29/20
  34/20
  51/22
complex **[2]**
  3/7 33/21
compliance
  **[1]** 26/10
comply **[1]**

component
  **[2]** 8/19
  8/20
comprehensi
ve **[1]**
  20/4
computer
  **[1]** 1/22
computer-ai
ded **[1]**
  1/22
concept **[3]**
  17/17
  18/3 30/2
concern **[4]**
  29/18
  33/22 42/5
  42/17
concerning
  **[1]** 11/10
concerns
  **[2]** 17/3
  28/9
conclude
  **[1]** 53/21
conduct **[2]**
  8/2 8/12
conducting
  **[1]** 13/15
confer **[4]**
  16/13
  18/20
  21/12
  24/10
conference
  **[6]** 1/5
  3/4 4/1
  5/25 9/9
  23/8
conferred
  **[1]** 25/15
connected
  **[1]** 23/17
conscious
  **[1]** 9/24
consider
  **[2]** 17/25
  31/19
considered
  **[1]** 50/10

consist **[1]**
  19/4
consolidate
d **[1]**
  45/22
conspiracy
  **[2]** 8/6
  39/10
conspirator
  **[1]** 44/19
constitutio
nal **[2]**
  27/25
  42/20
constructio
n **[1]**
  38/22
constructiv
e **[1]**
  19/21
construed
  **[1]** 19/6
contain **[1]**
  22/8
contemplate
s **[2]** 5/19
  29/11
context **[2]**
  18/22
  38/22
contexts
  **[1]** 17/11
continue
  **[1]** 5/14
Continuing
  **[1]** 2/1
contours
  **[1]** 15/10
contract
  **[1]** 39/21
contracted
  **[1]** 38/23
contracts
  **[1]** 39/21
contribute
  **[1]** 21/4
control **[6]**
  4/2 7/8
  23/5 29/16
  37/23

**C**

control...
[1] 41/18
conversatio
n [2]
13/23
24/13
conversatio
ns [1]
14/21
convert [1]
5/24
converted
[1] 9/8
cooperate
[1] 14/14
cooperated
[1] 39/25
cooperating
[1] 42/8
cooperation
[15]
11/18
12/20
12/25 14/5
14/15
18/25 19/2
20/1 20/4
20/8 20/14
24/20
41/17
42/25 43/4
coordinatin
g [1]
12/12
coordinatio
n [1]
14/12
copy [2]
50/16
50/21
correct [4]
13/2 49/2
49/4 54/2
correctly
[1] 46/17
corresponde
nce [1]
35/9

could [22]
4/16 6/15
8/16 8/16
8/17 8/23
9/2 12/15
14/15 21/7
26/1 26/13
26/16
27/20
37/19 44/6
47/14 48/3
48/9 48/18
48/22
48/23
counsel
[18] 6/22
14/11
17/20 20/7
21/9 30/1
33/10
34/21 40/1
41/10
41/13
43/11
43/11
43/20
43/21 47/5
51/20
51/23
couple [1]
39/19
course [15]
6/13 9/7
11/16 16/1
16/1 18/20
20/18
26/15
30/25
31/22
32/10
33/24
39/24
42/18
43/18
court [59]
Court's [8]
7/22
16/15
16/24 17/3
28/23

29/24
35/19
40/21
COURTHOUSE
[1] 1/8
covered [1]
7/16
covering
[1] 22/5
COVID [3]
4/23 5/6
5/17
COVID-relat
ed [1] 5/6
cr [1] 1/4
CRCR [1]
54/6
creative
[1] 31/18
Creegan [2]
9/15
50/22
CRIMINAL
[2] 1/3
3/4
critical
[3] 6/17
14/21
27/22
crosstalk
[5] 23/25
42/11
43/25
51/13
52/20
CTS [3]
42/17 43/4
43/12
curious [1]
39/19
current [5]
5/5 5/19
5/20 5/25
21/17
currently
[3] 5/7
15/8 30/17
custody [1]
41/18
cut [1]

28/25

**D**

D.C [1]
2/8
DANIEL [1]
2/23
dark [1]
21/7
data [3]
49/12
49/13
49/15
database
[1] 12/3
date [32]
4/1 4/2
4/11 5/10
5/15 5/21
5/23 5/25
7/8 9/1
9/6 9/7
9/8 9/9
9/14 10/5
10/7 10/8
11/5 11/6
25/4 26/20
30/21
33/11
33/11
33/12
33/24 34/2
34/13
37/19
37/23
37/25
dates [1]
10/12
DAVID [1]
1/16
day [6]
2/3 2/7
9/18 10/14
37/9 37/9
days [1]
27/1
DC [1]
1/17
deadline
[8] 30/18

30/20 31/8
31/19
31/22 32/8
32/14
32/25
deal [3]
40/9 45/4
50/24
dealing [2]
26/14
50/11
December
[2] 51/21
51/25
December 15
[1] 51/25
December
31st [1]
51/21
decide [2]
11/3 51/23
decided [5]
7/21 7/24
16/18
16/21
26/12
decision
[5] 16/15
16/24 17/3
41/3 45/17
deemed [1]
19/21
defendant
[10] 1/19
1/20 2/5
2/9 2/13
2/16 2/20
2/24 3/20
49/20
defendants
[5] 1/7
19/24 29/7
44/4 45/21
defendants'
[1] 5/12
defense
[18] 6/6
6/22 8/19
17/9 17/19
22/17

**D**

defense... [12]
23/14
26/24
39/15
40/11
41/10
41/13
41/21
43/20
46/15
49/13
49/14 50/8
define [2]
15/10 45/7
delay [2]
26/24
27/20
denied [1]
39/7
denies [2]
20/3 43/2
deny [1]
14/5
DEPARTMENT
[1] 1/15
derailed
[1] 29/20
describe
[1] 22/18
desist [1]
12/10
determinati
on [1]
16/22
determine
[4] 12/21
15/13
19/25
24/19
development
[1] 22/21
dialogue
[1] 40/17
dictate [1]
29/17
did [21]
3/5 3/21

14/7 14/15
8/22 17/20
19/3 19/18
21/3 21/4
21/4 22/12
22/14 28/7
34/12 35/7
36/11
38/15
47/19
47/21 49/4
didn't [9]
6/16 7/13
20/17
22/10
39/12
44/19
44/23 49/3
52/14
different
[1] 39/19
difficult
[1] 27/21
DINESH [1]
1/16
diplomacy
[1] 20/8
directed
[2] 13/3
46/7
direction
[1] 20/24
directly
[2] 19/18
41/10
disagree
[2] 16/12
18/14
disagreemen
t [1]
19/12
disclose
[1] 17/7
discouragin
g [1] 52/4
discoverabl
e [4]
16/19
17/18
49/23 50/7

discovery
[7] 31/14
32/20 34/9
36/15
36/23
44/24 45/9
discuss [1]
21/3
discussed
[3] 12/5
30/1 49/25
discussion
[1] 45/13
disputes
[12] 26/9
30/15
31/10
31/13
31/14 33/2
33/14
33/17
33/21
34/10
36/23
37/10
DISTRICT
[4] 1/1
1/1 1/11
3/2
disturbing
[1] 27/13
divided [1]
45/14
do [72]
doable [1]
30/3
Docket [1]
3/4
document
[6] 29/12
30/23
32/10
32/22
40/15
40/16
documents
[21] 8/12
16/23 17/1
17/21 22/4
22/8 23/7

25/22
26/16 27/3
27/22 30/4
30/7 40/3
42/9 42/16
42/19
42/19 43/6
44/14
47/20
does [14]
4/18 10/21
17/8 20/3
20/15
26/18
31/16
31/17
33/25
34/23 37/2
41/6 41/23
52/8
doesn't [4]
19/11
31/20 45/6
49/22
doing [3]
6/20 10/5
39/8
DOJ [32]
11/2 11/9
11/14
11/17
11/18
11/21
11/23 12/5
12/8 12/11
12/16
12/17
12/20
13/15
13/16
13/21 14/7
14/10
14/12
14/12
14/16
14/16 15/5
15/5 15/20
17/14
17/21
19/16

30/17 21/2
21/10
21/11
DOJ's [2]
12/13
14/23
don't [53]
3/13 4/10
4/12 5/1
7/7 8/15
8/17 9/3
9/4 12/1
12/3 13/7
13/24
14/17
15/23 18/1
21/2 21/6
21/8 21/10
23/2 23/10
23/12 27/2
28/4 30/12
32/25 33/3
33/7 34/4
34/13
34/14
34/19 35/3
37/24 38/5
39/11 40/7
40/23
41/13
43/17
45/10 47/6
48/6 48/15
48/16 49/5
49/5 49/6
50/6 51/1
51/4 52/3
done [10]
3/14 7/7
10/22
15/19 27/6
32/23
32/24 37/1
47/4 53/10
doubt [1]
26/7
doubtful
[1] 7/5
down [1]
49/2

**D**

downloads
**[2]** 35/6
35/7
drabs [1]
11/19
draft [1]
12/9
dribs [1]
11/19
dropped [1]
46/15
due [2]
10/3 37/5
during [12]
6/12 6/13
11/3 11/12
11/16 16/1
17/19
18/20
20/18
20/20 22/7
32/10

**E**

eager [2]
4/24 5/4
earlier [1]
46/7
early [2]
31/2 31/6
ears [1]
4/16
easily [1]
29/15
educated
**[1]** 37/11
efficiency
**[1]** 19/5
efficient
**[2]** 31/18
33/3
effort [3]
19/9 51/15
51/17
efforts [2]
16/14
16/22
either [5]
23/18

26/25
39/14 41/5
44/4
elected [1]
42/17
else [6]
8/25 15/25
45/7 45/8
49/7 53/3
email [3]
49/13 50/2
52/13
emails [1]
47/17
embarrassin
g [1]
22/25
employee
**[1]** 47/17
employer
**[1]** 44/3
end [10]
12/23
29/13
32/15 33/2
33/11
33/25
37/14 44/6
50/18 53/1
ended [3]
29/14
31/20
33/22
ending [1]
33/22
ends [2]
30/16
37/16
engage [1]
17/21
engaged [1]
40/17
engender
**[1]** 48/10
enough [2]
20/9 50/16
enters [1]
14/4
entire [3]
15/21 24/4

45/15
entirely
**[1]** 28/3
entitled
**[1]** 54/3
entitlement
**[2]** 42/19
43/5
environment
**[1]** 5/5
envision
**[1]** 41/14
ESQUIRE
**[10]** 2/3
2/4 2/7
2/11 2/11
2/15 2/18
2/19 2/22
2/23
Eve [3]
3/21 46/21
52/3
even [10]
4/11 7/23
8/22 18/18
20/18
23/13
23/15
36/13
37/24 43/3
evenhanded
**[1]** 35/14
event [1]
4/12
ever [1]
22/18
every [6]
3/7 9/25
11/15
17/13
18/21
22/18
everybody
**[7]** 9/5
10/4 26/21
34/23
35/13
36/21
53/20
everyone
**[5]** 9/16

10/18 33/18
53/11
53/14
everyone's
**[1]** 52/7
everything
**[5]** 5/8
12/15
15/17
41/15
41/18
evidence
**[6]** 39/9
39/13
44/20 48/4
49/24 50/1
evidence-re
lated [1]
50/1
evidentiary
**[12]**
10/18 11/8
11/15
12/16
12/18
15/14 16/5
19/9 19/25
21/13
22/23
24/19
exactly [1]
46/10
example [4]
11/21
13/11 15/2
35/3
examples
**[1]** 14/25
except [1]
14/18
exchange
**[2]** 17/19
44/21
exchanging
**[1]** 13/18
exculpatory
**[8]** 18/5
19/17 36/7
39/16
40/11 48/4
everyone

48/18 51/4
Excuse [1]
42/12
exercise
**[2]** 15/3
15/4
exhibit [2]
51/21
52/2
exist [4]
5/14 13/24
27/25
49/22
expand [1]
51/10
expeditious
ly [2]
36/25 46/3
explain [3]
18/23
18/24
48/17
explaining
**[3]** 22/14
48/9 51/3
explains
**[1]** 48/15
explanation
**[2]** 11/17
20/4
expressed
**[1]** 18/20
extension
**[1]** 24/21
extensions
**[1]** 27/14
extent [11]
11/17
12/20
13/14
13/24 14/9
20/1 20/13
20/22 35/5
44/4 47/3
extraordina
rily [1]
42/3

**F**

facilitate
**[1]** 46/4

**F**

**fact [3]**
5/6  18/4
20/2
**factor [1]**
8/13
**factors [2]**
12/13
19/19
**facts [5]**
6/22  12/9
12/9  12/19
13/19
**factual [3]**
11/20
18/5  22/21
**fair [1]**
34/20
**fall [6]**
4/6  5/15
5/23  6/2
7/7  7/9
**falsity [1]**
44/15
**February
[2]**  33/9
33/10
**feel [2]**
29/10
52/16
**feet [1]**
10/10
**few [3]**
23/4  26/14
34/7
**Fifth [1]**
2/12
**fight [1]**
41/23
**fights [1]**
26/8
**figure [1]**
17/17
**file [12]**
13/20
14/18
14/20
15/21  24/4
33/2  34/14

37/19
41/22
43/17
43/23
49/20
**filed [3]**
24/21
32/13
38/12
**files [9]**
11/9  12/14
15/7  15/13
16/19
17/18  23/6
24/22
41/13
**filing [3]**
37/25
51/21  52/3
**filings [1]**
51/19
**final [1]**
47/14
**finally [1]**
35/18
**find [3]**
38/2  39/12
50/15
**finds [1]**
43/20
**fine [5]**
26/6  26/20
32/11  34/8
37/23
**finish [1]**
7/12
**FINZI [8]**
2/18  6/9
6/10  6/11
6/18  7/12
7/14  44/10
**firms [1]**
26/14
**first [11]**
3/9  4/3
4/3  6/10
7/20  16/18
23/5  28/7
28/22  32/5
46/13

**fits [1]**
32/18
**flexible
[1]**  31/15
**Floor [1]**
2/12
**flow [1]**
13/23
**flowed [2]**
20/24
21/10
**flowing [1]**
21/8
**fly [1]**
33/1
**focus [4]**
8/9  17/19
22/18  44/2
**focused [1]**
16/16
**focuses [1]**
29/7
**follow [1]**
48/8
**follow-up
[1]**  48/8
**following
[2]**  45/5
49/10
**foregoing
[1]**  54/2
**former [2]**
44/3  47/17
**forth [2]**
18/2  25/2
**forward [5]**
4/25  5/4
8/20  26/16
34/22
**found [2]**
19/15  39/9
**four [2]**
8/5  14/1
**free [1]**
17/22
**free-rangin
g [1]**
17/22
**friction
[1]**  37/12

**front [4]**
7/25  9/25
33/7  40/22
**fronts [1]**
43/12
**frustrating
[1]**  47/11
**fulfill [3]**
6/21  7/2
7/3
**full [3]**
11/18  23/6
52/3
**fully [1]**
37/4
**fun [1]**
15/15
**further [3]**
12/11
14/21
15/22
**future [1]**
10/3

**G**

**GARRISON
[1]**  2/18
**Garrity [9]**
28/16
29/6  31/1
35/20  36/2
44/2  44/6
44/13
44/16
**Garrity-rel
ated [2]**
28/16  44/6
**Gateway [1]**
2/23
**gather [1]**
8/12
**gathered
[1]**  19/22
**gathering
[1]**  18/4
**gave [2]**
20/18
20/20
**general [3]**
19/19

39/20
39/23
**generated
[3]**  11/25
22/7  22/8
**genuine [1]**
42/20
**germane [1]**
29/9
**get [36]**
4/4  6/9
6/25  9/2
9/3  11/16
15/23
21/13
21/21  23/1
25/5  25/13
25/25  26/2
26/5  26/12
26/13  27/5
27/7  30/8
32/20  36/5
36/18
36/19  38/3
38/24
40/20
41/12
41/22  45/3
45/11  48/6
48/20  49/3
50/22
50/22
**getting [9]**
8/22  16/7
18/18  32/2
34/21
40/22  41/6
41/14
43/21
**GIBBONS [1]**
2/22
**Giglio [1]**
15/24
**give [12]**
9/6  23/1
25/3  28/4
30/22
31/12  35/3
37/18
37/23  41/3

**G**

give... [2]
  47/6
  51/11
given [7]
  11/14 14/3
  22/11
  37/22
  42/13
  42/15 47/2
gives [2]
  5/21 33/22
giving [2]
  12/16 15/1
glitch [1]
  38/16
go [17]
  6/1 6/10
  6/11 6/25
  8/20 9/23
  10/8 12/14
  14/13
  16/24
  21/24
  31/20 33/1
  34/10
  35/17
  37/12 42/2
goal [1]
  17/8
God's [1]
  4/16
goes [2]
  31/6 44/12
going [45]
  3/10 4/22
  7/16 9/1
  9/13 9/21
  10/10 13/6
  25/1 25/3
  26/4 26/5
  28/19 31/6
  31/9 31/15
  32/9 35/12
  35/25 36/4
  36/16
  36/17
  36/23
  36/24 37/8

37/13
37/18
37/18
37/20 38/7
38/8 38/10
38/10 41/4
41/20
41/22
44/11
44/24
44/25
50/12
50/14
53/12
53/12
gone [1]
  6/14
good [4]
  3/3 4/20
  9/16 38/2
GORDON [6]
  1/5 1/19
  2/5 2/9
  2/13 10/24
got [6]
  8/23 9/15
  12/1 12/2
  12/3 25/6
gotten [3]
  11/19
  46/16 47/1
government
  [61]
government'
  s [4]
  40/20
  42/16
  44/15
  47/22
grand [1]
  46/5
granted [1]
  29/1
great [3]
  4/23 4/24
  7/15
GRIPPO [17]
  1/13 4/21
  6/5 15/15

16/16 19/10
22/24
25/11 28/3
31/16 41/4
44/25
46/20 49/8
49/10
50/15
52/25
Grippo's
  [1]   20/14
gritty [1]
  18/19
ground [1]
  28/20
group [1]
  53/5
groups [1]
  45/15
guess [1]
  38/18
guessing
  [1]   31/9
guide [1]
  19/19
Gupta [1]
  23/15

**H**

had [10]
  14/10
  17/15 21/9
  22/19
  26/16 27/4
  27/12 28/8
  32/19
  36/13
hadn't [1]
  36/13
half [3]
  11/24
  13/12
  13/13
hand [2]
  42/7 42/7
handle [2]
  31/18
  50/19
handling
  [1]   5/7

HANK [1]
  2/7
happen [1]
  31/13
happened
  [3]   13/18
  37/21 38/6
happenstanc
  e [1]   46/1
happy [6]
  6/11 24/10
  35/16
  36/21
  38/19 46/1
hard [7]
  25/21
  25/24 27/2
  27/6 27/19
  32/2 50/16
has [27]
  5/8 7/18
  11/8 12/14
  12/17
  12/19
  12/22  15/5
  15/20
  18/15
  23/14
  25/18 28/1
  29/19
  30/13
  33/13
  33/24
  35/13 36/5
  36/21 37/1
  38/5 45/7
  46/2 47/22
  48/10
  49/13
hasn't [3]
  21/2 46/1
  50/8
hate [1]
  9/11
have [109]
haven't [8]
  7/19
  21/11
  36/12
  45/17

46/16 49/1
50/10 51/6
having [16]
  4/22 9/24
  10/17
  10/18
  27/14
  27/15
  31/19
  31/24 32/2
  35/15
  36/22
  37/10
  38/15 43/2
  43/18
  49/10
he [8]
  7/14 7/15
  19/11
  25/19
  25/20
  25/23 49/9
  52/15
hear [7]
  3/19 5/1
  24/11
  25/19 34/4
  43/23
  44/25
heard [5]
  7/23 8/25
  19/10 22/1
  27/11
hearing
  [22]   4/16
  10/18
  10/25 11/3
  11/4 11/5
  11/8 11/16
  12/16
  12/18
  15/14 18/9
  19/5 19/9
  19/25
  21/13
  22/23
  24/19 25/3
  25/4 29/9
  31/1
hearings
  [2]   35/21

**H**

hearings...
 [1]   37/5
heart [1]
 16/24
heck [1]
 15/17
held [1]
 3/1
help [1]
 40/20
HENRY [1]
 2/3
here [36]
 3/3 6/1
 7/17 9/11
 9/22 10/6
 12/14
 12/22 13/7
 15/4 15/8
 15/23 16/4
 18/3 19/5
 19/7 20/14
 22/17
 23/16 24/3
 24/12
 24/25
 25/17
 25/23
 26/19 28/4
 28/14
 35/22 37/2
 37/25
 38/16
 48/17 49/6
 49/11
 49/22
 50/12
here's [3]
 37/8 37/18
 50/14
hey [3]
 9/11 9/23
 13/17
high [2]
 33/19
 33/20
highly [1]
 48/25

**him [33]**
 7/13 14/15
 25/19
his [6]
 14/5 14/7
 14/11
 16/13
 20/14
 44/25
history [1]
 42/15
hit [1]
 32/20
honestly
 [1]   26/15
Honor [90]
 19/14
 23/20
 26/10 34/8
 41/1 46/4
HONORABLE
 [2]   1/10
 3/1
hope [4]
 9/4 10/5
 40/19 46/3
hopeful [1]
 31/3
hopefully
 [2]   5/16
 31/13
hot [1]
 10/6
hours [1]
 9/25
how [7]
 7/14 9/9
 15/10
 31/11
 31/11
 32/18 52/8
however [2]
 30/13
 41/6
hypothetica
l [1]
 15/21

**I**

I'd [2]
 4/17 28/11
I'll [11]
 3/19 4/15
 6/9 7/12
 9/6 28/18
 34/4 41/3
 43/23
 50/17
 51/11
I'm [41]
 3/21 4/16
 4/24 4/25
 5/1 6/11
 9/1 9/24
 10/5 10/11
 21/24 25/1
 28/3 28/4
 31/9 32/2
 32/7 32/17
 32/17 34/8
 34/8 34/19
 35/21 36/8
 37/8 37/18
 37/18
 38/19 41/4
 43/10 44/9
 45/5 45/8
 46/21 49/5
 49/6 49/10
 50/15 52/4
 53/5 53/11
I've [4]
 3/6 3/14
 14/19
 15/17
idea [2]
 26/22
 34/16
identified
 [2]   8/6
 17/1
identify
 [1]   17/7
identifying
 [1]   17/14
ignore [1]
 19/16

 2/3
implies [1]
 9/25
implying
 [1]   23/21
importance
 [1]   12/22
important
 [5]   12/24
 21/14
 22/16
 28/14
 29/11
importantly
 [1]   39/24
impose [1]
 32/7
impressions
 [1]   50/4
improve [1]
 5/16
inadequate
 [1]   11/13
inclined
 [1]   24/8
include [4]
 14/23
 30/14
 30/18 31/7
included
 [1]   34/12
including
 [1]   33/19
indeed [1]
 10/4
India [9]
 6/20 6/23
 8/1 8/2
 8/7 8/9
 8/16 8/17
 41/20
Indian [8]
 8/3 8/5
 8/7 38/22
 39/5 47/18
 48/2 48/22
indicated
 [2]   7/24
 25/18

indicates
 [2]   21/2
 32/25
indication
 [1]   24/24
indications
 [1]   12/11
indicted
 [1]   12/8
indictment
 [1]   20/20
inform [1]
 33/13
informal
 [1]   31/13
information
 [31]   8/13
 11/16
 11/19
 14/12 15/9
 15/12
 15/12
 16/21
 16/23 17/2
 17/18 18/6
 18/7 18/11
 20/24 21/8
 21/10 22/9
 22/11 36/5
 36/19
 39/18 40/3
 40/10 45/2
 48/1 48/10
 48/20
 48/24 50/1
 51/8
initial [3]
 16/11
 33/6 33/8
innocent
 [1]   37/3
input [2]
 22/14
 22/14
inquiry [5]
 19/20
 20/9 20/14
 22/17
 35/20
instead [1]
 30/16

# I

**intend [3]**
41/12
43/23
49/14
**intended [1]** 19/19
**intensive [1]** 42/25
**interacted [1]** 17/15
**interacting [2]** 48/20
48/22
**interactions [1]**
17/14
**interagency [2]** 11/1
20/8
**interest [1]** 40/25
**interested [1]** 48/23
**interfaced [1]** 47/18
**interfacing [1]** 48/2
**internal [1]** 11/10
**internally [1]** 24/10
**interrogatories [2]**
17/12
17/23
**interrupt [1]** 7/13
**intervention [2]** 7/22
40/22
**interview [3]** 20/17
21/3 40/5
**interviewed [1]** 40/6
**interviews [24]** 8/12
11/9 11/11

11/23 12/4
12/5 12/6
13/12
13/13
13/14
13/16
20/11
20/13
20/15
20/21 21/5
22/4 22/5
22/7 22/9
22/10
22/19 35/7
**investigation [14]**
6/20 7/1
7/25 8/19
13/15
17/15
20/19
20/19
20/20
23/17 24/4
36/1 39/8
39/25
**investigative [5]** 4/9
13/21 18/3
23/18 29/2
**investors [1]** 44/22
**involved [4]** 23/18
25/14
34/17
41/12
**involvement [1]** 39/7
**involves [1]** 6/19
**is [162]**
**isn't [2]**
15/3 20/19
**issuance [2]** 29/1
43/11
**issue [31]**
7/20 10/16

13/4 16/19
17/9 18/8
24/24 25/6
26/18
28/12
28/15 29/2
29/21
29/23
30/25
38/14
39/22
40/12
41/11
41/15 42/6
44/4 44/8
44/16 45/2
45/17 47/9
47/14
49/22
**issued [1]**
24/18
**issues [22]**
3/23 5/22
6/2 7/22
16/16 23/9
23/9 27/25
28/15
32/10
34/13
35/16
35/17
36/24
37/13
40/10
40/25
42/20
43/14
44/13 45/9
53/6
**it [124]**
**it's [35]**
3/14 3/21
4/23 8/22
9/19 10/10
10/23
10/24
13/15 15/7
19/12 23/6
23/8 24/21

27/14 27/13
28/14
30/19
31/20
31/22
32/14 35/4
36/4 40/10
40/19
43/10 44/5
44/16
45/25 47/3
47/11
48/19 50/7
52/2 53/12
**item [1]**
45/8
**items [2]**
29/8 29/8
**its [9]**
11/8 12/8
12/9 12/17
12/21 16/2
16/5 16/5
18/25

# J

**JAMES [2]**
2/4 10/23
**January [3]**
1/9 33/8
37/21
**Jencks [1]**
15/25
**JERSEY [5]**
1/1 1/8
1/14 2/24
23/16
**joined [1]**
45/2
**joint [6]**
11/12
13/21 14/9
14/18 20/3
23/18
**jointly [1]**
18/3
**JONES [2]**
2/3 2/7
**JR [1]**
2/19

# Judge [21]
1/11 3/2
3/12 3/22
6/8 6/12
9/11 10/9
14/25 15/3
26/3 32/9
34/6 36/23
40/7 41/25
42/3 45/11
50/25
52/10
53/19
**July [2]**
35/5 35/10
**July 27th [1]** 35/10
**jump [2]**
41/24 46/6
**jurisdiction [6]**
38/16
39/23 40/9
40/23
43/14 44/8
**jury [2]**
4/13 5/7
**just [63]**
**JUSTICE [1]**
1/15

# K

**keeping [1]**
29/10
**KEVIN [2]**
1/10 3/2
**key [3]**
13/25
33/11 41/2
**KIM [1]**
2/10
**kind [8]**
4/1 4/4
12/24 20/4
23/13
28/19
45/25 46/2
**KING [1]**
1/8
**KLEHM [1]**

**K**

KLEHM...
 [1]   2/3
KM [1]   1/4
knock [1]
 3/8
knotty [1]
 7/22
know [73]
knows [3]
 25/12
 27/22
 49/18
KRIEGER [1]
 2/10
Kyles [1]
 15/6

**L**

lack [1]
 27/5
laid [1]
 30/13
Larry [3]
 3/12 3/18
 6/8
last [9]
 1/16 22/2
 24/18 25/2
 27/11 38/5
 43/24 44/1
 45/12
late [1]
 35/5
later [1]
 25/22
latest [1]
 12/2
law [5]
 19/12
 23/22
 26/14 32/5
 36/9
LAWRENCE
 [1]   2/22
lay [1]
 3/22
laying [1]
 50/9
leads [1]

20/23
learned [5]
 11/21
 12/7 32/5
 45/20
 45/24
least [7]
 28/20 30/4
 31/24
 39/11
 39/21
 48/24
 53/17
leave [1]
 43/16
left [3]
 31/20
 32/14
 49/22
legal [1]
 23/12
lengthy [3]
 25/14
 25/15
 29/21
lens [1]
 28/15
let [11]
 6/6 7/12
 22/24 33/1
 34/25
 35/18 49/2
 49/8 49/8
 52/11
 53/16
let's [12]
 3/8 6/4
 9/23 10/10
 10/15 15/4
 15/23
 17/17 19/6
 25/6 37/23
 45/3
letter [20]
 3/21 4/7
 5/12 6/13
 24/21
 27/12
 32/21 45/1
 45/6 45/9

45/14
 46/22 48/8
 51/2 51/11
 51/14
 51/20
 51/22 52/1
 52/18
letters [2]
 3/6 21/15
LEWIN [3]
 2/10 2/11
 41/25
light [1]
 42/25
like [25]
 4/4 6/5
 8/18 10/7
 17/12
 17/23
 20/24
 22/15
 22/19 23/6
 23/15
 24/11
 27/11
 28/11
 31/22 32/4
 32/13
 32/19 38/7
 42/22 50/4
 50/5 50/23
 51/7 53/17
likelihood
 [3]   4/13
 33/19
 33/20
likely [2]
 7/21 35/24
limitations
 [2]   5/6
 5/13
limited [6]
 28/16
 30/5 35/20
 44/5 44/8
 44/16
limiting
 [1]   42/21
limitless
 [1]   17/24

line [1]
 25/17
liner [1]
 9/22
lines [1]
 6/3
list [3]
 3/11 4/3
 6/1
listen [1]
 44/22
literally
 [1]   26/1
litigate
 [1]   42/18
litigated
 [3]   7/21
 36/17
 43/12
litigating
 [1]   43/5
litigation
 [1]   8/19
little [5]
 9/10 27/13
 31/2 37/22
 51/10
LLP [2]
 2/10 2/18
log [1]
 27/10
logistical
 [1]   23/9
logs [3]
 29/12 30/8
 33/9
long [2]
 19/18
 42/25
longer [2]
 34/15
 42/16
look [23]
 9/1 11/23
 11/25
 12/24
 13/11
 14/17 15/6
 15/11
 15/13

46/20 19/4
 29/11 31/9
 32/4 34/8
 37/20 38/7
 45/23
 50/15
 51/11
 51/16
 52/10
 52/21
looked [2]
 15/16
 15/17
looking [7]
 4/23 4/24
 18/21
 44/17
 44/17
 44/18
 46/21
looks [1]
 9/10
LOONAM [8]
 2/4 10/23
 16/13 17/6
 22/2 22/17
 22/25
 25/16
Loonam's
 [1]   22/12
lose [1]
 28/13
lot [3]
 4/6 6/14
 53/20
Louisiana
 [1]   2/8
LUSTBERG
 [12]   2/22
 3/12 3/19
 6/10 7/16
 7/24 33/20
 34/5 45/10
 47/10 52/8
 53/2
Lustberg's
 [3]   45/6
 45/9 46/21
LUTHER [1]
 1/8

## M

**made [14]**
3/24 14/6
14/22 19/1
26/24 35/2
36/12 40/2
40/3 46/15
46/25
47/12 51/6
52/24
**Magistrate
[5]** 31/12
32/9 32/21
36/22
37/10
**magnitude
[1]** 4/14
**main [1]**
29/18
**make [9]**
8/17 9/23
16/21
31/16
31/23 32/1
40/24
44/12
48/13
**makes [3]**
32/11
34/23
52/15
**making [2]**
29/18 36/8
**manner [1]**
22/20
**many [3]**
9/25 9/25
49/18
**March [2]**
5/9 33/10
**MARTIN [1]**
1/8
**Martoma [1]**
23/15
**material
[10]**
15/22 17/7
19/17 36/8
39/14

39/25
39/17
40/10
48/25 51/8
**materials
[10]**
10/19 11/1
15/7 16/18
18/10
19/22
25/25 26/5
47/24
49/19
**matter [7]**
16/11
26/15
26/23 32/9
39/20
40/22 54/3
**matters [1]**
23/11
**may [40]**
4/2 4/11
4/12 4/17
4/23 4/25
5/21 5/25
6/2 7/10
7/21 9/8
9/22 10/13
16/18
16/19
18/12
19/21 22/6
22/7 25/11
26/6 26/6
27/16 30/6
31/2 31/4
33/21
34/14
35/22
36/15
39/22
40/12
40/25
43/11
49/23 51/1
51/3 51/3
51/22
**May 3rd [3]**
5/25 9/8

21/22
**maybe [11]**
9/3 9/10
9/10 9/12
9/12 13/7
15/2 21/1
21/1 30/21
34/15
**MCNULTY [2]**
1/10 3/2
**me [31]**
6/6 6/6
8/18 9/25
22/24
23/21 28/4
31/14 32/3
32/6 32/24
33/4 33/7
34/20
34/25
35/18
36/20
37/20 38/2
41/2 42/12
45/8 49/2
49/8 50/15
50/16
50/23
51/11
52/13
53/12
53/16
**mean [11]**
7/13 13/6
16/2 26/20
34/14
34/25 35/2
35/4 42/3
45/10
51/16
**means [1]**
29/5
**meant [1]**
18/24
**mechanical
[1]** 1/21
**meet [5]**
8/18 16/2
16/13
18/20

**meetings
[9]** 11/12
14/7 14/9
14/11
14/19 20/6
25/15
33/10
46/14
**member [1]**
39/10
**members [1]**
8/6
**memo [1]**
13/19
**memoranda
[1]** 11/25
**memorandum
[1]** 11/10
**memos [1]**
22/7
**mental [1]**
50/4
**merely [1]**
20/10
**merits [3]**
44/13
44/14
44/24
**merits-base
d [1]**
44/13
**MESSITER
[1]** 2/11
**met [1]**
25/15
**might [4]**
4/5 19/16
31/15
41/25
**mind [6]**
7/10 9/23
10/13
29/10 32/2
32/19
**mindful [4]**
5/5 5/13
9/2 29/23
**minimize
[1]** 37/11

**minimum [1]**
39/14
**minute [2]**
9/7 9/25
**misreading
[1]** 19/14
**misundersta
nd [1]**
49/4
**misundersta
nds [1]**
44/16
**MLAT [2]**
41/6 41/20
**modify [1]**
30/19
**moment [2]**
28/10 45/6
**Monday [2]**
9/19 9/20
**monitor [1]**
34/9
**month [1]**
30/23
**months [14]**
5/18 5/20
12/7 27/1
29/12
29/16
29/16
31/21
31/21 42/8
42/8 42/18
42/25 43/5
**months-long
[1]** 42/25
**moot [1]**
24/22
**mooted [1]**
11/8
**more [23]**
7/10 8/11
9/10 10/6
10/21 15/2
15/10
15/18
16/21
16/23
19/19
20/10

**M**

more...
 [11]
 25/11
 26/17
 27/18
 31/15
 32/21
 37/22 38/9
 39/24 40/4
 45/20
 45/24
most [3]
 5/8 6/17
 50/23
motion [20]
 10/18
 16/17
 22/22
 23/14
 27/23
 27/23
 28/17 29/3
 29/6 30/19
 30/19 31/1
 31/10 33/2
 34/3 34/18
 37/15
 37/22 38/7
 49/21
motions
 [10]
 30/18
 30/20 31/8
 31/11 32/8
 32/12
 37/19 38/1
 38/4 38/12
move [7]
 25/6 34/22
 35/1 35/13
 36/20
 47/23 48/6
moving [2]
 25/25
 26/16
Mr [2]
 6/10 6/10
Mr. [50]

4/21 6/5
6/9 6/11
6/18 7/12
7/14 7/16
7/24 15/15
16/9 16/13
17/6 19/10
20/14 22/2
22/12
22/17
22/24
22/25
25/11
25/16
25/17
25/18
25/18
25/22 28/3
31/16
33/20 34/5
37/3 41/4
42/1 42/6
42/7 44/10
44/25 45/6
45/9 45/10
46/20
46/21
47/10 49/8
49/10
50/15 52/8
52/25 53/2
53/8
Mr. Coburn
 [5]   25/17
37/3 42/1
42/6 53/8
Mr. Finzi
 [6]   6/9
6/11 6/18
7/12 7/14
44/10
Mr. Grippo
 [16]   4/21
6/5 15/15
16/9 19/10
22/24
25/11 28/3
31/16 41/4
44/25
46/20 49/8

4/21 6/5
31/16 41/4
Mr.
 Grippo's
 [1]   20/14
Mr. Loonam
 [6]   16/13
 17/6 22/2
 22/17
 22/25
 25/16
Mr.
 Loonam's
 [1]   22/12
Mr.
 Lustberg
 [8]   7/16
 7/24 33/20
 34/5 45/10
 47/10 52/8
 53/2
Mr.
 Lustberg's
 [3]   45/6
 45/9 46/21
Mr.
 Schwartz
 [2]   25/18
 42/7
Mr. Solano
 [2]   25/18
 25/22
Ms [2]
 9/15 50/22
Ms. [1]
 53/17
Ms.
 Villanti
 [1]   53/17
much [6]
 7/25 8/9
 8/10 15/10
 18/1 43/18
multi [1]
 30/23
multi-month
 [1]   30/23
multiple
 [2]   17/23

my [8]
 10/1 23/21
 26/7 32/2
 32/18
 37/22 46/5
 46/7

**N**

N.W [2]
 1/17 2/8
namely [1]
 39/2
narrow [2]
 29/2 29/23
nationals
 [1]   8/7
necessarily
 [1]   45/7
necessary
 [1]   18/9
need [23]
 4/9 7/10
 7/20 7/21
 7/23 8/13
 8/14 10/22
 11/7 15/9
 15/11
 15/13 26/3
 26/21 35/2
 36/18
 37/22 38/5
 40/9 40/10
 40/21
 47/23
 52/16
needed [1]
 16/21
neither [1]
 14/4
never [1]
 27/15
new [18]
 1/1 1/8
 1/14 1/17
 2/5 2/5
 2/12 2/12
 2/16 2/16
 2/20 2/20
 2/24 3/21

3/22 23/16
46/21 52/2
New Jersey
 [1]   23/16
Newark [3]
 1/8 1/14
 2/24
next [4]
 15/16 25/6
 30/23
 38/14
NICHOLAS
 [2]   1/13
 2/11
Nick [1]
 41/25
night [1]
 13/16
nitty [1]
 18/19
nitty-gritt
y [1]
 18/19
no [21]
 5/10 10/9
 15/1 15/22
 15/24 21/6
 24/2 24/13
 24/24
 32/15 39/9
 39/18
 42/16
 44/20
 46/16
 47/23 48/6
 48/6 50/17
 52/16
 52/17
Nobody [1]
 8/21
non [1]
 14/3
non-prosecu
tion [1]
 14/3
nonetheless
 [1]   3/14
nos [1]
 18/17
not [90]

**N**

note [1]
 34/16
noted [1]
 12/22
notes [8]
 11/9 11/11
 11/23
 11/25
 13/23 22/6
 46/14 47/4
nothing [5]
 15/18
 15/25
 17/16
 42/23 53/8
November
 [1]   12/3
now [37]
 6/24 6/25
 8/22 9/2
 9/5 10/2
 10/4 10/14
 10/16
 10/21 14/9
 20/15
 20/16
 21/13
 24/23
 29/19 31/3
 32/15 33/4
 33/24
 35/15
 35/19
 35/20
 38/14 40/6
 42/9 42/20
 42/24
 43/13
 43/21 45/8
 46/13 49/6
 49/15
 49/22 53/3
 53/11
number [7]
 1/3 3/6
 4/4 4/8
 4/9 25/15
 51/19

**O**

object [2]
 27/13 28/8
objecting
 [2]   27/12
 41/14
objection
 [2]   5/10
 30/12
objections
 [1]   29/13
obligated
 [1]   16/20
obligation
 [2]   15/6
 16/6
obligations
 [6]   6/21
 12/13
 12/21
 14/23 16/3
 17/4
obtain [1]
 15/9
obtained
 [1]   11/17
obviously
 [7]   6/24
 9/21 18/14
 23/5 24/3
 51/1 51/23
occur [2]
 25/4 25/5
occurred
 [1]   13/14
ocean [1]
 9/22
October
 [16]   5/24
 6/5 9/1
 9/3 9/5
 9/10 9/14
 9/15 9/17
 10/9 10/10
 12/7 26/19
 27/4 29/20
 30/21
October 4th
 [1]   9/17

**October 5th**
 [1]   30/21
off [3]
 3/8 19/8
 47/7
offense [1]
 48/25
offer [5]
 11/8 17/20
 18/10
 20/15
 45/20
offered [3]
 12/14
 15/8 22/3
OFFICE [2]
 1/13 40/1
official
 [3]   1/23
 8/3 39/5
Oh [1]
 42/2
okay [21]
 15/16
 21/15
 24/17 25/5
 28/3 32/17
 33/1 34/4
 38/12 39/1
 41/2 45/3
 45/19 46/5
 47/12
 50/14 51/2
 52/24
 53/10
 53/14
 53/20
once [4]
 8/11 36/1
 37/15
 37/16
one [33]
 2/15 2/23
 3/8 3/8
 6/4 6/21
 7/18 7/18
 14/2 17/8
 18/23
 20/24
 28/12

29/20 32/5
34/11 35/3
36/14 38/9
39/2 39/20
40/4 42/7
43/24 44/1
44/9 45/12
45/23
46/13 47/9
48/2 48/14
53/11
ones [5]
 25/9 39/3
 40/14
 40/15
 40/17
ongoing [4]
 31/10
 31/13 34/3
 41/16
only [7]
 7/15 12/17
 15/14
 16/19 36/2
 37/3 47/9
open [8]
 5/22 23/8
 24/3 29/14
 31/20
 32/14
 33/14
 33/22
open-ended
 [3]   29/14
 31/20
 33/22
operations
 [1]   5/17
opinion [2]
 19/14
 20/16
opportunity
 [3]   11/15
 36/14 37/4
opposed [2]
 28/2
 43/11
options [1]
 17/25
order [23]

39/23 41/1
4/10 5/19
6/21 12/10
15/10
19/18
24/14
24/18
28/24
29/24 32/3
32/12
35/19
47/16
47/19
47/21 48/5
49/4 50/16
53/12
53/13
ordered [1]
 35/21
orders [1]
 40/16
other [23]
 3/11 4/6
 6/2 7/1
 11/24
 13/13
 17/11
 17/25
 20/12
 20/15
 20/24 21/8
 22/7 22/10
 26/23
 35/16
 41/21 42/7
 45/9 46/13
 47/9 49/19
 53/11
ought [2]
 9/6 40/5
our [50]
 5/15 5/21
 5/23 6/13
 6/19 6/21
 7/2 7/3
 8/13 9/13
 9/23 10/10
 10/12
 10/24
 11/13

**O**

our... [35]
15/14
16/12
16/13
16/14
16/15  17/4
17/10
17/19  18/2
18/10
18/22
18/23  19/8
22/3 22/6
22/13
29/18
35/24 40/8
40/19
41/15
41/18
42/18 43/5
43/14
43/18
44/12 45/1
48/9 48/12
50/3 50/4
51/7 53/4
53/6

out [19]
3/22 5/18
5/20 6/13
10/13
13/16
13/23
14/20
17/17  18/6
30/13
30/21
37/14 38/3
46/5 49/17
50/9 51/24
52/6

outsourced
[1]   36/1

outsourcing
[5]   27/23
28/17 29/2
29/9 35/22

outstanding
[1]   10/25

over [11]
15/25
21/16
29/20
36/23
41/15
41/18
42/18
47/19
49/19
49/24 50/7

overarching
[1]   10/16

overseas
[2]   8/9
8/11

overtaken
[1]   46/2

own [2]
18/22 19/8

**P**

p.m [3]
1/9 3/2
53/21

pace [1]
29/17

page [3]
26/4 28/20
46/21

paid [2]
38/24 43/2

pandemic
[1]   6/14

parallel
[1]   17/15

parameters
[1]   16/8

part [9]
5/8 12/24
14/10
20/18  22/2
22/12
28/22
33/21 40/7

participate
[2]   44/19
44/23

participated [2]   18/4

particular
[3]   5/5
13/3 44/7

parties [6]
5/21
29/14
30/22
31/23
33/12
33/16

partner [1]
19/16

parts [3]
17/24
18/16
22/16

party [1]
34/17

passed [2]
40/8 42/20

past [1]
4/16

PATEL [1]
1/16

paths [1]
24/3

PATRICK [1]
2/4

PAUL [1]
2/18

payor [2]
39/3 43/2

payors [1]
8/4

PC [1]
2/22

pending [1]
4/8

Pennsylvania [1]   2/15

people [3]
14/1 26/23
27/5

per [1]
15/21

perfectly
[2]   7/17
35/16

perhaps [5]
6/18 7/23

22/13
24/10

period [2]
5/24 33/23

permission
[1]   42/1

permit [1]
38/24

person [1]
3/18

personal
[1]   47/17

perspective
[4]   18/2
30/5 53/4
53/6

persuaded
[1]   27/18

pertinent
[1]   45/12

phone [3]
13/17 14/1
32/20

pick [1]
5/23

picture [3]
28/13
35/22 52/3

piece [2]
23/17
24/13

pitch [1]
40/3

place [7]
4/6 4/9
6/2 6/15
6/19 7/6
8/2

plan [1]
6/6

plane [2]
6/25 8/22

play [1]
21/17

Plaza [1]
2/15

please [1]
45/8

plenty [1]
5/21

2019   20/8
20/9   20/8

2/14

plus [2]
38/11
38/11

point [17]
4/11 5/16
6/13 17/5
28/5 42/20
43/15 44/1
44/12
45/19
46/10
46/15 47/5
51/24
52/15
52/18 53/2

pointed [1]
49/17

pointing
[1]   52/6

points [2]
18/8 23/4

poll [1]
53/5

position
[13]   8/15
9/13 10/24
11/13
12/17
23/10 24/6
24/14
35/24 40/8
41/7 43/5
43/19

possession
[4]   19/17
19/21 36/7
41/18

possible
[2]   10/8
37/1

potential
[3]   29/3
29/6 29/12

potentially
[7]   14/15
18/5 19/17
39/15
40/11

**P**

potentially
... [2]
  48/18 51/8
practical
  [2]   4/22
  30/9
practically
  [1]   13/9
practice
  [3]   9/24
  34/3 37/15
praise [1]
  20/7
praised [1]
  19/1
predict [1]
  35/23
prediction
  [1]   26/7
prepare [3]
  5/22 30/8
  37/22
prepared
  [2]   41/7
  46/3
presence
  [1]   10/1
present [1]
  10/4
presentatio
n [1]   40/4
presentatio
ns [1]
  40/2
presented
  [2]   30/17
  51/22
preservatio
n [2]
  40/16
  46/14
preserve
  [1]   47/3
preside [1]
  36/23
press [6]
  4/25 5/4
  18/25 20/7

20/22
35/12
pressed [1]
  25/21
pressing
  [2]   35/1
  35/1
presumably
  [2]   40/14
  40/15
presumed
  [1]   37/3
pretrial
  [3]   5/22
  29/3 29/8
pretty [3]
  7/25 13/10
  48/19
previewing
  [1]   40/25
prioritizat
ion [1]
  46/10
privilege
  [7]   26/8
  27/10
  29/12 30/8
  30/20 33/9
  36/24
privilege-r
elated [1]
  30/20
privileged
  [1]   32/22
probably
  [2]   38/4
  38/5
problem [3]
  7/8 14/22
  40/24
problems
  [1]   48/14
proceeding
  [1]   16/1
proceedings
  [11]   1/21
  3/1 4/8
  5/7 5/20
  6/15 7/6
  26/11

29/21
53/21 54/3
process [9]
  6/20 18/2
  21/12
  27/10
  30/23
  32/16 33/1
  37/5 38/6
processes
  [1]   4/9
produce [2]
  27/17
  50/12
produced
  [5]   1/22
  33/9 42/9
  42/16
  49/12
producing
  [1]   27/20
product [1]
  50/4
production
  [9]   27/8
  29/8 30/8
  30/24 33/7
  33/8 33/9
  38/6 50/2
productions
  [2]   29/12
  32/11
professiona
l [1]   7/3
proffers
  [2]   14/10
  21/9
profitably
  [1]   45/4
promise [1]
  3/7
promptly
  [2]   50/21
  52/11
proposal
  [3]   22/6
  32/18
  33/15
propose [3]
  17/20

29/14
33/16
proposed
  [12]
  17/22 18/7
  22/13 26/1
  28/1 28/8
  31/6 31/11
  33/4 33/5
  34/11
  38/11
prosecution
  [4]   14/3
  19/21 20/1
  20/2
prosecution
's [1]
  19/15
prove [1]
  36/1
provide [9]
  15/11
  15/12
  16/23 20/3
  20/9 22/14
  33/25 37/6
  51/7
provided
  [7]   12/8
  17/2 18/7
  18/11
  20/17 35/8
  40/2
provider
  [2]   49/13
  50/2
providing
  [1]   36/15
proxy [1]
  13/15
publicly
  [1]   44/21
pulling [1]
  10/21
purpose [4]
  17/6 17/6
  17/13
  28/25
purposes
  [3]   16/4

42/5 49/5
pursuant
  [3]   14/16
  29/23
  47/20
pursue [1]
  41/20
push [1]
  27/17
pushing [1]
  25/24
put [10]
  9/1 10/6
  10/10
  15/23
  18/15
  18/15
  18/17
  21/11 28/9
  41/4
putting [4]
  9/5 9/14
  14/17 44/7

**Q**

quash [2]
  30/19
  34/19
question
  [10]   21/3
  22/25 23/1
  23/8 23/22
  35/6 38/23
  43/13
  46/23
  46/25
questions
  [12]
  11/20
  12/16
  17/10
  17/22
  17/23
  18/15
  18/15 20/2
  21/11
  21/14
  22/13
  22/15
quickly [5]
  26/17

**Q**

quickly...
  **[4]**   27/18
27/20
36/20
52/23
quite **[2]**
  11/14 46/1
quotes **[2]**
  4/2 7/9

**R**

raise **[3]**
  11/19
26/18
26/18
raised **[2]**
  19/11
41/11
range **[1]**
  30/22
ranging **[1]**
  17/22
rather **[1]**
  25/22
reactions
  **[1]**   34/7
read **[7]**
  3/6 4/7
5/12 15/17
17/12 23/2
23/2
reading **[1]**
  35/21
readjust
  **[1]**   10/14
ready **[3]**
  4/10 10/22
30/8
real **[4]**
  4/13 10/5
24/24
42/19
realistic
  **[1]**   5/16
really **[12]**
  4/23
16/16
17/12
22/17 26/3

27/22
34/13
36/13
37/11
41/14 44/8
50/4
realm **[1]**
  4/11
reason **[3]**
  36/14 48/3
48/3
reasonable
  **[6]**   27/17
30/3 30/9
30/11
34/21
38/13
reasonably
  **[1]**   11/5
reasons **[5]**
  4/22 4/23
34/11
39/20
50/13
recalibrate
  **[1]**   28/13
recall **[2]**
  43/11
52/14
received
  **[4]**   17/10
41/19
45/18
49/13
recipient
  **[1]**   8/2
recognize
  **[1]**   36/18
recognized
  **[1]**   19/13
reconsider
  **[1]**   49/16
reconvene
  **[1]**   31/4
record **[4]**
  41/11 45/1
50/12 54/3
recorded
  **[1]**   1/21
reduce **[1]**

51/13
refer **[1]**
  32/9
refocus **[1]**
  28/12
refuse **[1]**
  15/11
refused **[2]**
  15/12
17/24
regard **[13]**
  10/3 10/4
25/16
25/20 26/8
26/9 34/25
41/21
42/19
45/17
45/21
47/17
48/13
regarding
  **[2]**   48/1
48/20
regards **[1]**
  6/22
regroup **[1]**
  9/9
regularly
  **[1]**   47/18
related **[8]**
  5/6 17/13
28/16
30/20
30/24 31/1
44/6 50/1
relates **[1]**
  29/2
relating
  **[6]**   22/4
30/15
30/18 31/8
32/8 34/3
relationshi
p **[4]**   15/4
20/10
41/16
41/17
relatively
  **[1]**   30/5

relativity
  **[1]**   12/2
release **[2]**
  18/25
20/13
releases
  **[1]**   20/7
Relevance
  **[1]**   29/5
relevant
  **[5]**   29/1
29/5 29/9
39/17
48/25
rely **[1]**
  16/2
remain **[2]**
  20/2 29/23
remember
  **[2]**   38/25
44/3
remembers
  **[1]**   45/13
remind **[4]**
  22/3 28/22
33/4 44/2
remotely
  **[4]**   1/5
1/12 2/2
3/1
repeatedly
  **[2]**   39/25
42/18
reply **[1]**
  19/25
reporter
  **[3]**   1/23
53/16 54/7
Reporter/Tr
anscriber
  **[1]**   54/7
represented
  **[3]**   25/17
26/14
49/14
representin
g **[1]**
  25/17
represents
  **[1]**   25/20

request
  **[18]**   5/13
5/23 11/1
11/5 14/16
19/8 19/24
28/21
32/23 34/2
41/10 43/3
44/13
46/16 47/1
47/12
49/16 50/9
requested
  **[3]**   24/23
41/5 48/5
requests
  **[6]**   18/23
25/7 26/24
27/14 35/3
43/18
require **[2]**
  14/15
34/23
required
  **[2]**   7/2
32/21
requires
  **[5]**   14/5
14/13
14/14
23/22
26/21
reschedulin
g **[1]**   5/11
reside **[1]**
  8/7
resolution
  **[3]**   13/25
14/4 14/13
resolve **[5]**
  5/22
12/18 18/8
22/22 34/9
resolved
  **[1]**   36/25
resolving
  **[1]**   35/16
resources
  **[1]**   12/12
respect
  **[13]**   5/17

**R**

**respect...
[12]**
14/18
16/17 21/7
22/10
28/11
28/22
29/25 42/4
42/5 42/24
43/4 44/6
**respectfully
[3]**
23/13 31/7
43/14
**respects
[1]** 39/2
**respond [5]**
27/1
40/18 41/8
43/7 47/4
**responded
[4]** 26/25
41/9 48/11
50/10
**response
[7]** 22/1
45/1 45/1
47/7 47/22
48/12 49/3
**responsibil
ities [1]**
7/4
**responsible
[1]** 44/23
**responsive
[1]** 30/4
**resuming
[1]** 5/19
**return [1]**
11/6
**review [21]**
11/8
11/10
12/14
13/23 14/6
15/21 16/5
16/5 16/23
17/1 17/7

17/21 18/8
18/10
21/21 22/3
23/9 23/16
30/7 46/4
50/17
**reviewed
[2]** 49/24
50/6
**reviewing
[1]** 24/4
**revisit [3]**
9/21
26/20
31/24
**RheaVillant
i [1]** 1/24
**Rhéa [2]**
1/23 54/6
**RIFKIND [1]**
2/18
**right [29]**
3/16 9/20
12/23 13/1
13/5 13/9
13/13
13/15
13/19
13/25 14/1
14/5 16/9
17/5 19/23
21/2 21/5
21/19
24/15 33/7
37/1 38/14
42/14
43/20 45/5
47/13 49/6
53/1 53/7
**rightfully
[1]** 12/22
**rightly [1]**
4/25
**rights [2]**
7/3 37/5
**ripe [1]**
40/13
**Risha [3]**
12/13 15/6
19/19

2/18
38/18
**role [1]**
43/18
**rolling [1]**
32/24
**room [1]**
23/8
**rough [2]**
46/14
53/17
**rubicon [1]**
40/9
**rule [4]**
24/8 28/24
49/1 51/8
**Rule 16 [2]**
49/1 51/8
**ruled [3]**
25/2 43/13
46/1
**rushed [1]**
37/7

**S**

**SAGE [1]**
2/11
**said [18]**
5/9 10/9
15/16
17/11
19/10 24/8
28/8 30/6
30/12
35/15
35/21 39/8
39/18
41/22
43/16
44/21
45/16 48/5
**same [4]**
8/14 22/24
26/4 28/20
**satisfactor
y [1]** 26/6
**satisfied
[2]** 17/4
33/13

**ROBERTO [2]**

**Saturday
[1]** 37/24
**saw [1]**
13/18
**say [18]**
3/9 3/13
4/15 6/12
7/16 8/8
8/21 10/9
22/2 25/21
26/6 32/12
34/25
35/18
36/12
37/20
41/12
46/25
**saying [9]**
9/11 10/11
14/17
24/21
30/16 40/7
46/16 49/3
51/10
**says [6]**
15/22
19/24
33/15 36/9
39/11
44/19
**schedule
[35]** 6/3
25/25 27/8
27/12
27/14
27/16 28/1
28/8 28/18
28/21
29/11
29/15
29/17
29/19
29/25 30/2
30/3 30/11
30/13
30/14
30/15
30/16 31/3
31/6 31/12
31/25 33/4

34/11
34/12
34/22
37/16
37/16
38/11
**scheduled
[2]** 10/25
11/5
**schedules
[1]** 35/2
**scheduling
[3]** 6/2
10/16
10/17
**school [1]**
32/5
**SCHWARTZ
[8]** 1/6
1/20 2/16
2/20 2/24
25/18 29/4
42/7
**scope [13]**
11/18
12/19
12/21 16/5
23/2 24/19
25/3 25/16
26/9 27/23
29/23
32/23
36/16
**SDNY [1]**
23/15
**search [1]**
49/19
**SEC [43]**
10/18 11/2
11/8 11/9
11/11
11/12
11/18
11/22 12/1
12/5 12/8
12/11
12/14
12/20
13/16

**S**

**SEC... [28]**
13/17
13/19 14/8
14/9 14/10
14/14
14/14 15/5
17/15
18/25 19/2
19/16
19/17
19/18 20/1
20/6 20/17
20/21 21/4
21/8 22/4
22/14
22/19 23/5
24/4 24/10
24/22
24/23
**SEC's [7]**
14/18 15/7
15/21
16/19
17/18
20/10
23/10
**second [5]**
6/9 22/12
28/18
29/25 39/6
**see [7]**
3/13 9/9
18/16
20/13 37/9
48/22
52/22
**seek [1]**
17/12
**seeking [2]**
26/24
48/1
**seem [2]**
4/18 41/23
**seemingly
[1]** 43/4
**seems [3]**
31/14
32/24

50/23
**seen [2]**
27/14 53/2
**semantic
[1]** 15/24
**send [3]**
50/15
50/16
50/20
**sense [10]**
3/24 4/4
31/16 32/1
32/11
34/23 36/4
39/3 51/7
52/25
**sent [6]**
3/20 27/12
35/9 40/14
40/16 48/8
**separately
[1]** 47/4
**September
[10]** 5/24
6/5 16/16
27/3 28/23
28/23
35/10
35/19
36/12
45/14
**September
11th [1]**
35/10
**September
14th [4]**
28/23
35/19
36/12
45/14
**sequencing
[1]** 22/15
**serious [2]**
14/22
28/8
**seriously
[1]** 35/13
**served [2]**
25/12 27/4
**service [6]**
25/13

38/16 40/3
40/23
43/13 44/8
**set [10]**
3/25 7/8
7/9 17/10
17/22
26/19
29/19
29/20
31/11
33/24
**setting [2]**
4/2 34/12
**several [3]**
5/18 5/20
24/5
**shared [3]**
11/21 13/9
14/11
**sharing [1]**
12/12
**she [1]**
50/22
**shoes [1]**
36/6
**short [2]**
51/2 51/14
**shorter [1]**
30/3
**should [20]**
7/10 10/8
10/12
10/25 11/3
13/22
17/19 18/8
22/17
22/22
25/21 26/3
29/22
32/12
32/13
34/16
35/14 37/7
41/24 44/3
**show [3]**
35/25 36/9
48/23
**showing [1]**
36/12

6/6
**sight [3]**
28/13
31/19
32/15
**significant
[8]** 14/7
18/24 19/2
20/7 26/9
27/24 39/1
39/6
**Similarly
[1]** 12/7
**simple [1]**
35/6
**Simultaneou
s [5]**
23/25
42/11
43/25
51/13
52/20
**since [6]**
25/14
37/21
41/11
45/24 46/2
50/11
**sit [2]**
37/25 49/6
**sitting [4]**
9/11
20/11 23/7
24/12
**situation
[1]** 34/1
**Sixth [2]**
2/19 7/2
**slow [1]**
49/2
**smooth [1]**
26/5
**snag [1]**
32/20
**so [111]**
**so-called
[2]** 35/7
47/16
**Solano [2]**

25/22
**sole [1]**
34/1
**solicit [1]**
22/14
**solution
[1]** 24/1
**some [31]**
3/24 6/1
6/25 7/8
7/22 11/14
12/3 12/25
13/9 14/12
15/2 23/17
25/1 25/7
28/20 30/7
31/19
31/25
33/21
33/25
35/16
36/22
37/11
37/13
38/21
42/15
45/20
45/22
45/24
46/13
46/15
**somebody
[5]** 34/9
39/11 48/1
48/20
53/12
**something
[8]** 10/6
13/1 24/6
25/3 29/15
30/22
32/13 47/7
**somewhere
[1]** 43/22
**SONALI [1]**
1/16
**soon [2]**
11/6 53/17
**sooner [1]**

**S**

sooner...
[1]   25/22
sorry [2]
21/24
44/11
sort [9]
7/8 7/9
12/25
21/12 37/5
37/10
41/17
45/22
46/14
sought [3]
47/16
47/19
47/21
sounds [2]
6/5 20/24
spanned [1]
24/5
spans [1]
29/16
speaking
[2]   4/19
7/7
specific
[4]   9/7
12/16
18/17
28/25
spend [2]
9/25 43/5
spent [1]
42/8
spoken [1]
30/1
spot [1]
41/4
Sridhar [4]
13/25
14/11
14/14
14/18
stand [1]
10/2
standard
[1]   17/16

standing
[4]   5/19
47/23 48/6
49/17
stands [2]
32/15
36/10
start [3]
6/4 25/9
38/6
state [2]
21/17
51/12
statement
[5]   12/9
12/9 19/1
20/12
29/14
statements
[4]   14/7
14/22 29/4
29/6
STATES [7]
1/1 1/3
1/11 1/13
1/13 1/15
3/2
status [5]
1/5 3/3
3/25 5/25
9/8
statutory
[1]   50/5
stayed [1]
5/8
stays [1]
13/16
steering
[1]   9/22
stenography
[1]   1/21
step [2]
28/12 44/9
steps [2]
20/3 41/21
STEVEN [5]
1/6 1/20
2/16 2/20
2/24
sticky [2]

38/14
still [6]
3/17 5/15
5/18 27/2
30/2 31/18
Stock [1]
44/21
stop [1]
4/15
straightfor
ward [1]
50/23
strategy
[2]   22/15
46/5
Street [3]
1/8 1/14
2/4
strikes [1]
34/20
striking
[4]   42/4
42/24
43/10
43/21
strongly
[1]   16/12
structure
[3]   3/10
31/25
33/25
stuck [1]
21/13
stuff [1]
27/6
sub [3]
17/23
17/24
18/16
sub-parts
[2]   17/24
18/16
sub-questio
ns [1]
17/23
subject [4]
31/22
37/15
38/12

47/15
submissions
[1]   16/12
submit [1]
45/22
subpoena
[16]
10/25 11/4
11/6 25/7
26/10 27/3
30/15
33/13 34/3
42/4 42/6
42/17 44/7
45/14
45/22 46/8
subpoenas
[10]
25/12
25/16
28/24 29/1
30/18 31/9
32/8 36/16
38/15
43/12
substance
[5]   11/11
12/6 18/18
18/19 21/3
substantive
[4]   18/5
22/9 28/15
50/1
such [2]
29/9 36/22
suddenly
[3]   42/4
42/5 43/2
sufficient
[3]   15/12
22/20
51/22
suggest [2]
12/13
44/16
suggested
[1]   40/4
suggesting
[1]   6/5
suggestion
[2]   9/8

**S**uite [1]
2/15
summary [1]
3/25
Sunday [1]
37/24
supplement
[3]   45/25
52/11
52/22
supplementa
l [2]   17/2
33/8
support [2]
23/12
50/9
supporting
[1]   50/8
suppose [1]
15/15
supposed
[1]   39/10
suppress
[4]   29/6
47/23 48/7
49/21
suppression
[1]   29/3
sure [17]
3/21 8/21
18/13
29/19
32/17
32/18
34/20
40/24 43/9
43/10 44/9
44/17 49/6
50/15 51/9
51/11 53/5
surprised
[1]   4/17
suspect [1]
37/13
suspects
[1]   48/2

**T**

T's [2]

**T's... [2]**
40/16
40/20
**table [1]**
19/8
**tag [1]**
12/23
**take [15]**
4/9 7/1
7/6 20/18
23/1 28/12
30/7 30/10
34/15
35/13
41/21
44/25 45/2
52/10
52/21
**taken [4]**
6/15 12/17
20/3 26/25
**takes [2]**
13/19 27/6
**taking [1]**
9/7
**talk [2]**
5/25 38/16
**talked [1]**
37/21
**talking [8]**
16/4
20/25 23/7
39/12
42/21
46/11
46/12
51/25
**target [2]**
13/7 37/25
**team [3]**
12/11
13/22 17/9
**tell [10]**
7/5 13/8
25/23 26/3
32/6 35/10
35/23 45/8
45/10

50/22
**telling [3]**
11/14
13/17 33/2
**terms [3]**
3/25 4/5
32/21
**testify [1]**
14/15
**than [7]**
8/11 10/6
15/18
20/10
25/22 38/9
40/4
**thank [8]**
5/3 16/10
28/6 34/6
39/18
52/25
53/10
53/15
**Thanks [3]**
53/14
53/20
53/20
**that [411]**
**that's [44]**
3/15 4/15
6/17 10/1
10/12
10/14
10/16
11/13 13/5
13/6 13/12
13/21
14/22 18/4
18/25 19/7
20/13 28/2
29/18
31/17
32/11 33/3
33/21
34/18 36/7
36/8 36/9
36/18
36/19
37/21
37/24
38/10

39/13
40/23
45/12
45/19
46/11
47/25
49/25
51/23 52/3
52/17 53/4
53/6
**their [18]**
5/13 8/11
8/12 13/20
19/25 23/6
23/14 26/9
37/5 40/3
41/10 43/4
44/22
49/16 50/9
50/9 51/20
51/21
**them [26]**
3/8 3/24
11/15
13/16
13/17
13/22 14/2
14/2 18/17
20/18
21/12
21/21
26/12
26/13 30/2
30/7 30/8
34/19 35/9
39/17 40/6
47/2 47/6
50/11
50/12 52/4
**then [32]**
4/14 5/17
5/24 6/10
7/23 14/16
15/22
16/20
16/22
17/18 18/5
19/24
21/10 24/9
24/21

25/24 27/4
27/9 28/18
29/13
29/14
29/16
29/25
30/25 33/2
33/11
33/15 36/6
48/8 50/18
51/11
52/17
**THEODORE
[1]** 2/19
**theory [6]**
48/9 48/16
50/10 51/5
51/12
51/21
**there [61]**
**there's
[28]** 4/13
7/17 8/8
10/17
14/20 15/2
15/18
15/22
15/24
15/24
17/17 21/6
21/6 21/6
24/24 25/1
25/6 29/13
30/25
31/23
31/25
32/15
33/20
44/18
45/12 47/9
50/7 50/17
**Thereafter
[1]** 33/16
**therefore
[1]** 29/7
**these [9]**
13/15
20/21 21/9
24/22
25/25

28/14 29/5
30/9
**they [65]**
**they're [9]**
11/24
13/18
19/14
26/14
35/12 39/6
40/6 44/23
50/3
**they've [2]**
8/10
15/12
**thing [9]**
3/10 7/16
17/8 26/13
38/5 38/9
43/24
45/12
53/11
**things [20]**
4/3 4/5
4/6 5/16
6/14 6/17
7/17 7/20
9/2 9/3
16/25
22/15
22/19
28/11
30/10 32/5
38/8 45/4
46/13 50/5
**think [75]**
**thinking
[2]** 13/9
38/6
**third [1]**
14/4
**this [124]**
**thorny [1]**
40/25
**thorough
[1]** 39/8
**those [30]**
6/3 11/11
12/1 12/4
12/5 12/6

**T**

those...
 **[24]**
 13/14
 13/19
 13/23
 14/25
 16/25  18/8
 18/10
 20/15
 20/17  21/5
 21/11
 21/14
 22/16
 23/10
 25/16
 25/22
 26/16
 27/24
 32/24
 42/13
 42/19
 43/14
 47/24
 50/13
**Though [1]**
 5/1
**thought [5]**
 3/23  3/24
 7/12  48/18
 51/9
**three [2]**
 17/1  27/14
**threshold**
 **[1]**  36/12
**through [9]**
 12/18
 14/13
 22/11
 23/10
 26/15
 28/15  33/1
 37/5  41/5
**tick [1]**
 18/19
**time [32]**
 5/21  5/24
 6/25  7/9
 7/11  7/11

 11/14  12/3
 21/16
 24/18  25/2
 27/6  27/14
 30/7  30/10
 30/21  32/2
 33/22
 35/12
 36/17
 37/22  38/3
 38/9  44/9
 45/16
 45/23
 45/24  46/2
 50/13  53/9
**timely [1]**
 35/1
**times [2]**
 26/22
 26/24
**timing [5]**
 8/13  15/23
 15/24
 28/14
 42/21
**tock [1]**
 18/19
**today [8]**
 5/23  8/15
 24/7  24/12
 25/19  27/9
 31/5  45/4
**today's [1]**
 40/24
**together**
 **[10]**
 11/10  12/6
 26/21  27/5
 32/18
 34/21
 34/24
 36/21
 36/25  38/4
**too [3]**
 18/1  31/2
 35/21
**took [5]**
 6/19  8/2
 11/12  19/8

**TOOSSI [1]**
 2/15
**top [1]**
 3/10
**topics [1]**
 17/13
**totally [3]**
 8/1  30/10
 32/11
**toward [1]**
 13/3
**Transcriber**
 **[1]**  54/7
**transcript**
 **[3]**  1/21
 53/17  54/2
**transcripti**
**on [1]**
 1/22
**transmitted**
 **[2]**  8/5
 39/4
**transparent**
 **[1]**  13/10
**traveled**
 **[1]**  8/11
**treat [2]**
 9/6  10/5
**tremendous**
 **[1]**  8/8
**trial [18]**
 1/16  1/16
 4/5  4/10
 5/10  5/15
 5/22  9/6
 9/23  10/7
 13/17
 26/20  29/1
 29/17
 29/19
 33/24  34/2
 49/15
**trials [2]**
 4/13  5/7
**trick [1]**
 52/9
**tried [4]**
 6/12  15/9
 18/17

**trip [2]**
 8/16  8/16
**trouble [1]**
 49/10
**true [1]**
 35/18
**truncate**
 **[1]**  30/11
**truncated**
 **[1]**  29/22
**truncating**
 **[1]**  30/2
**truth [1]**
 44/15
**try [2]**
 11/15  19/9
**trying [11]**
 3/22
 11/16
 12/15
 12/25  19/5
 27/5  27/19
 34/1  34/22
 36/19
 48/19
**turn [5]**
 15/25
 29/15
 47/19
 49/19  50/7
**turned [3]**
 41/15
 41/17
 49/24
**turns [2]**
 10/13  38/3
**two [15]**
 7/17  8/5
 14/2  14/18
 16/16
 16/25
 19/20
 22/21
 23/19
 24/20  27/9
 28/11
 30/21
 31/10  44/4
**two-week**
 **[1]**  24/20

**U**

**U.S [7]**
 1/8  3/4
 39/21
 39/22
 39/25  40/1
 40/17
**ultimate**
 **[1]**  27/24
**ultimately**
 **[2]**  33/11
 47/19
**uncertainty**
 **[1]**  10/3
**unclear [1]**
 44/5
**uncover [3]**
 12/25
 36/5  48/4
**under [9]**
 12/13  15/6
 15/6  15/6
 15/25  26/2
 27/20  35/4
 51/8
**underlying**
 **[2]**  23/14
 49/24
**understand**
 **[15]**  4/12
 5/12  8/21
 8/24  15/1
 16/7  22/16
 23/20
 24/14  30/4
 31/2  33/11
 36/11  46/9
 46/9
**understandi**
**ng [2]**
 25/24
 34/21
**understands**
 **[1]**  12/19
**understood**
 **[5]**  5/3
 19/4  23/24
 24/2  51/9
**undertaken**
 **[1]**  18/3

**U**

undertook
[1]    16/22
unfortunately [2]
4/17 9/12
UNITED [7]
1/1 1/3
1/11 1/13
1/13 1/15
3/2
universe
[2]    30/4
46/11
unless [1]
43/18
unlike [2]
25/12
42/17
unnecessarily [1]
29/21
unreasonable [2]    38/2
38/3
until [2]
5/8 38/5
up [12]
9/23 10/10
14/17 23/1
31/11 36/8
40/6 41/2
44/6 48/8
51/23 53/5
upon [1]
37/16
us [25]
4/10 4/16
6/17 7/2
7/3 15/13
18/22
20/23
24/11
25/18
26/13  33/2
33/22
34/19  35/6
35/12
36/15

41/24
42/15
43/17
45/10 48/4
48/15
48/24 53/1
use [1]
49/15
utmost [1]
12/22

**V**

various [2]
35/8 39/1
vented [1]
35/15
very [25]
4/17 7/5
9/24 9/24
12/16 13/8
14/6 18/17
21/14 22/1
25/24
27/24
28/16
28/24
28/25
35/19
36/13 38/5
38/21 43/7
46/3 46/6
48/3 48/9
48/23
Vesey [1]
2/4
view [8]
5/15 5/21
13/7 16/15
17/11 28/5
28/14 53/2
views [1]
19/15
Villanti
[3]    1/23
53/17 54/6
vindicate
[1]    37/4
volumes [1]
42/9
voluntary
[1]    43/3

volunteer
[1]    24/6
vs [1]    1/4

**W**

wait [1]
38/5
Walnut [1]
1/8
WALTHER [1]
2/7
want [23]
8/25 9/20
10/4 10/6
15/23 18/1
19/5 25/25
26/7 26/18
28/9 30/9
32/6 32/25
35/3 37/4
40/7 41/6
44/24
47/10
51/10
52/11
52/22
wanted [5]
6/12 6/18
25/24
40/24
51/23
wants [6]
3/9 7/8
25/19
27/17 34/5
38/16
warrant [1]
49/19
was [41]
6/12 7/16
12/8 14/2
15/2 16/16
16/21
17/24
18/22
18/23 20/5
20/10
20/14 21/4
23/16
23/21

23/23
24/13
25/16 26/1
26/12
28/24 32/5
32/19
34/13
35/20
36/12
36/14
37/17
38/24
40/18
44/11
46/13
47/15
47/25 48/1
48/1 48/3
48/9 48/20
48/21
Washington
[2]    1/17
2/8
water [1]
35/4
way [26]
3/14 3/15
10/10
12/12
12/18
17/21 21/8
22/22 24/9
31/14
31/15
31/18 33/3
34/16
35/14
35/16
36/22 37/8
38/21 39/6
41/14
41/23 44/5
50/19
50/23
52/22
wayside [1]
46/15
we [267]
we'd [1]
4/4

we'll [12]
9/10 10/1
25/13
26/20
36/25 45/2
46/2 49/15
50/18
52/10
52/17
52/21
we're [34]
5/13 9/12
9/13 9/22
10/22
12/24 16/4
19/4 19/7
21/7 21/13
23/7 24/3
24/6 24/10
26/23
27/18 31/3
34/8 34/21
35/25
36/19
36/21
38/10
38/10
41/11
43/21
44/17
44/17
44/18
46/11
49/22
50/11
53/10
we've [20]
5/12 6/12
11/13 15/9
17/2 17/11
18/7 18/7
18/11
18/19
21/11
24/23 25/6
25/15
40/12
40/13
41/17
45/19 50/6

# W

we've...
  [1]  51/4
week [8]
  9/18 9/23
  15/16
  24/20 27/9
  34/14
  37/10
  37/10
weeks [2]
  27/1 30/21
weighed [1]
  27/15
WEINSTEIN
  [1]  2/23
WEISS [1]
  2/18
well [18]
  7/6 10/9
  10/14
  14/24 19/4
  21/1 23/2
  23/4 31/9
  37/3 37/20
  40/15 41/2
  48/3 48/9
  48/15
  48/23 49/8
WELLS [1]
  2/19
went [1]
  39/17
were [29]
  3/6 3/7
  3/22 3/23
  4/1 6/14
  6/20 12/25
  17/5 19/15
  20/3 22/11
  25/23
  25/23
  27/19
  27/20
  28/24 29/8
  33/3 35/6
  35/19
  36/13
  36/14

56/15
38/15 46/7
46/13
48/19
51/10
weren't [3]
  18/18
  18/21
  47/20
WHARTON [1]
  2/18
what [79]
what's [6]
  4/22 13/7
  23/1 36/7
  51/1 51/3
whatever
  [5]  24/9
  29/19
  32/23
  37/17
  47/12
when [12]
  4/5 5/18
  8/23 12/1
  14/5 26/22
  29/11 31/3
  32/20 35/6
  39/17
  48/12
where [13]
  4/1 4/5
  8/15 10/1
  13/6 20/23
  22/21 25/7
  25/9 25/15
  28/2 34/1
  42/17
whereas [1]
  43/4
whereby [1]
  27/8
whether [9]
  11/3 12/4
  16/20
  19/20 20/9
  23/8 30/19
  49/20
  52/11
which [33]

6/6 7/18
7/18 12/21
12/24 18/4
18/23
25/13
26/19
26/25 29/8
32/18
32/20
33/12
33/12
33/21
34/12 35/6
35/7 35/9
35/24
38/15
38/22
38/24 39/6
40/5 40/5
45/9 45/13
45/17
46/10 50/3
50/10
who [16]
  3/13 3/18
  4/19 8/7
  25/18
  38/16
  40/14
  40/15 43/2
  44/22
  47/17 48/1
  48/1 48/20
  48/21
  48/21
who's [1]
  14/21
whoever [1]
  34/5
whole [6]
  3/10 7/24
  14/20 33/1
  37/16
  46/11
whom [1]
  31/12
why [15]
  3/13 23/2
  28/4 36/14
  43/10

45/3 46/4 47/6
47/21 48/9
48/17
48/19
48/22 51/3
51/7 51/12
will [56]
willing [6]
  5/1 11/23
  11/24
  13/11
  40/18 43/3
wishes [1]
  47/15
withdrawing
  [1]  18/23
within [2]
  4/11 27/9
without [1]
  22/22
witness
  [13]  11/9
  11/22 12/4
  13/12
  13/12
  13/25 14/6
  14/6 14/21
  20/11
  20/21 21/5
  22/19
witnesses
  [3]  21/9
  35/8 40/5
won't [3]
  3/7 35/10
  38/2
woolly [1]
  53/13
word [2]
  3/7 48/25
words [2]
  3/11 20/12
work [11]
  10/12
  10/15
  23/10
  26/21 27/5
  34/23
  36/21
  36/25

39/14 47/7
50/4
worked [5]
  19/20 27/2
  27/5 27/19
  46/5
working [1]
  27/6
works [1]
  32/17
worse [1]
  9/2
would [41]
  5/18 5/20
  6/15 6/21
  8/18 10/7
  10/11 11/4
  12/12
  14/23 22/2
  22/3 22/8
  22/25 24/5
  24/11
  25/23
  26/17 27/9
  27/10
  27/13 30/3
  30/10
  30/13
  30/17 31/5
  31/7 31/18
  32/1 32/3
  34/18
  45/16
  45/20
  48/19
  48/23
  48/24 49/9
  50/9 51/6
  51/12
  53/17
write [1]
  51/2
writing [2]
  18/16
  50/11
written [1]
  47/7
wrong [1]
  17/16
wrongdoing
  [1]  13/1

W

**wrote [1]**
20/16

**Y**

**Yahoo.com
[1]** 1/24
**Yeah [1]**
38/19
**year [1]**
3/22
**Year's [3]**
3/21 46/21
52/2
**years [1]**
24/5
**yes [28]**
4/21 6/4
10/20
18/17
20/23
21/24 25/7
34/6 34/6
38/25 42/2
44/9 44/10
45/3 46/9
46/16
46/18
46/19 47/6
47/11
51/18 52/2
52/5 52/13
52/15
52/19
52/24
53/19
**yet [8]**
19/16
23/11
36/13
40/12 41/7
41/10
50/11 51/5
**York [9]**
1/17 2/5
2/5 2/12
2/12 2/16
2/16 2/20
2/20
**you [151]**

**you're [8]**
4/24 20/25
32/3 37/9
37/13
37/19
39/12 49/3
**you've [1]**
26/19
**your [109]**

**Z**

**Zoom [1]**
33/18