UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GORDON J. COBURN and<br>STEVEN SCHWARTZ | Hon. Kevin McNulty<br><br>Crim. No. 19-120 (KM) |

## GOVERNMENT'S OMNIBUS BRIEF IN SUPPORT OF MOTIONS IN LIMINE

GLENN S. LEON
Chief
1400 New York Ave. NW
Washington, DC 20530
(202) 514-2000

PHILIP R. SELLINGER
United States Attorney
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:
SONALI D. PATEL
GERALD M. MOODY, JR.
Fraud Section, Criminal Division
Department of Justice

JONATHAN FAYER
Assistant U.S. Attorney

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ......................................................................... 1

ARGUMENT ................................................................................................. 5

I.   CERTIFIED BUSINESS RECORDS SHOULD BE ADMITTED
     FOR THEIR TRUTH WITHOUT A RECORDS CUSTODIAN ................... 5

II.  GOVERNMENT RECORDS OF DATA COPIED FROM
     COGNIZANT SERVERS AND CORPORATE DEVICES ARE
     SELF-AUTHENTICATING ......................................................................... 9

III. DOCUMENTS INCORPORATED INTO COGNIZANT'S FILES
     ARE BUSINESS RECORDS AND SHOULD BE ADMITTED FOR
     THEIR TRUTH WITHOUT A RECORDS CUSTODIAN ........................... 12

IV.  AN ERNST & YOUNG EMPLOYEE WHO SUPERVISED THE
     COLLECTION AND PROCESSING OF COGNIZANT
     DOCUMENTS AND DEVICES SHOULD BE TREATED AS A
     LAY WITNESS ......................................................................................... 14

V.   EVIDENCE OF THE PAYMENT AND REIMBURSEMENT OF A
     BRIBE DEMAND RELATED TO A COGNIZANT FACILITY IN
     PUNE, INDIA IS ADMISSIBLE ............................................................... 18

     A.   The Pune Bribe Evidence .......................................................... 19

     B.   Evidence of the Pune Bribe Demand is Intrinsic to the
          Crimes Charged in the Indictment ........................................... 20

     C.   The Pune Bribe Evidence Would Also Be Admissible
          Under Rule 404(b) for Non-Propensity Purposes ...................... 23

VI.  DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR
     ELICIT EVIDENCE CONCERNING ALLEGED PRIOR GOOD
     ACTS ....................................................................................................... 27

VII. DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR
     ELICIT EVIDENCE CONCERNING ALLEGED DEFICENCIES
     IN THE GOVERNMENT'S INVESTIGATION OR DISCLOSURES ........ 32

**VIII.** **DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR ELICIT EVIDENCE CONCERNING THE DEFENDANTS' FAMILIES BACKGROUNDS, HEALTH, AGES, OR ANY OTHER PERSONAL FACTOR UNCONNECTED TO GUILT OR INNOCENCE, AS WELL AS DISCUSSION OF PUNISHMENT** ............. 35

**IX.** **DEFENDANTS SHOULD NOT BE ALLOWED TO MAKE ARGUMENTS REGARDING JURY NULLIFICATION ON THE GROUNDS THAT BRIBES ARE A CUSTOM AND PRACTICE IN INDIA** ................................................................................................... 37

**CONCLUSION** ................................................................................................... 39

## PRELIMINARY STATEMENT

The Government respectfully submits this Brief in support of its motions *in limine* in connection with the trial of this matter. Specifically, the Government requests that this Court:

(1) admit certain certified business records without the need to call a records custodian at trial;

(2) admit records of data copied from Cognizant's servers and corporate devices without the need to call a records custodian at trial;

(3) admit certain documents incorporated into Cognizant's business records;

(4) treat the testimony of an Ernst & Young employee who supervised the collection and processing of certain Cognizant documents and devices as testimony of a lay witness;

(5) admit evidence concerning the payment of a bribe demand related to a Cognizant facility in Pune, India;

(6) preclude the Defendants from arguing or introducing evidence concerning their alleged prior good acts;

(7) preclude the Defendants from arguing or introducing evidence concerning alleged deficiencies in the Government's investigation or disclosures;

(8) preclude the Defendants from arguing or admitting evidence concerning their families' backgrounds, health, ages, or any other personal factor unconnected to guilt or innocence, as well as a discussion of potential punishment; and

(9) preclude the Defendants from making arguments regarding jury nullification on the grounds that bribes are a custom and practice in India. [1]

## FACTUAL BACKGROUND

On February 14, 2019, a grand jury in the District of New Jersey returned a twelve-count Indictment against defendants Gordon J. Coburn and Steven Schwartz

---

[1] The Government reserves the right to supplement these motions as necessary, including by filing additional motions.

(together, the "Defendants") charging conspiracy to violate the Foreign Corrupt Practices Act's ("FCPA") anti-bribery provisions (Count One), three substantive FCPA anti-bribery charges (Counts Two through Four), seven counts alleging that Coburn and Schwartz falsified Cognizant's books and records (Counts Five through Eleven), and one count alleging that Coburn and Schwartz circumvented and failed to implement Cognizant's internal accounting controls (Count Twelve). (Indictment, ECF No. 1.).

At trial, the Government expects the evidence to show that in April 2014, during two separate video conference calls, Coburn, Schwartz, and two co-conspirators who worked at Cognizant and are identified in the Indictment as "CC#1" and "CC#2," agreed and authorized that Cognizant, through a third party construction company (Larsen & Toubro Ltd., identified in the Indictment as the "Construction Company"), would pay a $2 million bribe to secure and obtain a government-issued planning permit (the "Planning Permit") required for Cognizant to complete construction of a large-scale office campus in Tamil Nadu, India (the "KITS Campus"). The Defendants and their co-conspirators understood that the bribe would be paid to one or more government officials in India with authority over the Planning Permit. This conduct occurred after months of consternation within and between Cognizant and L&T over delays in obtaining the Planning Permit, and were followed by various steps the Defendants and their co-conspirators took to conceal their unlawful conduct.

Coburn, Schwartz, CC#1, and CC#2 agreed during these calls that L&T would pay the bribe, and that Cognizant would then reimburse L&T. At CC#1's suggestion, Coburn, Schwartz, CC#1, and CC#2 agreed that Cognizant would reimburse L&T for the bribe payment through the change order process at the end of the project. Schwartz agreed that CC#1's suggested approach was acceptable, but cautioned that the reimbursement payment should not stand out in the change order documents.

To increase the pressure on L&T to obtain the Planning Permit and to pay the bribe, Coburn directed CC#1 to freeze and withhold all future payments to L&T until it had obtained all necessary permits for the KITS Campus. Coburn also directed CC#1 to notify L&T that its future business with Cognizant was in jeopardy.

After receiving authorization for the bribe payment from Coburn and Schwartz, CC#1 advised L&T, as Coburn had instructed, that Cognizant would withhold all future payments to L&T until it secured the necessary approvals, including the Planning Permit, for the KITS Campus.

Shortly thereafter, Cognizant obtained a government order (the "Government Order") necessary for the Planning Permit. Specifically, on or about June 30, 2014, a senior representative from L&T referred to in the Indictment as "CC#3," emailed a scanned copy of the Government Order to CC#1 and others, writing: "As discussed, nobody should know that L&T has got this [Government Order.] Request to maintain this confidentiality."

On the same day Cognizant obtained the Government Order, CC#1 asked Coburn to unfreeze the remaining $10 million owed to L&T. Coburn instructed CC#1,

3

via email, to "pay $5mm of the $10mm," but to "hold the other $5mm until all approvals are finalized and received."

On or about November 5, 2014, a local development authority issued the Planning Permit to Cognizant. Five days later, on or about November 10, 2014, CC#1 emailed Coburn, copying CC#2 and others, stating that the Development Authority had issued the Planning Permit and recommending that Cognizant release the remaining funds that Cognizant had previously frozen. Two days later, Coburn responded, via email, "OK."

Thereafter, in or about late 2014, as the KITS Campus project neared completion, L&T began submitting change order requests to Cognizant for reimbursement of unanticipated construction costs.

L&T included in its claims list an approximately $3.7 million claim for "approvals/campus regularization," which included an approximately $2.5 million request for "statutory approvals – planning permit." This request corresponded to the amount L&T demanded as reimbursement for the approximately $2 million bribe payment and related expenses.

To disguise the reimbursement for the approximately $2 million bribe payment, CC#1 instructed a co-conspirator who was a member of Cognizant's real estate group to replace the $3.7 million "approvals/campus regularization" request with previously rejected claims worth roughly the same amount. This substitution ensured that L&T was made whole for the bribe payment without having to document

4

the true purpose of the reimbursement.    Coburn thereafter approved the reimbursement to L&T based on the false change order reimbursement request.

Between in or around March 2015 and in or around January 2016, Cognizant issued several separate payments to L&T to cover the cost of the change order requests, including approximately $2.5 million for the bribe reimbursement and related expenses.

## ARGUMENT

### I.    CERTIFIED BUSINESS RECORDS SHOULD BE ADMITTED FOR THEIR TRUTH WITHOUT A RECORDS CUSTODIAN

The Government intends to introduce at trial documentary exhibits from certain businesses, including Cognizant, PayPal, NBC Universal, together with medical records from Schwartz's treating physicians (the "Business Record Exhibits").  A list of the Business Record Exhibits is included in the notice attached hereto as Exhibit A. The Government will provide the Court with copies of the Business Record Exhibits under separate cover.

By notice filed on July 10, 2023, the Defendants contested the authenticity of some of the Business Record Exhibits and reserved their rights to object to the admissibility of all of the exhibits.  *See* Defs.' Notice of Intent to Contest the Authenticity, Chain of Custody, or Scientific Analysis of Government Exhibits, ECF No. 492.   On August 3, 2023, the Government provided notice to defense counsel under Rule 902(11) of its intent to rely on certifications for the Business Record Exhibits and provided those certifications to the defense.  The Government requests that the Business Record Exhibits be admitted for their truth on the basis of the

certifications of the records custodians, without the need for the Government to call records custodians as witnesses at trial.

The Court's prerogative to make preliminary determinations regarding the application of the rules of evidence is set forth in Rule 104. Rule 104(a) provides:

> The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.

This rule applies to all preliminary determinations, including the question of whether documents fall within the business records exception to the hearsay rule. *See In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 287-88 (3d Cir. 1983), *rev'd on other grounds by Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (holding that preliminary determinations are made by the judge rather than jury, and that the court is not confined to admissible evidence).

The prerequisites for admissibility under Rule 803(6) (or any other rule of evidence) must be established by a preponderance of the evidence. *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d at 287; *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Rule 803(6) provides that the following is not excluded by the hearsay rule:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

In this matter, as authorized by Rule 803(6), the Government seeks to establish the authenticity of the records in question, as well as their admissibility under Rule 803(6), through certifications obtained from custodians of records, as contemplated in Rule 803(6).  That rule references Rule 902(11), which provides for the authenticity of the following:

(11) Certified Domestic Records of Regularly Conducted Activity.  The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.  Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

The 902(11) certifications completed by the business records custodians will attest to the foundational requirements cited in these rules with respect to the Business Record Exhibits.  Moreover, as noted above, the Government has given written notice

to the Defendants and provided the exhibits and certifications for inspection.  *See* Exhibit A.

The admissibility of business records under Rule 803(6), and the procedure set forth in Rule 104 for determination of the preliminary questions regarding admissibility, are unaffected by the Supreme Court's decision in *Crawford v. Washington*, 124 S. Ct. 1354 (2004).  In *Crawford*, the Supreme Court held that any "testimonial" hearsay may not be admitted in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. However, the Court made clear that business records admitted pursuant to an evidentiary hearsay exception are not the type of testimonial statements with which the Sixth Amendment Confrontation Clause is concerned.  *Id.* at 1367; *see also United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2011) (noting that "[T]he Supreme Court has indicated that business records are almost never 'testimonial' for Confrontation Clauses purposes" and finding that records from foreign and domestic banks, car dealerships, and other business entities authenticated by sworn declarations of record custodians were not testimonial*); United States v. Schwartz*, 315 F. Appx. 412, 417 (3d Cir. 2009) (unpublished) ("Business records admitted pursuant to a hearsay exception . . . are not 'testimonial' and therefore do not implicate the Confrontation Clause.").  Nor are 902(11) certifications testimonial.  *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (holding that a Rule 902(11) certification of business records was not testimonial).

Here, the Business Record Exhibits are clearly business records as that term is defined under Fed. R. Evid. 803(6).  They are records of regularly conducted business activity which were made at or near the time of the activity by, or from information transmitted by, persons with knowledge; the records were kept in the course of the regularly conducted business activity; and it was the regular practice of the businesses to make these records.  Each of these exhibits is, in turn, supported by a certification made pursuant to Fed. R. Evid. 902(11), in which each custodian of records certifies, pursuant to 28 U.S.C. § 1746, that they have reviewed the documents at issue, and that they are true and accurate copies of business records kept in the normal course of business.  In each certification, the custodian of records further certifies that these exhibits are records of regularly conducted business activity which were made at or near the time of the activity by, or from information transmitted by, persons with knowledge; the records were kept in the course of the regularly conducted business activity; and it was the regular practice of the business to make these records.    Accordingly, the Government respectfully requests that the Court admit the Business Record Exhibits without the need for a records custodian to be called as a witness at trial.

## II. GOVERNMENT RECORDS OF DATA COPIED FROM COGNIZANT SERVERS AND CORPORATE DEVICES ARE SELF-AUTHENTICATING

The Government seeks a ruling that copies of certain digital records (the "Digital Record Exhibits") obtained from Cognizant servers and digital devices are self-authenticating pursuant to a Rule 902(14) certification provided by Cognizant

and, therefore, the Government need not call a records custodian to authenticate them at trial.[2] A list of the Digital Record Exhibits is included in the notice attached hereto Exhibit B. The Government will provide copies of the Digital Record Exhibits to the Court under separate cover.

Under Rule 902(14), "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person" constitutes self-authenticating evidence. Fed. R. Evid. 902(14). "A proponent establishing authenticity under this Rule must present a certification containing information that would be sufficient to establish authenticity were that information provided by a witness at trial." *Id.*, Advisory Committee's Note (2017). "The rule is flexible enough to allow certifications through processes other than comparison of hash value." *Id.*

The Digital Record Exhibits the Government intends to introduce at trial consist of internal Cognizant chat messages, at least two identical copies of notes obtained from Schwartz's Microsoft email inbox and a company-issued laptop, and metadata associated with those notes. The Government obtained a certification from Manivannan Shanmugam ("Shanmugam"), the Director – Head of Intelligence in the Global Resilience function for Cognizant, who was responsible for the management and collection of Cognizant's electronic data, documents, and other records, including the Digital Records Exhibits. *See* Exhibit B. Appendix A to the certification lists each

---

[2] The Government will, of course, be prepared to establish that the documents are relevant and otherwise admissible at trial.

of the Digital Record Exhibits the Government intends to introduce and the device or server from which Cognizant collected the document.   In the certification, Shanmugam attests that the Digital Record Exhibits constitute electronically stored information that was copied from Cognizant issued electronic devices, storage media, or files, and explains how Shanmugam authenticated them—namely, by accessing and comparing the copies of the Digital Record Exhibits in the Government's exhibit list to the corresponding original files maintained by Cognizant.   Finally, the certification is signed under penalty of perjury.

As noted above, on July 10, 2023, the Defendants filed a notice objecting to the authenticity of the Digital Records Exhibits.   On August 3, 2023, the Government provided notice to defense counsel under Rule 902(14) of its intent to rely on the certification for the Digital Record Exhibits and provided the certification to the defense.   *See* Exhibit B.

Accordingly, because the Government has met all of the requirements of Rule 902(14), the Government requests that the Court make a preliminary determination that the Digital Records listed in the certification attached as Exhibit B are self-authenticating, and that the Government need not call a witness from Cognizant to authenticate them.   *See United States v. Dunnican*, 961 F.3d 859, 872 (6th Cir. 2020) (text messages from defendant's cell phone were properly authenticated under Rule 902(14)); *United States v. Anderson*, 563 F. Supp. 3d 691, 695 (E.D. Mich. 2021) (same), *aff'd*, No. 22-1237, 2023 WL 3413905 (6th Cir. May 12, 2023).

### III.   DOCUMENTS INCORPORATED INTO COGNIZANT'S FILES ARE BUSINESS RECORDS AND SHOULD BE ADMITTED FOR THEIR TRUTH WITHOUT A RECORDS CUSTODIAN

Defendants object to the authenticity of certain business records of Cognizant on the basis that they "appear to contain foreign documents that are not self authenticating."  *See* Defs.' Notice of Intent to Contest the Authenticity, Chain of Custody, or Scientific Analysis of Government Exhibits, ECF No. 492.  The documents at issue (the "Incorporated Documents"), are generally attachments to emails and correspondence, which include documents related to applications, fees, and permits obtained by Cognizant and L&T for the KITS Campus project from authorities in India.  The business record certifications obtained from Cognizant indicate that these records were incorporated into the business records of Cognizant.  The Incorporated Documents are therefore self-authenticating and should be admitted without calling a record custodian at trial based on Cognizant's business records certification, which as described above, complies with the requirements of Rule 902(11).  A list of the Incorporated Documents is attached hereto as Exhibit C.  The Government will provide copies of these exhibits under separate cover.

"To lay an adequate foundation under Rule 902(11) (or under Rule 803(6), which Rule 902(11) extends by allowing a written foundation in lieu of an oral one), the 'custodian [of the records] need not have personal knowledge of the actual creation of the document.'"  *United States v. Adefehinti*, 510 F.3d 319, 325 (D.C. Cir. 2007) (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)); *see also United States  v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (holding that custodian's reliance

on automated process to certify business records was sufficient and custodian need not have personal knowledge of specific record in question).

Further, courts, including in this District, have found that a record of which a firm takes custody is considered "made" by the firm within the meaning of Rules 803(6) and 902(11) (and thus is admissible if all the other requirements are satisfied). *Adefehinti*, 510 F.3d at 326 (collecting cases); *see also MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) ("[R]ecords a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records."); *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977) (holding that freight bills, though drafted by other companies, were business records of a shipping company because they were "adopted and relied upon by" the shipping company); *Silver-Krieger, Ltd. v. Nicon Warehouse*, No. CIV.A. 83-39, 1986 WL 4311, at *5 (D.N.J. Apr. 2, 1986) (Fisher, C.J.) ("While the business-record exception may have been at one time applicable only to documents actually prepared by witnesses who testified as to their authenticity, a number of circuits have recognized that under rule 803(6) business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations.").

In this case, Shanmugam, who, as described above, has familiarity with Cognizant's record-keeping system, provided a written certification attesting that the documents produced by Cognizant to the Government in the course of the

Government's investigation, including the Incorporated Documents, were true and accurate copies of business records kept in the normal course of Cognizant's business and otherwise satisfied the requirements of Rule 803(6).   The Incorporated Documents were acquired or created by Cognizant in the ordinary course of its business and relied upon by Cognizant in the development of the KITS Campus project.  Accordingly, the Incorporated Documents were incorporated into Cognizant's business records and are admissible under Rule 902(11) without the need for a records custodian to be called as a witness at trial.

## IV.   AN ERNST & YOUNG EMPLOYEE WHO SUPERVISED THE COLLECTION AND PROCESSING OF COGNIZANT DOCUMENTS AND DEVICES SHOULD BE TREATED AS A LAY WITNESS

The Government intends to call Shawn Fohs, a Managing Director in the Forensic & Integrity practice at Ernst & Young LLP ("EY"), as a witness at trial.  The Government has no contractual relationship with Mr. Fohs and will not compensate him for his expected testimony.

Beginning in or around August 2016, Mr. Fohs supervised a team at EY that Cognizant engaged to collect, process, and review data in connection with its internal investigation into potential bribery in India.  Mr. Fohs was responsible for, among other things, the collection and imaging of Schwartz's company-issued laptops and his Microsoft Outlook email inbox that was hosted on a Cognizant server.  Mr. Fohs is expected to testify about the following topics based on his personal knowledge and supervision of others working at EY on the Cognizant engagement: (i) the chain of custody of Schwartz's laptops and email inbox; (ii) the process to image, copy, and

extract data from Schwartz's laptops and email inbox; (iii) that certain extracted documents are authentic, complete, and accurate copies; (iv) the meaning of the metadata associated with those documents, including the author and the date and time they were created; (v) that he is trained in the use of the forensic tools that were used for these processes and that, in his personal experience, those tools produce reliable results; (vi) how he authenticated the documents, including through the use of hash values; and (vii) how the Sticky Notes function in Microsoft Outlook worked in 2014. Among other things, Mr. Fohs will testify about the extraction of six identical copies of a Microsoft Sticky Note that Schwartz drafted during an April 2014 conference call in which the defendants allegedly authorized the $2 million bribe payment described in the Indictment. A copy of these notes, marked as Government Exhibit 112, is attached as Exhibit D.

In an abundance of caution, the Government provided the Defendants notice of its intention to call Mr. Fohs as a potential expert witness, as required by Federal Rule of Evidence 702. *See* Exhibit E (July 19, 2023 letter providing notice of Mr. Fohs' testimony). Nonetheless, the Government believes that Mr. Fohs's testimony will not involve expert testimony that would be governed by Rule 702. Instead, his testimony will be that of a lay witness.

A lay witness may testify to matters about which the witness has personal knowledge, so long as the evidence is otherwise admissible. Fed. R. Evid. 602. The Third Circuit has explained that "[w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized

or technical—because the testimony is based upon a layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009); *see also United States v. Kale*, 445 F. App'x 482, 485 (3d Cir. 2011) (unpublished) (finding that witness provided lay testimony about the operation on cell phone towers where, among other things, "he had sufficient 'personal knowledge' of how cell phone towers operate to testify reliably on this subject"); *United States v. Baker*, 496 F. App'x 201, 204 (3d Cir. 2012) (unpublished) (holding that law enforcement agent's testimony as to his use of computer mapping software to create a map of defendant's location from records of defendant's cell phone use did not qualify as expert testimony); *United States v. Davis*, No. CR 07-909 WHW, 2012 WL 194094, at *5 (D.N.J. Jan. 23, 2012), *aff'd*, 524 F. App'x 835 (3d Cir. 2013) (holding that information technology specialist who conducted search of defendant's computer and testified about computer programs provided lay opinion testimony).

Although the Third Circuit has yet to decide whether testimony about the extraction and interpretation of data from electronic devices is lay or expert testimony, other circuits have recently held it to be either percipient or lay-opinion testimony, depending upon whether the testimony covered the extraction itself or the interpretation of the extracted data. *See United States v. Montijo-Maysonet,* 974 F.3d 34, 46-50 (1st Cir. 2020); *United States v. Chavez-Lopez*, 767 F. App'x 431, 433-35 (4th Cir. 2019) (unpublished); *United States v. McLeod*, 755 F. App'x 670, 673-74 (9th Cir.) (unpublished), *cert. denied*, 139 S. Ct. 1641 (2019); *United States v. Seugasala*, 702 F.

App'x 572, 575 (9th Cir. 2017) (unpublished); *United States v. Marsh*, 568 F. App'x 15, 16-17 (2d Cir. 2014) (unpublished).

For example, in *Chavez-Lopez*, the Fourth Circuit held that a U.S. Department of Homeland Security intern, who testified about the steps he took to extract data from a cell phone—"hooking the phones up to a computer, following a few prompts, and saving data onto an external drive"—was percipient testimony. 767 F. App'x at 433. To the extent that the intern "implicitly vouched for Cellebrite's accuracy,"[3] the court ruled that this was lay opinion testimony. *Id.* at 434. And in *Montijo-Maysonet*, a police officer testified at trial about text messages recovered from the defendant's cellphone and interpreted an extraction report. 974 F.3d at 40, 47-48. The First Circuit similarly found that, as long as a law enforcement officer's testimony did not "turn[] on or require[] a technical understanding of the internal mechanics of the forensic extraction technology," the officer could provide lay opinion testimony interpreting the information from a Cellebrite report. *Id.* at 48 (citing the Second Circuit's decision in *Marsh* and the Ninth Circuit's decision in *McLeod* in which testifying officers had run Cellebrite and interpreted the reports at trial).

Some circuits have endorsed a different approach, finding that testimony about extracting data from a storage device or cellphone qualifies as expert testimony. *See United States v. Wehrle*, 985 F.3d 549, 553–54 (7th Cir. 2021) (holding that a police officer's testimony about her forensic examination of external storage devices was

---

[3] Cellebrite is a digital tool used to collect, review, analyze and manage digital data, including data extracted from cellular telephones.

expert testimony because it involved technical concepts beyond ordinary knowledge); *United States v. Ganier*, 468 F.3d 920, 925-27 (6th Cir. 2006) (holding that the interpretation of software reports must be provided through expert testimony); *United States v. Stanley*, 533 F. App'x 325, 326-27 (4th Cir. 2013) (unpublished) (agent who conducted forensic examination of laptop was qualified as an expert). However, those decisions are non-binding and inconsistent with the Third Circuit's holding in *Donlin* that a lay witness may testify about "specialized or technical" subjects when the testimony is based on personal knowledge. 581 F.3d at 81.

Here, Mr. Fohs will testify about the process that he and others used to extract documents, including Schwartz's notes, from the laptops and email inbox. Mr. Fohs is not expected to offer any "opinions" based on specialized knowledge of forensic examination, but rather simply to testify, based on his own first-hand knowledge and experience, about the steps that he and others took to extract documents from the laptops and email inbox, the results and steps taken to confirm the accuracy of those extractions, and the metadata associated with those documents. Because any testimony of Mr. Fohs that touches on "specialized or technical" subjects will be based on his personal knowledge, and he will not offer any opinions based on specialized knowledge, this Court should find that it is lay testimony under *Donlin*. 581 F.3d at 81.

## V. EVIDENCE OF THE PAYMENT AND REIMBURSEMENT OF A BRIBE DEMAND RELATED TO A COGNIZANT FACILITY IN PUNE, INDIA IS ADMISSIBLE

In addition to the bribery allegations detailed in the Indictment, the Government seeks to admit evidence showing that, in or about 2013, L&T paid a bribe

to an Indian government official to facilitate building a Cognizant facility in Pune, India.  The Defendants did not know about the Pune bribe payment at the time L&T made it, but the Defendants and their co-conspirators discussed the Pune bribe during one of the April 2014 calls, specifically in the context of the KITS Campus bribe demand.  As discussed below, this evidence of the Pune bribe (the "Pune Bribe Evidence") is admissible on several independent grounds.  First, it is intrinsic to the bribery conspiracy charged in the Indictment.   It is also admissible under Rule 404(b) for non-propensity purposes, including as background for understanding the bribery scheme and to prove the Defendants' intent, opportunity, plan, knowledge, modus operandi, and absence of mistake.

### A.  The Pune Bribe Evidence

The Government expects to elicit testimony from CC#1 that in or around 2013, L&T paid a bribe of approximately $600,000 to obtain required environmental clearances for a different real estate project in Pune, India, and Cognizant agreed to reimburse L&T for the bribe.   CC#1 became aware of the demand at some point toward the end of the project in Pune, after L&T had already paid the bribe and was seeking reimbursement from Cognizant through the change order process. The Government expects CC#1 to testify that during one of the calls with the Defendants in April 2014 in which they discussed the $2 million bribe demand from government officials to obtain the Planning Permit for the KITS Campus, CC#1 told the Defendants about the Pune demand.  Schwartz's contemporaneous notes from one of the April 2022 conference calls corroborate this anticipated testimony from CC#1.  In the context of assessing the $2 million bribe demand for the KITS Campus project,

Schwartz wrote, "Is this one big or normal?  Pune project last year, ask from officials $670,000 - Normal rate.  LT spent more than it would have normally spent.  Change request for 12-14M.  We only paid $3M."  In other words, consistent with CC#1's account, Schwartz's notes confirm that Schwartz and his co-conspirators were discussing whether the $2 million bribe demand on the KITS Campus project was "big or normal?" compared to the Pune bribe demand that Cognizant paid in 2013 through L&T.

## B.   Evidence of the Pune Bribe Demand is Intrinsic to the Crimes Charged in the Indictment

The Pune Bribe Evidence is intrinsic to the crimes charged in the Indictment. Evidence of uncharged acts is intrinsic where: (1) it "directly proves the charged offense"; or (2) if it relates to "uncharged acts performed contemporaneously with," and which "facilitate[d] the commission of[,] the charged crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (internal quotation marks and citation omitted).  If other acts evidence is intrinsic to the crimes charged, the requirements of Rule 404(b) do not apply.  *See* Fed. R. Evid. 404(b), Advisory Committee Notes to 1991 Amendment (Rule 404(b) "does not extend to evidence of acts that are 'intrinsic' to the charged offense"); *see Huddleston v. United States*, 485 U.S. 681, 685 (1988) (Rule 404(b) applies only to "extrinsic acts"); *United States v. Gibbs*, 190 F.3d 188, 217-18 (3d Cir. 1999) (Rule 404(b) "does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense"). This is because, "[w]hen the evidence of another crime is necessary to establish an element of the offense being tried, there is no other crime." *United States*

*v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992); *see also Green*, 617 F.3d at 245 (stating that "courts today exempt intrinsic evidence from application of Rule 404(b) on the theory that there is no 'other' wrongful conduct at issue").  Rather, the evidence of the other act is part and parcel of the crime alleged.  *See United States v. Sriyuth*, 98 F.3d 739, 747 (3d Cir. 1996).

Where, as here, "a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) (collecting cases).  Thus, in *Williams*, for example, the Third Circuit found evidence that several of the defendants were involved in an uncharged altercation and murder of another individual to be intrinsic to racketeering conspiracy charges because the evidence proved the defendants' "willingness to engage in concerted illegal action, amounting at its most serious to murder." *Id.*

Similarly, in *United States v. Gibbs*, 190 F.3d 188 (3d Cir. 1999), the Third Circuit found testimony that the defendant engaged in uncharged acts of violence was intrinsic to a drug conspiracy because the defendant used violence to "further the illegal objectives of the cocaine conspiracy." *Id.* at 218; *see also United States v. Eufrasio*, 935 F.2d 553, 573 (3d Cir. 1991) (admitting uncharged "mafia crimes" as intrinsic evidence because it "went to prove important elements of the RICO counts charged against appellants: the existence and nature of the [] enterprise and conspiracy, acts undertaken in furtherance of it, and appellants' knowing association

with it"); *United States v. Tiangco*, 225 F. Supp. 3d 274, 280 (D.N.J. 2016) (McNulty, J.) (finding evidence regarding a defendant's arrest for uncharged drug offenses was intrinsic to a drug conspiracy because the acts fell within the period of the charged conspiracy and were "part and parcel" of the drug conspiracy charged).

Here, the Pune Bribe Evidence is part and parcel to the bribe that the Defendants authorized for the KITS Campus, as charged in the Indictment. As reflected in Schwartz's notes and CC#1's expected testimony, the Defendants authorized the bribe for the KITS Campus Planning Permit during the same April 2014 call in which the Defendants also discussed the 2013 Pune bribe. Indeed, they used the Pune bribe as the roadmap for how to handle the KITS Campus bribe demand: like with the Pune bribe, L&T would facilitate bribe payments to one or more Indian official on Cognizant's behalf, and Cognizant would reimburse L&T for those bribe payments through purported change orders. Thus, the Defendants and their co-conspirators ultimately agreed to pay the $2 million bribe for the KITS Campus Planning Permit using essentially the same *modus operandi* used in connection with the Pune bribe.

Accordingly, the Pune Evidence is direct and intrinsic proof of the Defendants' illegal agreement to bribe foreign officials and the manner and means used to execute the bribery scheme charged in Count One of the Indictment and the substantive FCPA violations charged in Counts Two through Twelve. This evidence should be admitted as intrinsic to the crimes charged. *See Eufrasio*, 935 F.2d at 573.

## C.     The Pune Bribe Evidence Would Also Be Admissible Under Rule 404(b) for Non-Propensity Purposes

The Government respectfully submits that the Court should not consider the Pune Bribe Evidence under Rule 404(b) because it is intrinsic, as discussed above.  In any event, the Pune Bribe Evidence is also separately admissible under Rule 404(b) for non-propensity purposes—namely, as relevant background evidence for what was discussed on the April 21 and 22, 2014 calls, and as evidence of the Defendants' intent, opportunity, plan, knowledge, *modus operandi*, and absence of a mistake in authorizing L&T to pay a $2 million bribe to obtain the Planning Permit.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Thus, Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged offense.  "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  The Third Circuit has held that "[i]n a conspiracy case, evidence of other bad acts, subject always to the requirements of Rule 403, can be admitted to explain the background, formation, and development of the illegal relationship." *United States v. Scarfo*, 41 F.4th 136, 179 (3d Cir. 2022).

The proponent of the evidence under Rule 404(b) bears the burden of establishing its admissibility.  *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).  Such evidence must: "(1) have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect

under Rule 403; and (4) if the defendant requests it, the court must instruct the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016).

Courts typically consider the first and second factors—the purpose for admitting the "other act" evidence and its relevance—together. *See, e.g., United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003); *United States v. Vega*, 285 F.3d 256, 261-62 (3d Cir. 2002). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. "To be relevant, proffered evidence must fit into 'a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference.'" *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017) (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).

If the extrinsic evidence is probative of a non-propensity purpose, and if that purpose is logically relevant to a fact of consequence to the case, the evidence should be admitted unless, under Rule 403, "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also Repak*, 852 F.3d at 246. Rule 403 "'creates a presumption of admissibility.'" *Id.* (quoting *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014)). "'[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable.'" *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014) (quoting *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002)) (alterations in original).

"[U]nfair prejudice is what Rule 403 is meant to guard against, that is, prejudice 'based on something other than [the evidence's] persuasive weight.'" *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (quoting *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003)); *see also United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (if relevant to a non-propensity purpose, evidence should be excluded only "if its probative value is substantially outweighed by unfair prejudice, not just prejudice"). Unfair prejudice arises if the evidence is likely to "cause the jury to base its decision on something other than the established propositions in this case." *United States v. McGlory*, 968 F.2d 309, 339 (3d Cir. 1992) (quotation omitted).

Here, the Pune Bribe Evidence—that Cognizant previously bribed Indian officials through L&T, and then reimbursed L&T using the change order process—is relevant for several non-propensity purposes. First, it provides necessary context for the two April 2014 conference calls. Without explaining what happened in Pune, the jury will be left completely incapable of understanding what Schwartz meant in his notes when—in the context of the KITS bribe demand—Schwartz referenced an "ask from officials [for] $670,000" on the "Pune project last year." *See* Exhibit D. The Pune Bribe Evidence provides vital background to explain Schwartz's notes and the information the Defendants were considering when assessing the KITS Campus bribe demand. *See Green*, 617 F.3d at 250 ("One proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact.").

25

Further, the Pune Bribe Evidence is directly relevant to the Defendants' knowledge, plan, and intent, because it makes it more likely that the Defendants knew about and authorized the bribe for the KITS Campus using the same *modus operandi* from the Pune bribe situation. Knowledge, plan, and intent are, of course, proper non-propensity purposes under Rule 404(b). As is evidence of defendants' *modus operandi*.

Evidence of the Defendants' intent and knowledge of a prior bribe demand is all the more relevant because it rebuts what appears to be one of the Defendants' anticipated defenses—that they were not told of and did not authorize a scheme to reimburse L&T for paying a bribe to government officials to obtain the Planning Permit for the KITS Campus. *See* Br. in Support of Def. Steven Schwartz's Mot. to Suppress or for Other Relief at 1, ECF No. 431 (Dec. 21, 2022) ("The Defendants have pled not guilty and vehemently deny these allegations, which they contend are totally without merit."). The Pune Evidence is plainly relevant to show the Defendants' opportunity to pay the bribe and absence of a mistake in authorizing it, particularly given that the Defendants have denied all of the allegations in the Indictment, including apparently that a bribe demand was even brought to their attention. *See United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (finding evidence to be "strongly probative because it counters two central arguments advanced by [the /defendant]").

Finally, there is little, if any, risk of *unfair* prejudice from the evidence. The Government does not intend to introduce any evidence that Schwartz or Coburn

26

authorized the payment of the Pune demand.  In other words, this is not evidence of the Defendants' own prior bad acts—only that they were made aware of it in the context of the crimes charged here.  Therefore, there is minimal, if any, risk that the jury will base its decision on an improper inference or association with a bribe that was paid before the Defendants even knew about it.  Moreover, any prejudice is clearly outweighed by the highly probative value of the Pune Bribe Evidence.  *Cross*, 308 F.3d at 323 (where "evidence is highly probative, even a large risk of unfair prejudice may be tolerable").

Accordingly, if this Court were inclined to consider the Pune Bribe Evidence under Rule 404(b), it is admissible for the non-propensity purposes discussed above and, combined with the proper limiting instruction, is not unduly prejudicial.

## VI.  DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR ELICIT EVIDENCE CONCERNING ALLEGED PRIOR GOOD ACTS

Defendants have indicated that they intend to introduce evidence of their prior good acts and conformity with company policy pursuant to Fed. R. Evid. 404(b). Coburn intends to introduce evidence concerning his "history of elevating legal and compliance issues to the legal department and reliance on counsel concerning the same."  Exhibit F, Jul. 24, 2023 Ltr. from Def. Coburn.  Schwartz has similarly indicated that he intends to introduce evidence of "his assistance with and support for Cognizant's legal and compliance functions" and his "role in addressing other FCPA issues at Cognizant, including but not limited to issues Cognizant was having with India's Provident Fund."  Exhibit G, Jul. 24, 2023 Ltr. from Def. Schwartz.  Both Defendants argue that such evidence is directly relevant to the charges in the

27

Indictment.  Exhibit F at 1; Exhibit G at 1.  Schwartz further argues the evidence is relevant to rebut claims that he circumvented and failed to implement Cognizant's internal controls.  Exhibit G at 2.

The Government respectfully disagrees.  Evidence that Defendants generally did their jobs without always committing crimes is not relevant to the charged conduct.  The Defendants are charged with authorizing *one* bribe payment related to obtaining a planning permit for the KITS Campus.  Evidence that the Defendants did not authorize other bribes as Cognizant employees, or generally acted in accordance with company policies and raised issues on other occasions, is simply not relevant. *See United States v. Scarpa*, 913 F.2d 993, 1010-11 (2d Cir. 1990).[4]

The evidence Defendants intend to proffer of their purported lawfulness or non-corrupt conduct is thus improper propensity evidence under Rule 404(b) and should be excluded.  Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), such evidence is inadmissible.[5]

---

[4] Schwartz additionally seeks to present evidence of his support of the internal company investigations that gave rise to this case.  Exhibit G at 1.  Such evidence should be limited because as has been established during the evidentiary hearing relating to Defendants' motions to suppress, at the outset of the investigation at the company, the KITS planning permit was not part of the investigation.  In other words, the fact that Schwartz supported the investigation when it had nothing to do with his own wrongdoing is not relevant to the charged conduct.  Moreover, the evidence will show that Schwartz took steps to shut down the investigation as it progressed.  Under these circumstances, his earlier support of the investigation is irrelevant and should be excluded.

[5] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct.  It is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct.  *See* Advisory Committee Notes to Rule 405 (The rule "contemplate[s] that testimony of

"[A] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) (internal citations omitted) (excluding evidence that defendant did not bribe other coaches who were more powerful than the assistant coaches he was charged with bribing); *see also United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity); *United States v. Shavin*, 287 F.2d 647, 654 (7th Cir. 1961). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *See United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions.").

To permit otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See United States v. Beno*, 324 F.2d 582, 584, 586 (2d Cir. 1963). Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" that would inevitably ensue if Defendants were

---

specific instances is not generally permissible on the direct examination of an ordinary opinion witness to character. . . . Opinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, *i.e.*, be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

allowed to pursue this irrelevant line of inquiry.  As the Advisory Committee on Rules of Evidence concluded, proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Fed. R. Evid. 405, Advisory Committee Notes; *see also Grimm*, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

As the party seeking admission, Defendants bare "the burden of demonstrating its applicability" and "identifying a proper purpose." *United States v. Fattah*, 914 F.3d 112, 176 (3d Cir. 2019) (citing *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).  Defendants cannot do so here.  The charged conduct involves the authorization of a bribe payment in 2014 and the associated circumvention of internal controls after the fact.  That the Defendants previously acted in conformity with company policy, reported other instances of misconduct, or generally supported the legal and compliance functions at Cognizant on other occasions does not conform to any of the delineated purposes for such evidence in Rule 404(b).   Rather, it is improper propensity evidence that must be excluded.

In *United States v. Fattah*, the Third Circuit upheld the exclusion of evidence of the defendant's prior gift-giving in a bribery trial pursuant to Rule 404(b).  914 F.3d 112 (3d Cir. 2019).  There, the defendant sought to present a witness to testify that he had financially assisted students at a certain university.  The defendant argued that such evidence would refute the argument that a gift of tuition expenses to a congressman's *au pair* to attend a different university was not a bribe.  *Id.* at

175. The district court excluded the evidence, finding that support for students at the first university was "too remote" from support for students at the second university and was thus inadmissible. *Id.* at 176.

Similarly, the Defendants here cannot use evidence that they acted properly, and in accordance with Cognizant's policies on *other* occasions to suggest they did so with respect to the KITS Campus bribe. *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (citing *United States v. Qaoud*, 777 F.2d 1105, 1111 (6th Cir. 1985)) (holding that evidence that "in situations unrelated to the charges, [defendant] did favors for people who did not pay him bribes" was properly excluded under Rule 404(b)). Defendants have offered no proper non-propensity purpose for the evidence that they seek to admit. Nor could the proffered evidence go to the Defendants' intent, as the Government is not proceeding on a theory that the Defendants participated in a "company-wide, top-down conspiracy" to pay bribes in all instances. *United States v. Hayes*, 210 Fed. Appx. 114, 118-19 (3d Cir. 2007) (unpublished) (finding that the district court erred in not admitting evidence that defendant directed others not to falsify test records in a case in which the government alleged a company-wide conspiracy to falsify test results originating with senior officials like the defendant).

As noted above, the Government has not charged the Defendants' with participating in a conspiracy in which the entire company was infused with a policy of paying bribes or flouting company policy. Instead, the Government has charged the Defendants with authorizing reimbursement of a $2 million bribe for a Planning Permit at the KITS Campus, their failure to report that demand on various

certifications they were required to file, and their circumvention of internal controls that were designed to ensure that the company's books and records accurately reflected transactions.  Under those circumstances, the evidence the Defendants seek to admit is not directly relevant to the charged conduct, does not have a proper non-propensity purpose, and should be excluded.  *See United States v. Camejo*, 929 F.2d 610, 612-13 (11th Cir. 1991) (upholding exclusion of evidence that the defendant refused an offer to participate in a separate conspiracy to import cocaine while he participated in the charged conspiracy to import cocaine as irrelevant and not admissible under Rule 404(b)).

## VII.   DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR ELICIT EVIDENCE CONCERNING ALLEGED DEFICENCIES IN THE GOVERNMENT'S INVESTIGATION OR DISCLOSURES

The Defendants should be precluded from arguing to the jury that the Government failed to undertake a thorough investigation with respect to the allegations in this case.  As the Court is well aware, the Defendants have been arguing and litigating the issue of investigative "outsourcing" for nearly four years, since the inception of this criminal case.  While the Court has determined that such arguments may provide "fodder for cross-examination," the Court has conclusively ruled that the Government did not engineer the Defendants' interviews and that Cognizant is not part of the prosecution team.  Any affirmative argument or

presentation of evidence to the jury along those lines would be improper and should be excluded.[6]

"Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999).  A defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when the defendant has not made any connection between an allegedly poor investigation and any evidence introduced at trial.  *McVeigh,* 153 F.3d at 1192.   Evidence elicited to support a broad claim that the government's investigation of the case was sloppy or inadequate, without this requisite connection, is irrelevant and thus inadmissible because the jury will be called upon to determine whether the government's investigation was good or bad and not whether the defendant is guilty or not guilty.  *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994); *United States v. Cordova*, 157 F.3d 587, 594 (8th Cir. 1998) (upholding exclusion of "exhaustive exploration of things not done in the investigation" as "time-consuming and of little relevance" because "[t]he real issue at trial was whether the

---

[6] The Government's concerns are not hypothetical.  Both Defendants have included dozens of exhibits on their preliminary exhibit lists that are related to their suppression and "outsourcing" arguments, including, among other things, notes by Government attorneys and paralegals, emails between Government attorneys and outside counsel for Cognizant, and talking points prepared by outside counsel for Cognizant in connection with meetings and phone calls with the Government.

government's witnesses were truthful and whether their testimony was sufficient to convict").

It is well within this Court's discretion to preclude the Defendants from questioning witnesses about investigative steps not taken. *See United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition."). Any attempt by the Defendants to shift the spotlight to efforts the Government could have taken in the investigation inevitably diverts the jury's attention from the issues of the trial. *McVeigh*, 153 F.3d at 1192.

In *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999), the Seventh Circuit affirmed the trial judge's refusal to have the "trial become a trial of the investigation," holding that the district court properly excluded under Rule 403, a line of cross-examination by the defendant of a DEA agent where defendant intended to impugn the thoroughness of the investigation to demonstrate that people other than the defendant were responsible for the crime. The Court deemed the proffered cross-examination to be of "marginal relevance." *Id.* Similarly, in *United States v. Estell*, F. App'x. 552, 556 (7th Cir. 2016) (unpublished), the adequacy of the investigation was deemed a "tangential issue that could confuse the jury."

The jury is tasked only with determining whether the evidence, or the lack thereof, is sufficient to support a finding of guilty to the counts alleged in the Indictment. It is irrelevant what investigative steps could have been taken, only

whether the evidence that was obtained from the steps that were taken is sufficient to prove the matter beyond a reasonable doubt.  Further, questioning regarding what steps could have been taken invites the jury to speculate on what the results of those techniques would have been had they in fact been taken.  Therefore, the Government respectfully requests this Court preclude such questions or argument by the Defendants at trial.

## VIII. DEFENDANTS SHOULD NOT BE ALLOWED TO ARGUE OR ELICIT EVIDENCE CONCERNING THE DEFENDANTS' FAMILIES BACKGROUNDS, HEALTH, AGES, OR ANY OTHER PERSONAL FACTOR UNCONNECTED TO GUILT OR INNOCENCE, AS WELL AS DISCUSSION OF PUNISHMENT

The Government is unaware of any lawful basis for the Defendants to offer evidence or argument concerning their family background, health condition, age, conditions of pretrial release, or any other similar personal factors.  They should be precluded from doing so, and from mentioning such subjects in their opening statement, absent a showing that any such factor bears on their guilt.  *See United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); *United States v. Battaglia*, No. S9 05 CR 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The Defendants should similarly be precluded from offering evidence or argument concerning the punishment or consequences they face if convicted.  It is

well-established that a criminal defendant is not entitled to have the jury informed of the sentencing consequences of its decisions.  According to the Third Circuit:

> In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law.  The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be.

*United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993); *see also United States v. Nguyen*, 344 F. App'x 821, 824 (3d Cir. 2009) (unpublished) ("[T]he jury ha[s] no sentencing function and should reach its verdict without regard to what sentence might be imposed.") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  The Supreme Court has observed that:

> It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.  The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury.  The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.  The trial judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict.  Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.  Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573, 579 (1994) (quotation omitted).  Accordingly, the Court should preclude the Defendants from invading the province of the Court by referencing before the jury the potential punishment they face.

36

## IX.  DEFENDANTS SHOULD NOT BE ALLOWED TO MAKE ARGUMENTS REGARDING JURY NULLIFICATION ON THE GROUNDS THAT BRIBES ARE A CUSTOM AND PRACTICE IN INDIA

The Court should preclude the Defendants from introducing evidence or argument that bribes are a custom or practice in India.  Numerous Circuits have held that evidence and argument based on industry custom or common practice amounts to nothing more than an "everybody does it" defense which is irrelevant and inadmissible.  For example, in *United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009), the defendant, who had been indicted for embezzling federal tribal funds, sought to call several witnesses who "would have testified that they, like Oldbear, were allowed to use tribal funds to pay for personal transportation expenses." *Id.* at 821.  The district court characterized the proffered testimony as attempting to establish an "everybody-is-doing-it" defense and precluded the testimony as irrelevant.  *Id.*  The Tenth Circuit affirmed, holding that "only Oldbear's actions and state of mind were material to her guilt."  *Id.*; see also *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 991 (7th Cir. 1999) (concluding district court correctly excluded evidence of industry custom and practice "based on a fear that the jury might find [the defendant] not guilty because 'everyone does it'"); *United States v. Fowler*, 932 F.2d 306, 315-16 (4th Cir. 1991) (affirming district court's exclusion of testimony supporting the "everybody-does-it defense" as irrelevant (internal quotation marks omitted)); *cf. United States v. Warner*, 396 F. Supp. 2d 924, 937 (N.D. Ill. 2005) (deferring judgment on the issue until trial to determine relevance but noting that "any attempt to establish [the defendants'] innocence based on the fact that other administrations acted in the same manner would be improper—arguably

akin to a driver pulled over for speeding who, unaware of the lawful limit, concludes that 80 m.p.h. is acceptable because she observed other drivers passing her").

Even were the Court to find that evidence that bribery was a common practice in India had some probative value, that value would be substantially outweighed by the risk of jury confusion and the wasted time that would necessarily follow from its introduction.  *See* Fed. R. Evid. 403; *see also United States v. Brooks*, 681 F.3d 678, 709 (5th Cir. 2012) (affirming district court's exclusion of defendant's proffered industry practice evidence that "other energy companies were also submitting similarly false data" because evidence that fraudulent practices may be common in a particular industry "pose[s] a threat of confusing the jury and detracting from relevant information about the conduct of the actual parties"); *Oldbear*, 568 F.3d at 821 (finding exclusion of customary practice evidence proper under Rule 403 because it was likely to create a "sideshow from which the jury could have gleaned little valuable information").

For these reasons, any evidence or argument that bribery may have been commonplace or part of industry practice within India should be precluded.  Such evidence or argument cannot absolve the Defendants of liability for their role in the charges in the Indictment, and risks either confusing the jury or encouraging the jury to engage in nullification, which is impermissible.  *See United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[J]ury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role."); *United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) ("The District Court [properly] excluded this evidence

because it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally").

## CONCLUSION

For the reasons set forth above, this Court should admit or preclude the evidence referenced in this memorandum and should permit the Government to prove and defend its case consistent with the law articulated in this memorandum.

GLENN S. LEON                               PHILIP R. SELLINGER
Chief                                       United States Attorney

*/s/Sonali D. Patel*
*/s/Gerald M. Moody, Jr.*                   */s/Jonathan Fayer*
_____                     _____
SONALI D. PATEL                             JONATHAN FAYER
GERALD M. MOODY, JR.                         Assistant U.S. Attorney
Fraud Section, Criminal Division            District of New Jersey
U.S. Department of Justice