# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

Direct Number: +1.212.326.3808
jloonam@jonesday.com

March 8, 2025

**REDACTED TEXT TO BE FILED UNDER SEAL**

<u>VIA ECF</u>

The Honorable Michael E. Farbiarz
United States District Judge
U.S. District Court for the District of New Jersey
Frank R. Lautenberg U.S. Post Office & Courthouse
2 Federal Square
Newark, N.J. 07102

    Re:    <u>United States v. Coburn and Schwartz, 19-cr-120 (MEF)</u>

Dear Judge Farbiarz:

    We write on behalf of defendant Gordon Coburn, joined by counsel for co-defendant Steven Schwartz, in response to the Court's March 6, 2025 Order (the "Order") directing the parties to brief their arguments as to whether the "clock" established by the Speedy Trial Act of 1974 should be tolled for the duration of the 180-day adjournment requested by the government. ECF No. 974. Because Defendants consent to the tolling, and the "ends of justice served" by the adjournment "outweigh the best interest of the public . . . in a speedy trial," 18 U.S.C. § 3161(h)(7)(A), Defendants agree with the government that the full 180-day adjournment should be excluded from the Speedy Trial "clock."

**I.    The February 10, 2025 Executive Order.**

    On February 10, 2025, President Donald J. Trump issued an Executive Order (the "Executive Order"), recognizing that the Foreign Corrupt Practices Act ("FCPA") "has been systematically, and to a steadily increasing degree, stretched beyond proper bounds and abused in a manner that harms the interests of the United States." Exec. Order No. 14209, 90 Fed. Reg. 9587 (Feb. 10, 2025) ("Exec. Order") § 1. The Executive Order further states that overenforcement of the FCPA "impedes the United States' foreign policy objectives and therefore implicates the President's Article II authority over foreign affairs." *Id.*

    The Executive Order mandates a 180-day pause in enforcement of the FCPA by the Department of Justice ("DOJ"), during which time the Attorney General must "review guidelines and policies governing investigations and enforcement actions under the FCPA." *Id.* § 2. During the 180-day review period mandated by the President, "the Attorney General shall cease initiation of any new FCPA investigations or enforcement actions," "review *in detail* all existing FCPA investigations or enforcement actions," and "issue updated guidelines or policies, as appropriate,

JONES DAY

Judge Michael E. Farbiarz
March 8, 2025
Page 2

to adequately promote the President's Article II authority to conduct foreign affairs and prioritize American interests, American economic competitiveness with respect to other nations, and the efficient use of Federal law enforcement resources." *Id.* (emphasis added). After the revised guidelines or policies are issued, any enforcement actions "initiated *or continued* . . . shall be governed by such guidelines or policies" and "must be specifically authorized by the Attorney General." *Id.* (emphasis added).[1] Further, in accordance with the revised guidelines, "the Attorney General shall determine whether additional actions, including remedial measures with respect to inappropriate past FCPA investigations and enforcement actions, are warranted." *Id.*

## II.     Relevant Procedural Background.

On March 4, 2025, the newly sworn-in United States Attorney for the District of New Jersey, John Giordano, filed a letter requesting a 180-day adjournment of the trial in this case, which had been scheduled to begin the following day. *See* ECF No. 956. The basis for United States Attorney Giordano's request was to allow "sufficient time" for him to "consider[] . . . the application of the President's February 10, 2025 Executive Order to this matter." *Id.*

After United States Attorney Giordano's letter, and in response to an order of the Court, the parties informed the Court of their positions regarding the Speedy Trial "clock." The parties are in agreement that 60 days remain on the Speedy Trial "clock." ECF No. 964. And the Court has held that the "clock" is currently tolled, until March 17, 2025, because of matters discussed at the March 4, 2025 status conference. Order at 2; *see also* 18 U.S.C. § 3161(h)(4). Defendants also informed the Court that they consent to the tolling of the Speedy Trial "clock" for the duration of the requested 180-day adjournment. ECF No. 971. On March 6, 2025, the Court ordered that the parties submit briefing on the sole remaining question related to the Court's Speedy Trial analysis, that is: whether "the ends of justice served" by the government's requested adjournment "outweigh the best interest of the public . . . in a speedy trial," such that the time of the requested adjournment should be excluded from the Speedy Trial "clock." Order at 3 (citing 18 U.S.C. § 3161(h)(7)(A)).

## III.    The Ends of Justice Served by Allowing the Executive to Implement His Policy Objectives Outweigh Any Countervailing Public Interest in Proceeding to Trial Before the Requested 180-Day Adjournment.

The Executive Order reflects the President's policy determination that enforcement of the FCPA must be narrowed in order "to preserve the Presidential authority to conduct foreign affairs

---

[1] The plain language, structure, and purpose of the Executive Order make clear that the required 180-day pause in FCPA enforcement applies to both existing cases and new enforcement actions. The White House reiterated this point at the time President Trump signed the Executive Order: "The Order directs the Attorney General to *pause FCPA actions until she issues revised FCPA enforcement guidance* that promotes American competitiveness and efficient use of federal law enforcement resources." The White House, Fact Sheet: President Donald J. Trump Restores American Competitiveness and Security in FCPA Enforcement, https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet-president-donald-j-trump-restores-american-competitiveness-and-security-in-fcpa-enforcement/ (Feb. 10, 2025) (emphasis added).

Judge Michael E. Farbiarz
March 8, 2025
Page 3

and advance American economic and national security by eliminating excessive barriers to American commerce abroad." Exec. Order § 1. The President himself has spoken regarding his priorities for the enforcement of the FCPA, a rare and direct statement of the Executive's view on the enforcement of a specific criminal statute. The President, who was democratically elected by voters across the nation and is charged with enforcing its laws, is uniquely situated to speak to the public interest. For these reasons, his views on both the ends of justice and the public's interest should be afforded great weight and deference in applying the balancing test called for by the Speedy Trial Act. Likewise, the public has a profound interest in seeing that the Executive's policy initiatives with respect to enforcement of the laws are implemented. This interest in deferring to the Executive's implementation of law enforcement and foreign policy initiatives outweighs any countervailing interest the public may have in starting this FCPA trial during the pendency of the 180-day pause in FCPA enforcement ordered by the President.

Courts have tolled the Speedy Trial "clock" to implement the Executive's policy choices in other contexts. For example, in *United States v. Patin*, the court considered whether the ends of justice served by a continuance outweighed the public's interest in a speedy trial where "the government agreed to the continuance of the defendant's [federal] trial . . . because it contemplated dropping the federal charges against him if he should be convicted in [ongoing] state court [proceedings]." *United States v. Patin*, 501 F. Supp. 182, 184 (E.D. La. 1980). The government requested the continuance pursuant to the DOJ's *Petite* policy, under which "United States Attorneys are forbidden to prosecute any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person." *Id.* at 185 (quoting *Thompson v. United States*, 444 U.S. 248, 248 (1980)). The *Patin* court recognized that the "proper application of the Justice Department's *Petite* policy permits the executive branch to husband its limited resources and use them to prosecute more effectively the offenses currently characterized by a major interest in federal prosecution." *Id.* at 186. Accordingly, the court held that "the public interest in bringing [the] accused to book for the crimes against him is, at this time, outweighed by other valid considerations [that the court] . . . will not second guess." *Id.* at 187.

The urgency of allowing the Executive to pursue his policy initiatives is especially heightened where, as here, the Executive's directive overlaps with matters of foreign affairs. *See United States* v. *Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("In this vast external realm, with its important, complicated, delicate and manifold problems, the President alone has the power to speak or listen as a representative of the nation."). The President has declared that enforcement of the FCPA "implicates the President's Article II authority over foreign affairs" and "impedes the United States' foreign policy objectives." Exec. Order § 1. To ensure that the Executive's prerogatives are adequately protected, the Attorney General will presumably need the time requested to, among other things, consult with the White House and perhaps the State Department to draft FCPA enforcement guidelines, policies, and approval protocols to address the President's stated concern and then apply them to all pending FCPA cases.

The public's interest in a speedy trial is diminished where the duly elected Executive, as in this case, has stated that prosecutions under the FCPA "not only waste[] limited prosecutorial

resources that could be dedicated to preserving American freedoms, but actively harm[] American economic competitiveness" and "impedes the United States' foreign policy objectives." Exec. Order § 1. The Court should afford the Executive's statement great weight in applying the Speedy Trial Act's balancing test, as it is a clear expression of the Executive's view that both (i) the ends of justice strongly support the adjournment and exclusion of time and (ii) the public's interest in a speedy trial is diminished here.

### IV. The Fair Administration of Justice Weighs Heavily in Favor of Allowing Time for the Attorney General to Issue the FCPA Enforcement Guidelines Mandated by the President.

The balance also weighs heavily in favor of tolling the Speedy Trial "clock" because the public—and Defendants—have a significant interest in the review process required by the Executive Order playing out fairly and thoughtfully, and, more broadly, in the orderly and uniform administration of justice. The Executive Order instructs the Attorney General to "review guidelines and policies governing investigations and enforcement actions under the FCPA," and to "issue updated guidelines or policies, as appropriate, to adequately promote the President's Article II authority to conduct foreign affairs and prioritize American interests." Exec. Order § 2. Any FCPA enforcement actions "initiated *or continued*" after the Attorney General issues the updated or revised guidelines "shall be governed by such guidelines or policies" and "must be specifically authorized by the Attorney General." *Id.* (emphasis added).

There has been no indication that the Attorney General has yet issued the guidelines for conducting case reviews required by the Executive Order. Without these guidelines, there is no guarantee that like cases will receive like treatment. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988) (recognizing "the need for uniform application of federal law"); *Laird v. ICC*, 691 F.2d 147, 153 (3d Cir. 1982) (same). The FCPA should be applied uniformly to similarly situated defendants. That simply is not possible until the Attorney General issues the updated guidelines or policies that will govern the DOJ's enforcement of the law.

Moreover, as the Court stated, "[t]houghtfulness" with respect to the application of the criminal laws "serves the ends of justice." Order at 3 (citing *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008)). In *Abad*, the court found that a 31-month exclusion from the Speedy Trial "clock" was "valid" where the United States Attorney consulted with a Washington-based unit of the DOJ regarding the applicability of the death penalty. *Abad*, 514 F.3d at 271; *see also United States v. Murillo,* 288 F.3d 1126, 1134 (9th Cir. 2002) (agreeing with the district court's determination that "the ends of justice and indeed the best interests of all parties and the public are served by enabling the Department of Justice a reasonable time within which to exercise its discretion as to whether to seek the death penalty against Defendants in this case"). The thoughtful consideration inherent in the orderly and uniform administration of the review contemplated in the Executive Order thus also weighs strongly in favor of a finding that the ends of justice support the exclusion of time, while the public's interest in a speedy trial is reduced.

JONES DAY

Judge Michael E. Farbiarz
March 8, 2025
Page 5

### V. The Ends of Justice Served by Judicial Economy Outweigh the Public's Interest in Proceeding to Trial Before the Requested 180-Day Adjournment.

The public also has profound interests in the efficient administration of the judicial system and in safeguarding the sanctity of jury service. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) ("[P]ublic interests . . . derive from 'the interest of justice' . . . [and] [w]e regard these public interests to include judicial economy considerations. . . ."); *United States v. Conant*, 116 F. Supp. 2d 1015, 1021 (E.D. Wis. 2000) ("Community participation in the administration of the criminal law . . . [is] critical to public confidence in the fairness of the criminal justice system.") (internal citation omitted).

Without pre-judging the Attorney General's review or the terms of any forthcoming FCPA enforcement guidelines or policies, there is at least some likelihood that this case may be dismissed pursuant to the Executive Order, whether before or after any trial may occur. *See* Exec. Order § 3 ("After the revised guidelines or policies are issued . . . the Attorney General shall determine whether additional actions, including remedial measures with respect to inappropriate past FCPA investigations and enforcement actions, are warranted. . . ."). Proceeding to trial at this stage, before the Attorney General has even set the standard by which to determine whether the continued prosecution of this case is warranted, would needlessly risk wasting significant judicial and government resources, including the time of the Court, the jurors, and at least four government prosecutors and several law enforcement agents, all of whom would be forced to sit through a lengthy trial on charges that may ultimately be dismissed regardless of any verdict returned by a jury.

"Neither the public interest, nor the courts, nor society would be served by a lengthy trial which might prove to be unnecessary." *United States v. Levasseur*, 635 F. Supp. 251, 255 (E.D.N.Y. 1986). For this reason, courts have regularly stayed cases where pending proceedings may be rendered moot. In *Levasseur*, the defendants were convicted on several counts, but the jury was unable to reach a verdict as to others. *Id.* at 252. The defendants requested that the court set a trial date as to the open counts, but the government opposed the motion and sought an "ends of justice" exclusion under the Speedy Trial Act until after the conclusion of the defendants' appeals on the counts of conviction. *Id.* The government represented that if the convictions were affirmed on appeal, it would not prosecute the defendants on the open counts and would move for dismissal of those counts. *Id.* The court found that the ends of justice were served by stopping the Speedy Trial "clock" until the appellate court issued its decision, noting that "in processing criminal cases a mechanical adherence to time limits would not serve the interests of defendant, the government, the courts, or society." *Id.* at 254–55 (citing *United States v. Black*, 733 F.2d 349, 351 (4th Cir. 1984)).

In addition to the potential waste of judicial resources, there is a broader public interest in ensuring that jurors do not serve on a jury only to find out that the government has reconsidered the worthiness of the case. Such an outcome would undermine respect for jury service and could cause future jurors to approach their duties with less attention and seriousness. Once again, the

**JONES DAY**

Judge Michael E. Farbiarz
March 8, 2025
Page 6

balance weighs strongly in favor of a finding that the ends of justice support the exclusion of time, while the public's interest in a speedy trial is reduced.

**VI. The Effect of the Age of the Case on the Speedy Trial Act's Balancing Test.**

While the Court has previously considered the fact that this case has been pending since February 2019 as a factor weighing against an adjournment and the exclusion of time, *see* ECF No. 769 at 4 ("This case needs to be tried."), the situation has changed dramatically now that a non-trial disposition is a real possibility. And the age of the case has always cut both ways, as the repeated delays in this case also suggest that the public's interest in a speedy trial has been diminished over time. *See United States v. Doran*, 328 F. Supp. 1261, 1264 (S.D.N.Y. 1971) ("[The] relative lack of urgency [of the charges] is reflected in the fact that the case was not brought on for trial in the period of over two years between the indictment and defendant's stroke—to say nothing of the (presumably explicable) three years from the events to the indictment and the fact that it is now more than ten years since the alleged wrongs happened."). The Supreme Court has cautioned that extended delays between indictment and trial could afford criminal defendants the "opportunity to commit other crimes" or "jump bail and escape," and may have a "detrimental effect on rehabilitation." *Barker v. Wingo*, 407 U.S. 514, 519–20 (1972). But those concerns are not applicable where, as here, Defendants have been free on bail for over six years without committing other crimes or attempting to flee. Defendants thus submit that this factor either tilts the balance in favor of an exclusion of time or is neutral.

**VII. The Government's "Essential" Witness Is Expected to be Available to Testify at Any Future Trial Date.**

The Court also inquired into the expected availability of the government's "essential witness," Srimanikandan Ramamoorthy, in the event of an adjournment, Order at 4–6, and specifically "the basis for the United States' assessment of that likelihood," *id.* at 6. On March 5, 2025, counsel for Mr. Ramamoorthy filed a letter under seal with the Court.



JONES DAY

Judge Michael E. Farbiarz
March 8, 2025
Page 7



### VIII. The Full Requested 180-Day Adjournment is Reasonable.

In the Order, the Court fairly asks how much more time will be necessary for the government to make a determination about this case under the Executive Order, given its prior determination. Order at 3–4. Defendants understand the Court's questions in this regard to be directed primarily to the government. Defendants would merely and respectfully submit that the prior analysis conducted by the government appears to have been undertaken in the absence of the guidelines called for under the Executive Order. And, as discussed above, the public has a vested interest in allowing for the orderly implementation of the Executive Order. Moreover, the Executive should be given substantial deference in determining the process by which it is implemented. *See Patin*, 501 F. Supp. at 186–187 ("The government has made the determination that the public interest in bringing this accused to book for the crimes against him is, at this time, outweighed by other valid considerations. This Court will not second guess that judgment."). Implementing the Executive Order and, consequently, new FCPA guidelines, could very well require not only a detailed study of the FCPA by the Attorney General, but also substantial interdepartmental coordination between, among others, the DOJ, the Commerce Department (to address the President's concerns regarding the economic impact of the FCPA on American business), the State Department (to address the President's concerns regarding the foreign policy impact of the FCPA), and ultimately the White House. The review mandated by the President's Executive Order will necessarily take time. The Court should therefore find that the ends of justice support the exclusion of time for the full 180 days requested by the parties, while the public's interest in a speedy trial is substantially diminished.

\*   \*   \*

For these reasons, Defendants respectfully submit that "the ends of justice . . . outweigh the best interest of the public . . . in a speedy trial," 18 U.S.C. § 3161(h)(7)(A), and therefore the Speedy Trial "clock" should not run during the requested 180-day adjournment.

Defendants have filed the redacted portions of this letter under seal given the related sealed filings made by counsel for Mr. Ramamoorthy and the government, *see* ECF Nos. 972, 981, and pursuant to the Court's Order at ECF No. 993.

JONES DAY

Judge Michael E. Farbiarz
March 8, 2025
Page 8

                                              Respectfully submitted,

                                              */s/ James P. Loonam*
                                              James P. Loonam

cc:      All Counsel of Record (via ECF)